JOEL S. MILIBAND, #77438
jmiliband@rusmiliband.com
CATHRINE M. CASTALDI, #156089
ccastaldi@rusmiliband.com
RUS, MILIBAND & SMITH
A Professional Corporation
Seventh Floor
2211 Michelson Drive
Irvine, California 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514

Attorneys for Secured Creditor
Mr. Crane, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>GTS 900 F, LLC,<br><br>          Debtor. | Bankruptcy No. 2:09-BK-35127-VZ<br><br>Chapter 11<br><br>**CONDITIONAL OPPOSITION TO: (1) MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 363(f); AND (2) MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL (PROCEEDS OF SALES OF RESIDENTIAL LOFT UNITS); DECLARATION OF STEVE CORSO**<br><br>Date: October 27, 2009<br>Time: 11:00 a.m.<br>Ctrm: 1360 |

Secured Creditor Mr. Crane, Inc. ("Mr. Crane"), submits the following

Conditional Opposition to: (1) Debtor's Motion for Order Authorizing Sale of Real Property

of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f) (the

"Sale Motion") and (2) Debtor's Motion for Order Authorizing Use of Cash Collateral

(Proceeds of Sales of Residential Loft Units) (the "Cash Collateral Motion") (collectively, the

"Motions").

1. **INTRODUCTION**

By the Sale Motion GTS 900 F, LLC, a California limited liability company, aka Concerto ("Debtor" or "Concerto") requests an order allowing the Debtor to complete 77 pending sales of condominium units (the "Lofts") in the 7-story loft structure located at 900 S. Figueroa and 901 S. Flower Street, Los Angeles, California (the "Property") free and clear of liens with the liens attaching to the nearly $29 million of sales proceeds. Mr. Crane is secured by a recorded mechanic's lien against the Lofts in the amount of $477,626.00.

If paid in full from the sales proceeds for its fully matured secured claim, Mr. Crane would not oppose the Sale Motion. Such is not the case.

By the Cash Collateral Motion the Debtor seeks to eliminate the very secured creditor protection that is required for approval of the Sale Motion; that is, rather than paying secured mechanic's lien claimants such as Mr. Crane, the Debtor wants to use proceeds from the sales of the Lofts to fund further construction and for administrative expenses of this case. Thus, Debtor puts mechanic's lien claimants at risk that the project will ultimately be successful without providing adequate protection to Mr. Crane and similarly situated mechanic's lien claimants who have already provided value to the Debtor, the Property and other creditors for which they are entitled to be paid.

Moreover, Mr. Crane is entitled to priority payment pursuant to the Common Fund Doctrine, in that the sale of the Lofts would not be possible if not for Mr. Crane's services. To the extent the Debtor, the estate, the lender and other parties are benefitted by the sale, such benefit is a direct result of Mr. Crane's efforts.

Mr. Crane opposes the Motions to the extent that granting them would effectively deny Mr. Crane its lien rights. For these reasons Mr. Crane opposes the Motions unless its mechanic's lien claim in the amount of $477,626.00, is paid in full from the $29 million of Lofts sale proceeds.

2. **STATEMENT OF FACTS**

In July 2007, Mr. Crane entered into a contract ("Contract") with the Debtor's general contractor, Astani Enterprises, Inc. ("Astani"), a party related to the Debtor, for Mr.

1  Crane to provide tower cranes and lifts, as well as operators, which were critical for the
2  construction of the Lofts. A true and correct copy of the Debtor's contract with Astani is
3  attached as Exhibit "1" to the Declaration of Steve Corso (the "Corso Declaration").

4          Shortly before the filing of Concerto's bankruptcy case, Mr. Crane completed
5  the services under the Contract. The Debtor's List of Creditors Holding 20 Largest Unsecured
6  Claims lists Mr. Crane as holding a claim as of the date of the filing in the amount of
7  $451,457.38. A true and correct copy of the Debtor's List of Twenty Largest Creditors is
8  attached to the Declaration of Steven Corso as Exhibit "2."

9          Thereafter, but prior to the Debtor's payment of the fees owed in connection
10 with the Contract, the Debtor filed its petition in bankruptcy commencing this action on
11 September 17, 2009. On September 21, 2009, Mr. Crane recorded its mechanic's lien on the
12 Property in the County Recorder's Office for the County of Los Angeles. A true and correct
13 copy of the mechanic's lien is attached as Exhibit "3."

14         Mr. Crane's mechanic's lien is a valid and enforceable lien against the Property
15 entitled to the same method of payment as any other lien on the Property including those
16 arising from the recordation of deeds of trust. Moreover, the declarations filed in support of
17 the Motion demonstrate that the Debtor can complete construction of the tower without
18 utilizing the sales proceeds that should otherwise be paid to mechanic's lien claimants.

19 3.    ARGUMENT

20     A.    Mr. Crane Is Entitled To Payment On Its Valid And Enforceable Mechanic's
21           Lien

22         Despite the fact that Mr. Crane's mechanic's lien was recorded after the
23 commencement of this case, the mechanic's lien is valid and enforceable as a matter of law.

24         It is well-grounded that the recording of a mechanic's lien relates back to the
25 date the work first began on the project. *McCrae v. Craig* (1863) 23 C. 522. Indeed, pursuant
26 to California Code of Civil Procedure § 3134, a later recorded mechanic's lien has priority
27 over an earlier recorded deed of trust where work on the project started before the deed of trust
28 was recorded since perfection of the mechanic's lien by recordation relates back to the date of

1  commencement of the work of improvement.  *See also Westfour Corporation v. California*

2  *First Bank*, 3 Cal.App.4th 1610, 5 Cal.Rptr.2d 394 (1992).  Therefore, although Mr. Crane's

3  mechanic's lien was recorded after the filing of this bankruptcy case, it is deemed perfected

4  pre-petition when work first started at the Property.

5  　　　　Furthermore, the automatic stay of Section 362 of title 11 of the United States

6  Code (the "Code") does not stay an act to perfect a mechanic's lien.  The court in *In re KDR*

7  *Building Specialties Incorporated*, 76 B.R. 778, 780 (Bankr. S.D. Cal. 1987), held that where

8  perfection relates back to the date that services were first performed by a mechanic, a

9  mechanic's lien can be perfected without violating the automatic stay.  More specifically,

10  Section 362(b)(3) excepts from the automatic stay provisions of Section 362(a), "any act to

11  perfect an interest in property to the extent that the trustee's rights and powers are subject to

12  such perfection under section 546(b) of this title . . ."  Additionally, Section 546(b) of the

13  Code provides that "the rights and powers of a trustee under sections 544, 545 and 549 of this

14  title are subject to any generally applicable law that permits perfection of an interest in property

15  to be effective against an entity that acquires rights in such property before the date of such

16  perfection."  Therefore, the *KDR Building Specialties* court concluded that since California law

17  provides that perfection relates back to the date that services were first performed, perfection

18  can occur under section 546(b) since "generally applicable law" would permit it.  *See also In*

19  *re Burview Satellite Communications, Inc.*, 90 B.R. 465, 467 (Bankr. D. Kan. 1988) (the

20  automatic stay does not stay an act to perfect a lien where the lien relates back to the

21  commencement of the furnishing of the subject labor).

22  　　　　As a matter of law, Mr. Crane's mechanic's lien is valid and enforceable since

23  the post-petition recording of the mechanic's lien did not violate the automatic stay, and it is

24  entitled to be paid.

25  　　B.　　The Subject Sale Would Not Have Been Possible Without The Efforts Of Mr.

26  　　　　　Crane

27  　　　　Mr. Crane provided equipment and performed services at the Property that were

28  necessary to facilitate the construction and sale of the Property; without such efforts the sale

1 proposed by the Motion (which **benefits all creditors** of the estate) could not occur.

2     As such, Mr. Crane is entitled to payment out of escrow under the "common

3 fund" doctrine, which provides that all who benefit from the creation of a fund must share the

4 burden of its recovery. *Summers v. Newman*, 12 Cal.4th 105, 109, 48 Cal.Rptr.2d 42, 44

5 (1997). The *Summers* court pointed out that:

6         "The common fund doctrine recognizes the common law historic

7         power of equity to permit the trustee of a fund or property, or a

8         party preserving or recovering a fund for the benefit of others in

9         addition to himself, to recover his costs, including his attorney's

10        fees, from the fund or property itself or directly from the other

11        parties enjoying the benefit. That rule has been consistently

12        followed." (Citations omitted.) *Summers*, 48 Cal.Rptr.2d at 44.

13 The *Summers* court went on to apply the "common fund" doctrine, which has been recognized

14 and applied consistently in California, **when the action of a party creates a fund in which**

15 **other persons are entitled to share**.

16     In this case, but for Mr. Crane's critical efforts in the construction of the

17 Property, the sale proposed by the Motion could not have occurred. Therefore, Mr. Crane is

18 entitled to be paid as a result of creating a fund of $29 million in which other persons are

19 entitled to share.

20     C.    Mr. Crane Is Entitled To The Payment Of $477,626.00 Out Of Escrow

21           In Satisfaction Of Its Lien

22     If the Court grants the Debtor's Cash Collateral Motion, then Mr. Crane's

23 position will be materially altered in contravention of mechanic's lien rights set forth in the

24 California Constitution at Article 14, section 3.[1]

25

26 _____

27     [1] Article 14, §3 of the California Constitution provides that: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or

28 furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

1    By its Cash Collateral Motion, the Debtor seeks to shift the entire risk of the

2    declining real estate market to the secured creditors. Absent evidence of adequate protection,

3    the Debtor cannot be permitted to push off the downside valuation risk to the secured creditors

4    for the benefit of Debtor's insiders.

5    The Declarations filed in support of the Cash Collateral Motion demonstrate that

6    after paying accrued non-insider payables, including the claim of Mr. Crane, the Debtor would

7    still have almost $12 million available to complete the tower project. The net sales proceeds

8    from pending sales of the Lofts are estimated at $28,816,000. Accrued payables against the

9    project are listed at $19,556,000. The Debtor estimates that the costs to complete the tower

10   project are $9,824,000.[2] At least $2.5 million of the accrued payables are comprised of insider

11   claims to Astani Construction, leaving the non-insider portion of accrued payables at

12   $17,056,000.[3] Thus, after payment of accrued, non-insider, payables, proceeds from the sale

13   of the Lofts would provide $11,760,000 to the Debtor to complete construction of the tower

14   projects, a full $2.5 million in excess of the estimated costs of completion. In this scenario, the

15   risk would be borne by the insiders of the Debtor, where it belongs.

16   While the Debtor imagines an optimistic scenario of condominium units selling

17   at prices per square foot of between $526 and $713 over the next year, there is no evidentiary

18   support for that projection. The as is value of the Lofts has been established at $28,816,000

19   and the tower in its uncompleted state is valued at $113,384,000.[4] The Debtor's unsupported

20   estimate of value upon completion of the tower and conclusion of sales of all units is

21

22

23

---

24   [2]    See page 9 of Exhibit "1" to the Declaration of James R. Maddox, Jr.("Maddox Declaration"),
      Re: Debtor's Motion For Order Authorizing Debtor To Assume Sales Contracts And Complete Sale of
25   Condominium Units Free and Clear of Liens (With Liens to Attach to Sales Proceeds).

26   [3]    See Maddox Declaration at page 5, ¶18.

27   [4]    See page 5 of Exhibit "1" attached to the Declaration of David A. Zoraster, MAI, of CB Richard
      Ellis, Inc., In Support Of Debtor's Motion For Order Authorizing Debtor To Assume Sales Contracts And
28   Complete Sale of Condominium Units Free and Clear of Liens (With Liens To Attach To Sales Proceeds) (the
      "Zoraster Declaration").

1  $193,252,000, with a net of $183,700,000.[5]  However, if the actual per square foot sales price

2  of the entire project was $368, as it was in the recently completed Loft sales, the gross

3  valuation upon completion of sales would be $107,343,503.07[6] for the tower project, and the

4  mechanic's lien claimants such as Mr. Crane, who provided the labor and materials to the

5  project and who have constitutionally protected mechanic's lien rights[7], will be left unpaid.

6  The Debtor should not be permitted to gamble with the mechanic's lien claimant's right to

7  payment in order to attempt to make a profit.  The Debtor should pay its debts to those who

8  made the project a reality, and gamble with its own money.

9  4.      CONCLUSION

10        Based on the foregoing, Mr. Crane respectfully requests that the granting of the

11  Motions be expressly conditioned upon Mr. Crane being paid the full amount of its lien claim

12  directly from escrow.

13

14  DATED:  October 13, 2009                    Respectfully submitted,

15                                              RUS, MILIBAND & SMITH
                                                A Professional Corporation
16

17                                              By: _____
18                                                  CATHRINE CASTALDI
                                                    Attorneys for Secured Creditor
19                                                  Mr. Crane, Inc.

20

21

22

23

24  _____

25      [5]      See the Declaration of James R. Maddox, Jr. Re: Debtor's Motion For Order Authorizing use of
    Cash Collateral (Proceeds of Sales of Residential Loft Units") (the "Maddox Cash Collateral Declaration") at
    paragraphs 13 and 14.
26
        [6]      This amount was arrived at by using the estimated price per unit, and number of units per event
27  cited in the Maddox Cash Collateral Declaration at paragraph 13 and multiplying the total square footage for each
    sales event by $368.00, the average sales price for the loft units.
28
        [7]      See California Constitution at Article 14, Section 3.

# DECLARATION OF STEVE CORSO

I, STEVE CORSO, declare as follows:

1.      I am the Chief Financial Officer of Mr. Crane, Inc. and am primarily responsible for the financial operations and accounting functions at Mr. Crane. As such, I have first-hand personal knowledge of the matters set forth herein and if called as a witness to testify, could and would competently testify thereto.

2.      In July 2007, Mr. Crane entered into a contract ("Contract") with the Debtor's general contractor, Astani Enterprises, Inc. ("Astani"), a party related to the Debtor, for Mr. Crane to provide tower cranes and lifts, as well as operators, which were critical for the construction of the Lofts. A true and correct copy of the Debtor's contract with Astani is attached as Exhibit "1."

3.      Shortly before the filing of Concerto's bankruptcy case, Mr. Crane completed the services under the Contract. I have reviewed the Debtor's List of Creditors Holding 20 Largest Unsecured Claims, which lists Mr. Crane as holding a claim as of the date of the filing in the amount of $451,457.38. A true and correct copy of the Debtor's List of Twenty Largest Creditors is attached as Exhibit "2."

4.      Thereafter, but prior to the Debtor's payment of the fees owed in connection with the Contract, the Debtor filed its petition in bankruptcy commencing this action on September 17, 2009. On September 21, 2009, Mr. Crane recorded its mechanic's lien on the Property in the County Recorder's Office for the County of Los Angeles. A true and correct copy of the mechanic's lien is attached as Exhibit "3."

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 13th day of October, 2009 at Orange, California.

_____
STEVE CORSO

**"EXHIBIT 1"**



## SERVICE PROVISION AGREEMENT

This Service Provision Agreement (the "Agreement") IS MADE AND ENTERED INTO this 6 day of June 2006 by and between **MR. CRANE, INC.,** hereinafter referred to as **"Service Provider"**, and **Astani Enterprises, Inc.,** whose address is **9595 Wilshire Boulevard, Suite 1010, Beverly Hills, CA 90212,** hereinafter referred to as **"Customer"**.

Project: **Concerto**           Location: **9ᵗʰ Street & Figueroa, Los Angeles**
Owner: ...............................................

Service Provider and Customer hereby agree as follows:

**1.**     **The Work.**  Customer and Service Provider agree that the work to be performed by Service Provider under this Agreement (the "Work") on the Concerto project site (the "Site") shall include all labor, materials, equipment and other facilities as detailed in the **Scope of Work** included as **Exhibit A** to this Agreement.

**2.**     **Agreement Amount.**  In exchange for the Service Provider's full and timely performance of the Work specified in this Agreement, Customer agrees to pay Service Provider in accordance with the **Price/Rates Schedule** included as **Exhibit B** to this Agreement.

**3.**     **Terms of Payment.**  Payments shall be made in accordance with the **Payment Schedule** included as **Exhibit C** to this Agreement.  Unless otherwise agreed in writing, or specified in the Payment Schedule, payments shall be made to Service Provider within thirty (30) days of receipt of invoice for Work satisfactorily performed.  Service Provider shall provide full and valid releases and waivers of lien with respect to the Work performed in a form satisfactory to Customer together with such payroll affidavits, receipts, vouchers, and other information relating to the Work performed as Customer may request.  No retentions shall be held from any payments due to the Service Provider.

**4.**     **Insurance.**  Service Provider has in place Comprehensive General Liability, insurance providing coverage for bodily injury, property damage and all owned and non-owned vehicles, Worker's Compensation insurance, Inland Marine (Equipment) and Employer's Liability insurance in amounts as required by law.  At Customer's request Service Provider shall have Owner and Customer named as additional insured on these policies by endorsement ISO CG2010 11/85 or equivalent.  If Primary or Non-Contributing wording is required on any insurance certificates or endorsements this shall only apply in the case of the Service Provider's sole negligence.  Specific insurance cover requirements are detailed in the **Insurance Requirements** included as **Exhibit D** to this Agreement.

Service Provider shall have no liability for the costs of repair, replacement and/or loss of use of any of the Customer's equipment and/or materials being lifted by Service Provider, regardless of how any damage to or loss of such equipment is incurred.  Customer shall have adequate insurance in place to cover any damage to or loss of the equipment and a waiver of subrogation on this insurance policy shall be provided in favor of Service Provider.

**5.**     **Indemnification.**  The insurance maintained by Service Provider in accordance with the provisions of **Clause 4** above insures the performance of Service Provider's indemnification obligations set forth below only.  Service Provider shall defend, hold harmless and indemnify Customer from any claims, demands or liabilities, including but not limited to attorney's fees, arising out of or in conjunction with the performance of Service Provider's work at the Site, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury or destruction of tangible property, but only to the extent directly caused by the negligent acts or omissions of Service Provider or its directors, officers, employees or agents, in direct connection with Service Provider's Work pursuant to this Agreement. This indemnity provision shall apply to Customer's acts of passive negligence with regard to Service Provider's Work, but shall not apply to injury, damages, claims or other such harm as may be found to be caused by Customer's active fault

or negligence and shall not apply to the passive or active negligence of the Customer with respect to the work performed at the site, or elsewhere, not within the Scope of Work of the Service Provider or work performed by other subcontractors or sub-trades at the project. Customer shall defend, hold harmless and indemnify Service Provider from any claims, demands or liabilities for injury or death to persons or damages to property arising out of and caused by the negligent acts or omissions of Customer, its subcontractors (other than Service Provider), and its and their directors, officers, employees or agents.

In the event that a party ("Indemnitee") believes that it is entitled to an indemnity hereunder, it shall give prompt written notice to the other party ("Indemnitor") setting forth in reasonable detail the nature of the liability it alleges gives rise to the indemnity obligation and shall thereafter keep the Indemnitor fully informed with respect to such liability. The Indemnitor shall have the right to assume, at its expense the investigation, negotiation, settlement or trial of any such liability for which it may be obligated to indemnify Indemnitee. In the event that the Indemnitor acknowledges its indemnity obligations but does not assume the investigation, negotiation, settlement or trial of such liability, Indemnitee shall not settle any such liability without the prior written consent of the Indemnitor. Any indemnity shall be contingent on the timely receipt by the Indemnitor or notice from Indemnitee of any liability for which indemnity is sought and the prompt and full cooperation of Indemnitee in the investigation, negotiation, settlement or trial of any liability, including, but not limited to, providing necessary documents and witnesses.

Liability of the Indemnitor to the Indemnitee herein shall be limited to the extent of comparative negligence of the Indemnitor.

Notwithstanding any other provisions in this Agreement, the extent of the Service Provider's indemnification liability under this Agreement shall be strictly limited to the level of insurance cover specified in **Clause 4**. Should the Service Provider be covered by an Owner's Controlled Insurance Program and/or an Owner's Builders All Risk insurance policy then Service Provider's liabilities under this Indemnification Clause shall be strictly limited to those injuries, damages, claims or other such harm not covered by the aforementioned insurance policies.

6. **Project Schedule, Delays and/or Default.** Time is of the essence of this Agreement. Service Provider shall make best endeavor to execute the Work in prompt and diligent manner in accordance with the **Project Schedule** included as **Exhibit E** to the Agreement, prepared by the Customer, in consultation with the Service Provider, without delaying or hindering the work of other contractors, subcontractors, suppliers, materialsmen, Customer or any other party directly involved in the project.

However, Service Provider shall not be responsible for any costs, losses or damages, including consequential damages or liquidated damages arising out any delays to the project regardless of cause, including the default of the Service Provider. In the event of default by the Service Provider, Customer's remedies shall only include termination of the Agreement and the withholding of balance of the Agreement value after Service Provider has be paid for work performed up to the time of default. Under no circumstances shall the Service Provider be liable for the costs of completing the Work, howsoever this is facilitated. Specifically this includes, but is not necessarily limited to, any issues arising out of Customer's non-compliance or otherwise with union requirements or any other union dispute that may arise in relation to the project.

7. **Site Conditions.** Unless otherwise agreed expressly in writing between Service Provider and Customer, Service Provider is entitled to, and shall, rely upon Customer or the authorized representatives of the Customer for the suitability of all site conditions from which to undertake its crane and associated operations. The suitability of site conditions is a material element of the ability of Service Provider to safely and promptly perform the operations it is engaged to perform by Customer. Service Provider to verify suitability of site conditions and accessibility prior to starting work. Ground loading information will be furnished by Service Provider in a timely fashion.

8. **Signalmen and Lifting Lugs.** Customer shall ensure that any personnel provided by the Customer, its Subcontractors and/or authorized agents to direct the operations of the Service Provider's equipment are competent and properly trained. Customer assumes liability for the actions/inactions of these personnel. Customer further assumes liability for the adequacy or design or the Customer shall ensure that any personnel provided by the Customer, its Customer is responsible for providing a safe working environment on the site including the activities strength of any lifting gear, lifting lugs or devices embedded in or attached to any object to be lifted by Service Provider.

9.  **Safety.** Customer shall be responsible for providing a safe working environment on the site including the activities of any other parties working on or present on the site.

Service Provider shall, at all times, comply with the safety requirements of the site as specified by the Customer and shall ensure that its operations are performed in a safe manner and in accordance with any safety regulations or other requirements applicable to the Work.

10.  **Warranties.** Customer warrants that it is duly authorized to do business in the jurisdiction where the services are to be provided and that the person signing this Agreement has the authority to bind Customer. Service Provider warrants that it has the right to provide the service. Service Provider further warrants that any equipment that it provides or uses is in good working order, safe, and free of defect, has met the licensing and inspection requirements in the jurisdiction where the equipment is to be used and that any maintenance, inspection, modification or alteration of the equipment for which Service Provider is responsible will be done in a workmanlike manner and fit for the purposes intended by this agreement and such purchase orders issued by Customer, for the provision of services. Service Provider warrants that its employees have responsibility for determining that the equipment is capable of safely making and completing any lifting operations, which responsibility includes a determination that the equipment is not loaded beyond its rated capacity at any time during any such lifting operations.

11.  **Other Terms and Conditions.** Any terms and conditions included in any quotation or other documentation provided by the Service Provider in relation to this project shall be deemed to be part of this Agreement and shall take precedence over any other terms and conditions of this Agreement.

12.  **Ownership, Possession and Control.** Any equipment provided or used by the Service Provider shall at all times remain the property of the Service Provider and the Customer shall have no right or property interest therein other than as set forth in this agreement. The equipment shall at all times remain in the exclusive possession, control and operation of Service Provider.

13.  **Applicable Law.** This instrument shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below, and shall be effective as of the last date set forth below.

**MR. CRANE, INC.**

By: _S J Roberts_          By: _____

Title: _Engineering Manager_          Title: _President_

Date: _10 July 2007_          Date: _7/10/07_

9. **Safety.** Customer shall be responsible for providing a safe working environment on the site including the activities of any other parties working on or present on the site.

Service Provider shall, at all times, comply with the safety requirements of the site as specified by the Customer and shall ensure that its operations are performed in a safe manner and in accordance with any safety regulations or other requirements applicable to the Work.

10. **Warranties.** Customer warrants that it is duly authorized to do business in the jurisdiction where the services are to be provided and that the person signing this Agreement has the authority to bind Customer. Service Provider warrants that it has the right to provide the service. Service Provider further warrants that any equipment that it provides or uses is in good working order, safe, and free of defect, has met the licensing and inspection requirements in the jurisdiction where the equipment is to be used and that any maintenance, inspection, modification or alteration of the equipment for which Service Provider is responsible will be done in a workmanlike manner and fit for the purposes intended by this agreement and such purchase orders issued by Customer, for the provision of services. Service Provider warrants that its employees have responsibility for determining that the equipment is capable of safely making and completing any lifting operations, which responsibility includes a determination that the equipment is not loaded beyond its rated capacity at any time during any such lifting operations.

11. **Other Terms and Conditions.** Any terms and conditions included in any quotation or other documentation provided by the Service Provider in relation to this project shall be deemed to be part of this Agreement and shall take precedence over any other terms and conditions of this Agreement.

12. **Ownership, Possession and Control.** Any equipment provided or used by the Service Provider shall at all times remain the property of the Service Provider and the Customer shall have no right or property interest therein other than as set forth in this agreement. The equipment shall at all times remain in the exclusive possession, control and operation of Service Provider.

13. **Applicable Law.** This instrument shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below, and shall be effective as of the last date set forth below.

**MR. CRANE, INC.**

By: _S J Roberts_                    By: _____

Title: _Engineering Manager_         Title: _President_

Date: _10 July 2007_                 Date: _7/10/07_

**"EXHIBIT 2"**

# United States Bankruptcy Court
## Central District of California

In re    GTS 900 F, LLC

Debtor(s)

Case No.

Chapter    11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1).<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Carpet USA<br>11143 W. Washington Blvd.<br>Culver City, CA 90232 | Carpet USA<br>11143 W. Washington Blvd.<br>Culver City, CA 90232<br>(323) 870-3787 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 1,528,310.02 |
| SASCO<br>2750 Moore Avenue<br>Fullerton, CA 92833 | SASCO<br>2750 Moore Avenue<br>Fullerton, CA 92833<br>(714) 870-0217 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 1,271,221.10 |
| Architectural Glass & Aluminum<br>1151 Marina Village Parkway<br>Suite 101<br>Alameda, CA 94501 | Architectural Glass & Aluminum<br>1151 Marina Village Parkway<br>Suite 101<br>Alameda, CA 94501<br>(510) 444-6100 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 810,848.00 |
| ACCO Engineered Systems,<br>Inc.<br>6265 San Fernando Rd.<br>Glendale, CA 91201 | ACCO Engineered Systems, Inc.<br>6265 San Fernando Rd.<br>Glendale, CA 91201<br>(818) 244-6571 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 642,289.85 |
| Superior Wall Systems<br>1232 E. Orangethorpe Ave.<br>Fullerton, CA 92831 | Superior Wall Systems<br>1232 E. Orangethorpe Ave.<br>Fullerton, CA 92831<br>(714) 278-0000 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 620,977.85 |
| CMF, Inc.<br>1317 West Grove Avenue<br>Orange, CA 92865 | CMF, Inc.<br>1317 West Grove Avenue<br>Orange, CA 92865<br>(714) 637-2409 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 531,671.65 |
| Mr. Crane<br>647 N. Harlton Street<br>Orange, CA 92868 | Mr. Crane<br>647 N. Harlton Street<br>Orange, CA 92868<br>(714) 633-2100 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 451,457.38 |
| Alno Pasadena<br>70 E. Montecito Ave.<br>Sierra Madre, CA 91024 | Alno Pasadena<br>70 E. Montecito Ave.<br>Sierra Madre, CA 91024<br>(626) 355-7500 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 377,494.26 |
| SMG Stone Company<br>8460 San Fernando Rd<br>Sun Valley, CA 91352 | SMG Stone Company<br>8460 San Fernando Rd<br>Sun Valley, CA 91352<br>(818) 767-0000 | Trade debt<br>(subcontractor for<br>Concerto project) | Contingent | 354,756.22 |

In re   GTS 900 F, LLC                                          Case No. _____

Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
## (Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Murray Company 2919 E. Victoria St. Compton, CA 90221 | Murray Company 2919 E. Victoria St. Compton, CA 90221 (310) 637-1500 | Trade debt (subcontractor for Concerto project) | Contingent | 348,735.28 |
| Wescor Construction, Inc. 18607 Ventura Blvd, Suite 204 Tarzana, CA 91356 | Wescor Construction, Inc. 18607 Ventura Blvd, Suite 204 Tarzana, CA 91356 (818) 609-9555 | Trade debt (subcontractor for Concerto project) | Contingent | 347,589.81 |
| Otis Elevator Dept. LA 21684 Pasadena, CA 91185 | Otis Elevator Dept. LA 21684 Pasadena, CA 91185 (626) 396-6280 | Trade debt (subcontractor for Concerto project) | Contingent | 274,392.15 |
| Fire Protection Group, Inc. & Master Fireguard, Corp. 3712 W. Jefferson Blvd. Los Angeles, CA 90016 | Fire Protection Group, Inc. & Master Fireguard, Corp. 3712 W. Jefferson Blvd. Los Angeles, CA 90016 (323) 732-4200 | Trade debt (subcontractor for Concerto project) | Contingent | 232,266.57 |
| DeStefano and Partners, Ltd. 633 W. 5th Street, Suite 5700 Los Angeles, CA 90071 | De Stefano & Partners, Ltd. 633 W. 5th Street, Suite 5700 Los Angeles, CA 90071 (213) 622-2800 | Trade debt (Architect for Concerto project) | Contingent | 223,428.37 |
| Troyer Contracting Company 10122 Freeman Avenue Santa Fe Springs, CA 90670 | Troyer Contracting Company 10122 Freeman Avenue Santa Fe Springs, CA 90670 (562) 944-6452 | Trade debt (subcontractor for Concerto project) | Contingent | 216,341.65 |
| Borbon, Inc. 7312 Walnut Avenue Buena Park, CA 90620 | Borbon, Inc. 7312 Walnut Avenue Buena Park, CA 90620 (714) 994-0170 | Trade debt (subcontractor for Concerto project) | Contingent | 189,307.50 |
| Alno U.S.A. 1 Design Center Place, Suite 653 Boston, MA 02210 | Alno U.S.A. 1 Design Center Place, Suite 653 Boston, MA 02210 (617) 896-2700 | Trade debt (subcontractor for Concerto project) | Contingent | 166,728.71 |
| JW Door Corporation 14764 Oxnard Street Van Nuys, CA 91411 | JW Door Corporation 14764 Oxnard Street Van Nuys, CA 91411 (818) 994-3633 | Trade debt (Subcontractor for Concerto project) | Contingent | 153,748.66 |
| Golden Construction 32910 Deer Glen Lane Santa Clarita, CA 91390-2887 | Golden Construction 32910 Deer Glen Lane Santa Clarita, CA 91390-2887 (661) 268-0071 | Trade debt (subcontractor for Concerto project) | Contingent | 147,118.10 |
| Weiss Sheet Metal Company 1715 W. 135th Street Gardena, CA 90249 | Weiss Sheet Metal Company 1715 W. 135th Street Gardena, CA 90249 (310) 354-2700 | Trade debt (subcontractor for Concerto project) | Contingent | 141,553.00 |

In re   GTS 900 F, LLC                                      Case No. _____
                        Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Manager of Concerto Manager, Inc., Manager of Debtor of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date   9/16/09                          Signature  _____

                                        Sonny H. Astani
                                        Manager of Concerto Manager, Inc., Manager of Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

**"EXHIBIT 3"**

This page is part of your document - DO NOT DISCARD



**20091435373**



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/21/09 AT 03:12PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



200909210020046

**00001225972**

002319881

**SEQ:
01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E516400

RECORDING REQUESTED BY:

MR. Crane, Inc.

09/21/2009

RECORDING REQUESTED BY:

MR. Crane, Inc.


AND WHEN RECORDED MAIL TO:

MR. Crane, Inc.


647 N. Hariton Street
Orange, CA 92868



09/21/2009

*20091435373*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MECHANICS' LIEN

The undersigned, MR. Crane, Inc. claimant, claims a mechanic's lien upon the following described real property: City of Los Angeles, County of Los Angeles, California, 900 S. Figueroa Street, & 9th Street, APN: 5138-002-018, Los Angeles, CA.

The sum of $477,626.00 together with interest thereon at the rate of 1.50 percent per month from May 1, 2009,** is due claimant (after deducting all just credits and offsets) for the following work and/or material furnished by claimant: Crane rental and services.

**plus legal fees (TBD)

Claimant furnished the work and/or materials at the request of, or under contract with: Astani Construction, Inc., 888 S. Figueroa Street, #680, Los Angeles, CA 90017.

The owners and reputed owners of the property are: Equitable Variable Life Insurance Co./, GTS 900 F, LLC, 9595 Wilshire Blvd., #1010, Beverly Hills, CA 90212.


Firm Name: MR. Crane, Inc.

By: _Nancie Raddatz_

Nancie Raddatz / Authorized Agent

---

## VERIFICATION

I, the undersigned, say: I am the Authorized Agent of the claimant of the foregoing mechanic's lien: I have read said claim of mechanic's lien and know the contents thereof: the same is true of my own knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 18, 2009, at San Diego, California.

_Nancie Raddatz_

Nancie Raddatz / Authorized Agent

---

Construction Notice Services, Inc. (46282)

| In re: GTS 900 F, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 2:09-bk-35127 VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2211 Michelson Drive, Seventh Floor, Irvine, California 92612

A true and correct copy of the foregoing document described as **CONDITIONAL OPPOSITION TO: (1) MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 363(f); AND (2) MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL (PROCEEDS OF SALES OF RESIDENTIAL LOFT UNITS); DECLARATION OF STEVE CORSO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 13, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Cathrine M Castaldi   ccastaldi@rusmiliband.com
- John W. Kim   jkim@nossaman.com
- Andy Kong   Kong.Andy@ArentFox.com
- David S. Kupetz   dkupetz@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- Mette H. Kurth   kurth.mette@arentfox.com
- Dare Law   dare.law@usdoj.gov
- Joel S. Miliband   jmiliband@rusmiliband.com
- Gregory M. Salvato   gsalvato@pmcos.com, calendar@pmcos.com
- Marcus Tompkins   mtompkins@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- Helen Ryan Frazer   hfrazer@aalrr.com
- United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On  10/13/2009  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, a nd/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Vincent P. Zurzolo
United States Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012-3332

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: GTS 900 F, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 2:09-bk-35127 VZ |

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>October 13, 2009</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/13/2009 | ANGELA ORTIZ | _Angela Ortiz_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1