1  David S. Kupetz (CA Bar No. 125062)
      dkupetz@sulmeyerlaw.com
2  John M. Samberg (CA Bar No. 115262)
      jsamberg@sulmeyerlaw.com
3  Steven F. Werth (CA Bar No. 205434)
      swerth@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Bankruptcy Counsel for GTS 900 F, LLC,
8  Debtor and Debtor in Possession

9              **UNITED STATES BANKRUPTCY COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

11 | In re                                    | Case No. 2:09-bk-35127-VZ

12 | GTS 900 F, LLC, a California limited      | Chapter 11
   | liability company, aka Concerto,

13 |
   |           Debtor.                        | **DEBTOR'S MOTION FOR FURTHER**
14 |                                          | **EXTENSION OF EXCLUSIVITY RE PLAN**
   |                                          | **OF REORGANIZATION; MEMORANDUM**
15 |                                          | **OF POINTS AND AUTHORITIES;**
   |                                          | **DECLARATION OF SONNY ASTANI**
16 |
17 | Tax ID # 20-2396211                      | **[11 U.S.C. § 1121(d)(1)]**

18 |                                          | Date:    September 7, 2010
   |                                          | Time:    11:00 a.m.
19 |                                          | Place:   U.S. Bankruptcy Court
   |                                          |          Courtroom 1368
20 |                                          |          255 East Temple Street
   |                                          |          Los Angeles, CA  90012

21
22
23
24
25
26
27
28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

**Page**

MOTION ................................................................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
EXTENSION OF EXCLUSIVITY .................................................................. 4

I. STATUS OF DEBTOR'S REORGANIZATION CASE ...................................... 4

II. FACTS .............................................................................................................. 6

III. CAUSE EXISTS TO EXTEND EXCLUSIVITY UNDER SECTION 1121 .... 11

    A.    The Debtor has Exhibited Good Faith Progress Towards
        Reorganization ............................................................................... 14

    B.    The Debtor Should be Allowed Time to Obtain Confirmation of a Plan ..... 15

    C.    The Debtor is Paying its Bills as They Become Due ................................. 16

    D.    The Debtor's Case has Been Pending for Approximately One Year .......... 16

    E.    The Debtor is Not Using Exclusivity in Order to Pressure Creditors to
        Submit to the Debtor's Reorganization Demands ...................................... 17

    F.    The Foregoing Factors Support a Future Extension of Exclusivity ........... 17

IV. CONCLUSION ................................................................................................ 17

DECLARATION OF SONNY ASTANI ................................................................. 19

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

**Page**

## CASES

Henry Mayo Newhall Memorial Hospital,
   282 B.R. at 453............................................................................................... 15

In re Adelphia Communications Corp.,
   352 B.R. 578, 582 (Bankr. S.D.N.Y. 2006) ..................................................... 14, 17

In re Amko Plastics, 26 Inc.,
   197 B.R. 74, 76-77 (Bankr. S.D. Ohio. 1996) ................................................. 13

In re Cramer, Inc.,
   105 B.R. 433, 434 (Bankr. W.D. Tenn. 1989) .................................................. 13

In re Dow Corning Corp.,
   208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) ............................................. 13, 14

In re Henry Mayo Newhall Memorial Hosp.,
   282 B.R. 444, 452 (Bankr. 9th Cir. 2002) (citing In re Dow Corning Corp.
   and In re Express One Int'l, Inc.) ..................................................................... 13

In re Henry Mayo Newhall Memorial Hospital,
   282 B.R. 444, 452 (Bankr. 9th Cir. 2002) ....................................................... 13

In re Public Service Co. of New Hampshire,
   88 B.R. 521, 534 (Bankr. D.N.H. 1988) ........................................................... 12

In re United Press Int'l,
   60 B.R. 265, 269-70 (Bankr. D.D.C. 1986) ..................................................... 14

In re Washington-St. Tammany Elec. Coop., Inc.,
   97 B.R. 852, 854 (E.D. La. 1989) .................................................................... 12


## STATUTES

11 U.S.C. § 1121.................................................................................................. 11, 12, 13

11 U.S.C. § 1121(b) ............................................................................................. 12

11 U.S.C. § 1121(d) ............................................................................................. 12, 16, 17

U.S.C. § 1121(c)(3) .............................................................................................. 12, 17

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## MOTION

1   GTS 900 F, LLC (the "Debtor"), debtor in possession in the above-captioned case,

respectfully requests that the Court extend the exclusivity period, during which no other

party may file a plan, for a period of ninety (90) days, from September 2, 2010 through

November 30, 2010.  This Motion is brought in accordance with 11 U.S.C. § 1121(d), and

is made on the ground that cause exists to increase the section 1121(c)(3) exclusivity

period.

The Debtor's second amended plan of reorganization (the "Pending Plan") is

currently set for a continued confirmation hearing on August 27, 2010.  In the event that

the Pending Plan is not confirmed, the Debtor should be given an opportunity to present

an amended, modified, or new plan of reorganization.  This is not a case where the

Debtor has had the opportunity to present multiple plans that were not confirmed.

Rather, the Debtor has moved expeditiously and diligently with the presentation of a plan

and has received the votes of virtually all creditors, excluding Corus Construction

Venture, LLC ("CCV") and entities created and controlled by CCV, to accept the Debtor's

Pending Plan.

Further, on July 19, 2010, CCV filed a motion for relief from the automatic stay.

CCV's relief from stay motion is currently set for status conference on September 23,

2010, and the Court has held that it will require that the parties engage in mediation with

respect to the relief from stay matter and that a court-appointed expert be identified by

the parties and approved by the Court with regard to the issue of value in connection with

CCV's motion for relief from the automatic stay.  If the Debtor's rights of exclusivity are

not extended, CCV might attempt to circumvent the procedures established by the Court

in connection with the relief from stay motion and seek to present a plan that effectively

implements the foreclosure on the Debtor's real estate project that CCV desires to

accomplish through obtaining relief from the automatic stay.

By this Motion, the Debtor requests a limited extension of exclusivity in order to

allow the Debtor the opportunity to confirm a plan under circumstances where the Debtor

DKUPETZ\ 676566.1                    2

1  has advanced the administration of this case in an appropriate, expeditious, and diligent

2  manner.  The Debtor submits that such an extension is appropriate and that it is entitled

3  to a reasonable period to obtain confirmation of the Plan without the potential threat,

4  diversion, expense and/or delay of a competing plan.

5      This Motion is based on this Motion, the attached Memorandum of Points and

6  Authorities, the Declaration of Sonny Astani attached hereto, the facts and circumstances

7  of this case, and such other argument and evidence as the Court may consider.

8      **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

9      1.      Granting this Motion without prejudice to the Debtor's ability to seek further

10  extensions of exclusivity;

11      2.      Extending the exclusivity period referred to in section 1121(c)(3) by 90

12  days, up to and including November 30, 2010; and

13      3.      Granting such other relief as the Court deems just and proper.

14

15  DATED: _August 12_ , 2010      **Sulmeyer**Kupetz
                                   A Professional Corporation
16

17

18                                 By: _____
                                   David S. Kupetz
19                                 Bankruptcy Counsel for GTS 900 F, LLC,
                                   Debtor and Debtor in Possession
20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

## EXTENSION OF EXCLUSIVITY

### I.

### STATUS OF DEBTOR'S REORGANIZATION CASE

On September 17, 2009, GTS 900, F, LLC (the "Debtor"), debtor in possession in the above-captioned case, filed a voluntary chapter 11 petition. The Debtor initially filed a Disclosure Statement and Plan of Reorganization on January 13, 2010. On February 3, 2010, the Debtor filed a motion (the "First Motion") to extend the 180-day exclusivity period during which no other party may file a plan. The only objection (the "Objection") to the First Motion was filed by Corus Construction Venture, LLC ("CCV"). Prior to the hearing on the First Motion, the Debtor and CCV reached an agreement (the "Agreement") providing for a continuance of the hearing on the First Motion and for an extension of exclusivity through April 22, 2010, without prejudice to the granting of further extensions.

The First Motion came on for initial hearing on March 2, 2010. At the initial hearing on the First Motion, the terms of the Agreement were read into the record and the Court approved the Agreement as reasonable and appropriate under the circumstances. Pursuant to the Agreement and the Court's order entered on March 10, 2010: (1) the hearing on the First Motion was continued to April 22, 2010; (2) the exclusivity period for the Debtor to solicit acceptances of a plan of reorganization was extended through and including April 22, 2010; (3) the extension of exclusivity pursuant to the Court's order entered on March 10, 2010, was without prejudice to the Court granting the Debtor further extensions of exclusivity beyond that requested in the First Motion in the event that the Debtor requested such extensions in accordance with the applicable rules, (4) the Debtor was authorized, if it desired, to file a supplement to the First Motion by filing any such supplement at least 24 days prior to the continued hearing on the First Motion, and (5) CCV was authorized to file a response to any such supplement and/or supplement the Objection by filing supplemental papers at least 14 days prior to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    continued hearing on the First Motion.  Neither the Debtor nor CCV filed any

2    supplemental papers.

3          The First Motion came on for continued hearing on April 22, 2010.  At the

4    continued hearing, the Court granted the First Motion over the objection of CCV.  The

5    Court extended the exclusivity period during which only the Debtor may file a plan of

6    reorganization in this case through and including June 14, 2010, as requested in the First

7    Motion.  Such extension was without prejudice to the Debtor requesting further

8    extensions on a timely basis.  Subsequently, at a hearing conducted by the Court in this

9    case on April 27, 2010, in connection with a motion by the Debtor to modify adequate

10   protection payments to CCV, the Court approved an agreement including a provision that

11   the Debtor's extension of exclusivity would run through and including June 4, 2010,

12   without prejudice to further extensions.

13         On May 13, 2010, the Debtor filed a motion to further extend the exclusivity period

14   during which no other party may file a plan of reorganization in this case.  The only

15   objection to the motion was filed by CCV.  On June 7, 2010, CCV filed a plan of

16   reorganization in this case.  CCV's plan provided for a sale of the Debtor's assets and for

17   CCV's right to credit bid at such sale.  The Debtor's motion for further extension of

18   exclusivity came on for hearing on June 8, 2010, and the Court granted the motion over

19   CCV's objection, extending the Debtor's right of exclusivity through and including

20   September 2, 2010.

21         The Court approved the Debtor's Disclosure Statement at a hearing conducted on

22   April 22, 2010.  At that time, the Court set a hearing on confirmation of the Debtor's plan

23   for August 6, 2010.  On July 19, 2010, CCV, filed a motion for relief from the automatic

24   stay.  CCV's relief from stay motion is currently set for status conference on September

25   23, 2010.  The Court has held that it will require that the parties engage in mediation with

26   respect to the relief from stay matter and that a court-appointed expert be identified and

27   participate in the matter with regard to the issue of value of the Debtor's real estate

28   project.  A joint status report is due to be filed on September 16, 2010, setting forth (a) a

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   proposed discovery schedule with respect to the relief from stay matter, (b) the status of

2   the parties' efforts to identify a proposed court-appointed valuation expert, and (c) a

3   proposed mediation schedule.

4       A continued hearing is currently scheduled on the Debtor's pending plan of

5   reorganization (the "Pending Plan") for August 27, 2010.  The Pending Plan is the

6   Debtor's first plan to come before the Court for confirmation.  Since the commencement

7   of the Debtor's chapter 11 case on September 17, 2009, the Debtor has proceeded

8   diligently with the administration of this case, the sale of units in the Debtor's loft building,

9   the process of completing construction on phase I of the Debtor's project, including

10  Tower I, and among other things, the development and presentation of a plan of

11  reorganization.

II.

### FACTS

14      The Debtor is the owner and developer of an approximately 1,000,000 square foot

15  residential real estate development known as "Concerto" located in downtown Los

16  Angeles.  The Concerto project is built on nearly a full city block ideally situated at the

17  north end of an evolving entertainment district anchored by the Ritz Carlton (110 hotel

18  rooms and 214 residences), JW Marriott (600 hotel rooms), Staples Center and the $2

19  billion L.A. Live, a sports and entertainment complex, sometimes described as Times

20  Square West.  Concerto is part of a wave of development that has gained momentum

21  since 2003, when Los Angeles expanded adaptive reuse policies similar to those of New

22  York.  Construction on the Concerto project started in 2007 and was timed to come on

23  line with a full range of residential units and retail space at the same time as L.A. Live

24  and the new Ralph's Supermarket serving downtown residents.

25      In 2004, the Debtor purchased the 100,000 square foot parcel on which the

26  Concerto project is located.  The development team envisioned an environmentally

27  conscious all glass residential structure with a range of moderately·priced to higher priced

28  condominium units, together with shared amenities, ample parking and retail and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   restaurant space as part of the "new downtown L.A."  In all, the Debtor invested more

2   than $63,000,000 as equity funds into the Concerto project (with more than $54,500,000

3   in cash and approximately $8,500,000 consisting of deferred developer's and general

4   contactor's fees), starting one of the first high rise residential construction projects in

5   downtown Los Angeles in more than 15 years.

6        Phase I of the Debtor's development consists of Tower I (containing 271

7   residential units and retail and storage space), the Loft (containing 77 residential units

8   and retail and storage space), and the Parking Garage (a seven-story partly underground

9   parking structure consisting of 977 stalls).  As of this time, phase I of the Project is

10  virtually complete.  A phase II of the Concerto development consisting of Tower II (a

11  second 30-story tower) is contemplated for the future, and its infrastructure (including

12  subterranean parking, elevator shafts, DWP vaults, excavation, shoring and some

13  foundation) and some common recreational areas have been completed. Tower II

14  remains nearly 25-30% complete.  It will require an additional 15 months from

15  recommencement of work for construction of Tower II to be completed.  The Debtor's

16  phase II assets also serve as collateral for the construction loan made by Corus Bank to

17  the Debtor, although that loan was never designed to fund construction of Tower II.

18  Corus Bank's cost segregator allocated $25 million of total actual costs (on both phases)

19  to Phase II in 2007.

20       On September 11, 2009, the Federal government seized and shut down Corus

21  Bank.  Thereafter, CCV acquired the Corus Bank construction loan to the Debtor.  On

22  October 7, 2009, Starwood Capital Group ("Starwood") issued a press release stating

23  that Starwood, TPG Capital, Perry Capital and WLR LeFrak had reached a definitive

24  agreement with the FDIC to acquire an equity interest in a limited liability company that

25  would hold construction loans and real estate owned assets formerly owned by Corus

26  Bank.  The Debtor's construction loan was one of the significant assets acquired by a

27  newly formed joint entity consisting of the FDIC and the Starwood-lead investment

28  consortium.  A true and correct copy of the Press Release is attached as Exhibit 10 to the

1   Debtor's Disclosure Statement and Plan pending before the Court. Among other things,

2   the Press Release stated that the transaction equated to approximately 60% of unpaid

3   principal balance and a significantly greater discount to total construction costs, that the

4   FDIC will hold a 60% equity interest in the newly formed Corus Construction Ventures,

5   LLC ("Corus LLC"), and will provide financing with a 0% coupon for 50% of the purchase

6   price to Corus LLC.

7       The Debtor commenced the above-captioned reorganization case after Corus

8   Bank was seized and shut down by the Federal government. Since that time, the Debtor

9   has moved forward expeditiously and diligently with the administration of this

10  reorganization case, the sale of units in the Debtor's Loft building (of the total 77 units in

11  the Loft building, only 2 units remain available for sale), the process of completing

12  construction on phase I of the Debtor's project, including Tower I, and among other

13  things, the development and presentation of a plan of reorganization. The Court

14  approved the Debtor's Disclosure Statement pursuant to an order entered on May 5,

15  2010. The Official Creditors' Committee appointed in the Debtor's chapter 11 case has

16  advised the Debtor that the Committee supports the Debtor's pending Plan of

17  reorganization (the "Pending Plan"). Except for CCV and entities set up and controlled

18  by CCV, creditors have voted overwhelmingly in favor of the Pending Plan and a

19  continued hearing on confirmation of the Pending Plan is currently set for August 27,

20  2010.

21      The Debtor's business plan supports the feasibility of the Debtor's Plan of

22  Reorganization currently pending before the Court. The Debtor's business plan primarily

23  involves the sale of residential units at the Concerto project and use of the sale proceeds

24  to (along with commercial income generated from retail, parking, and storage space at

25  the Project) satisfy the Debtor's debts by payment of allowed claims in full over time. The

26  financial model that reflects the Debtor's business plan and sets forth an adequate basis

27  for performing the Pending Plan is attached to the Debtor's pending Disclosure

28  Statement and Plan as Exhibits 1 - 7. The Debtor's ability to perform under a plan of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | reorganization is not complicated by numerous factors.  Rather, its ability is primarily

2 | based simply upon the velocity and sales prices of units of the Debtor's real estate

3 | project that can be achieved by the Debtor.

4 |      The Debtor has received a TCO (Temporary Certificate of Occupancy) for Tower I

5 | and currently, approximately $4 million in construction costs remain (the Debtor has

6 | approximately $12 million in cash and escrows).  Furthermore, upon confirmation of the

7 | Pending Plan, the Debtor anticipates that it will be able to close and move in 30 new

8 | purchasers to Tower I in or around September 2010 netting $15 million (an additional

9 | $10 million will already be in the debtor in possession account).  Thus, a total of

10 | approximately $25 million should be available to distribute under the Pending Plan on or

11 | shortly following the Effective Date of the Pending Plan.

12 |      The Concerto project is located in downtown Los Angeles, which is currently one

13 | of the few residential real estate markets with strong buyer demand.  Downtown Los

14 | Angeles has more than 35 million square feet of office space and more than 500,000

15 | people are employed in the Downtown Los Angeles area.  Further, the largest

16 | convention, sports and entertainment epicenter in the western United States is within one

17 | block of the Concerto project.  All of these factors contribute to a strong demand and a

18 | sustainable market for the sale of units at the Concerto project.

19 |      The reasonably anticipated absorption rate for the future sale of condominium

20 | units in the Downtown Los Angeles market has been steadily increasing.  The two major

21 | contributing factors to this improvement are (a) the diminishing supply of existing

22 | condominium units and no new construction on the horizon and (b) the strong and

23 | growing demand for Downtown housing.  These factors show that the absorption rate

24 | used in the Debtor's business plan described in the Disclosure Statement and Plan of 8

25 | units per month is very conservative.

26 |      The closing of sales of units in the Loft building began following the Debtor

27 | obtaining Court authority to close such sales in this chapter 11 case.  Construction

28 | necessary to complete the Lofts and Tower I was delayed as a result of the lack of an

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

1   agreement on updated construction budget.  Nonetheless, of the total of 77 units for the

2   Loft building only 2 units (units 401 and 700) are still available for sale.  As of July 15,

3   2010, the Debtor has paid Corus LLC $8,250,000 in postpetition payments.

4   　　　On October 29, 2009, CCV filed a Proof of Claim in this chapter 11 case in the

5   amount of $162,662,216.26, which was assigned claim number 16 in the claims register

6   in this case.  Thereafter, on January 29, 2010, CCV filed an amended proof of claim.  The

7   amendment did not change the amount of the claim asserted by CCV.  The Proof of

8   Claim is based upon a Promissory Note dated as of July 2, 2007 given by the Debtor to

9   Corus Bank, which is CCV's predecessor in interest, and the Deed of Trust given by the

10   Debtor to Corus Bank.  Both the Promissory Note and the Deed of Trust reference the

11   underlying Construction Loan Agreement between the Debtor and Corus Bank.

12   　　　In response to CCV's Proof of Claim, the Debtor filed on December 29, 2009, a

13   Complaint and Objection to Claim against Corus LLC thereby commencing an adversary

14   proceeding in this Bankruptcy Case entitled *GTS 900 F, LLC v. Corus Construction*

15   *Venture, LLC, Adv. No. 2:09-ap-03557-VZ*.  The Complaint, as amended on February 3,

16   2010, alleges that the claim filed by CCV should be reduced because of the misconduct

17   of Corus Bank in the administration of the construction loan.  As Corus Bank's successor

18   in interest and assignee of Corus Bank's liabilities under the Loan Agreement, CCV

19   acquired the loan with knowledge of a prepetition lawsuit brought by the Debtor against

20   Corus Bank and the injuries alleged to the Concerto Project.  The Debtor  alleges that

21   CCV's Proof of Claim should be disallowed to the extent of damages caused by and

22   defenses resulting from Corus Bank's breaches of its contractual obligations and

23   breaches of the implied covenant of good faith and fair dealing arising from the Loan

24   Agreement and related documents.

25   　　　The Amended Complaint asserts claims for (1) declaratory relief as to the amount

26   of the CCV claim, (2) offset and recoupment of damages against the loan amount, and

27   (3) equitable subordination of the CCV claim and lien to the claims of creditors holding

28   allowed secured and unsecured claims against the Debtor.  The Amended Complaint

1 alleges that as a result of Corus Bank's actions and inactions, the Debtor has been

2 damaged in an amount to be determined, but believed to be in excess of $46,000,000.

3 The Objection to Proof of Claim asserts that CCV's claims should be reduced to the

4 extent of the damages caused by the conduct of its predecessor and assignor, Corus

5 Bank. Litigation with respect to this matter is pending before the Court. As of this time,

6 CCV's claim against the Debtor has not been allowed, except for the limited purpose of

7 voting on the Pending Plan.

8       CCV filed personal guarantee lawsuits on June 2, 2010, in Chicago, Illinois,

9 against  Sonny Astani, Jo Cho (Sonny Astani's wife), and Marco Astani in connection with

10 CCV's disputed claim against the Debtor.

11       On July 19, 2010, CCV filed its Motion for relief from the automatic stay with

12 apparent disregard for the impact that such a motion might have on the final stages of

13 completion of phase I of the Concerto project and on subcontractors who are working

14 vigorously to complete construction of phase I.  In the Motion, CCV asserts that its

15 $122,000,000 valuation for the entire Concerto project as of April 6, 2010, "is by far the

16 most accurate and reliable estimate of the Project's true current value and clearly shows

17 that there is no equity in the Project." See CCV's memorandum of points and authorities

18 submitted with the Motion (p. 38 of 41).  In the Motion, CCV argues that the Debtor

19 speculates at the risk and expense of creditors.  However, the Debtor believes that its

20 business plan is conservative.  Moreover, the Debtor has invested more than

21 $54,500,000 in cash in the Project and has already made $8,250,000 in postpetition

22 payments to CCV (and CCV's claim has not yet even been allowed).  Further, all other

23 creditors (all eligible voters other than CCV and entities it created and controls) voted to

24 accept and support confirmation of the Pending Plan.

25                         III.

26 **CAUSE EXISTS TO EXTEND EXCLUSIVITY UNDER SECTION 1121**

27       Bankruptcy Code section 1121 provides, in pertinent part, as follows:

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    (b) Except as otherwise provided in this section, only the
2    debtor may file a plan until after 120 days after the date of the
     order for relief under this chapter.

3    (c) Any party in interest, including the debtor, the trustee, a
     creditors' committee, an equity security holders' committee, a
4    creditor, an equity security holder, or any indenture trustee,
     may file a plan if and only if –

5
         (1)    a trustee has been appointed under this chapter;
6
         (2)    the debtor has not filed a plan before 120 days after the date of the
7                order for relief under this chapter; or

8        (3)    the debtor has not filed a plan that has been accepted, before 180
                days after the date of the order for relief under this chapter, by each
9                class of claims or interests that is impaired under the plan.

10   (d)(1) Subject to paragraph (2), on request of a party in
     interest made within the respective periods specified in
11   subsections (b) and (c) of this section and after notice and a
     hearing, the court may for cause reduce or increase the 120-
12   day period or the 180-day period referred to in this section.

13   (2)(A) This 120-day period specified in paragraph (1) may not
     be extended beyond a date that is 18 months after the date of
14   the order for relief under this chapter.

15   (B) The 180-day period specified in paragraph (1) may not be
     extended beyond a date that is 20 months after the date of the
16   order for relief under this chapter.

17   11 U.S.C. § 1121 (emphasis added).

18          Thus, under section 1121, a debtor has the exclusive right to file a plan of

19   reorganization for the first 120 days after the date of the order for relief, subject to certain

20   limited exceptions. See 11 U.S.C. § 1121(b). If a debtor files a plan within the 120-day

21   exclusivity period, section 1121(c)(3) provides that exclusivity is automatically extended

22   for an additional 60 days. See 11 U.S.C. § 1121(c)(3). These exclusivity periods may be

23   increased for "cause." See 11 U.S.C. § 1121(d).

24          The Bankruptcy Code does not define "cause." Whether cause exists to extend

25   the exclusivity period(s) is in the discretion of the court. See, e.g., In re Washington-St.

26   Tammany Elec. Coop., Inc., 97 B.R. 852, 854 (E.D. La. 1989); In re Public Service Co. of

27   New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("the legislative intent has been

28   construed to leave the question to the reorganization court in the exercise of its discretion

1  and to promote maximum flexibility to suit various types of reorganization proceedings.");

2  see also In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 452 (Bankr. 9th Cir.

3  2002) (stating that "the question is inherently fact-specific and calls for a delicate exercise

4  of judgment about which seasoned judges could differ."); In re Cramer, Inc., 105 B.R.

5  433, 434 (Bankr. W.D. Tenn. 1989) ("[T]he hallmark of 11 U.S.C. § 1121 is flexibility").

6       In determining whether cause exists to extend the exclusivity period(s), courts

7  consider the following factors:

8       1.   the size and complexity of the case;

9       2.   the necessity of sufficient time to permit the debtor to negotiate a
            plan of reorganization and prepare adequate information.
10

11      3.   the existence of good faith progress toward reorganization;

12      4.   the fact that the debtor is paying its bills as they become due;

13      5.   whether the debtor has demonstrated reasonable prospects for filing
            a viable plan;

14      6.   whether the debtor has made progress in negotiations with its
            creditors;
15

16      7.   the amount of time which has elapsed in the case;

17      8.   whether the debtor is seeking an extension of exclusivity in order to
            pressure creditors to submit to the debtor's reorganization demands;
            and
18

19      9.   whether an unresolved contingency exists.

20  In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (citing In re

21  Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)); see also In re Henry

22  Mayo Newhall Memorial Hosp., 282 B.R. 444, 452 (Bankr. 9th Cir. 2002) (citing In re Dow

23  Corning Corp. and In re Express One Int'l, Inc.).

24       This nine-factor test, however, does not require a debtor to satisfy each factor.

25  Rather, courts examine the factors together in the context of a particular case.  See In re

26  Amko Plastics, 26 Inc., 197 B.R. 74, 76-77 (Bankr. S.D. Ohio 1996) (granting five month

27  exclusivity extension where debtor exhibited substantial turn-around efforts).

28  Consideration of an exclusivity motion should also involve "a broader, more global view -

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  focused on what is best for these chapter 11 cases; most in keeping with the letter and

2  spirit of chapter 11; and what is most appropriate under the unique facts" of cases before

3  the Court. *See* In re Adelphia Communications Corp., 352 B.R. 578, 582 (Bankr.

4  S.D.N.Y. 2006).

5      As illustrated below, the application of the Dow Coming factors for determining

6  whether "cause" exists to further extend exclusivity under section 1129(d), favors

7  granting the Debtor's request for an additional 90-day extension. *See* In re Dow Corning

8  Corp., 208 RR. 661, 664-65 (Bankr. E.D. Mich. 1997) (denying creditors' committee's

9  joint motion to terminate two-year exclusivity period in case involving mass tort claims,

10  and enumerating nine factors to be evaluated).

11      A.    The Debtor has Exhibited Good Faith Progress Towards Reorganization

12      In considering an extension of a debtor's exclusivity periods, courts often assess a

13  debtor's progress during the initial stages of a case toward development of a plan. *See*

14  In re United Press Int'l, 60 B.R. 265, 269-70 (Bankr. D.D.C. 1986) (discussing an

15  extension of exclusivity). A key purpose of exclusivity is to provide a debtor with

16  incentive to file a plan. Here, the Debtor has timely filed a plan and has demonstrated

17  good faith progress toward reorganization. The Court approved the Debtor's Disclosure

18  Statement pursuant to an order entered on May 5, 2010. A hearing on confirmation of

19  the Pending Plan was initially set for August 6, 2010, and a continued hearing regarding

20  confirmation of the Pending Plan is currently set for August 27, 2010. Since the

21  commencement of the Debtor's chapter 11 case on September 17, 2009, the Debtor has

22  proceeded diligently with the administration of this case, the sale of units in the Debtor's

23  loft building, the process of completing construction on phase I of the Debtor's project,

24  including Tower I, and among other things, the development and presentation of plan of

25  reorganization.

26      In the event that the Pending Plan is not confirmed at the hearing currently

27  scheduled for August 27, 2010, the Debtor should be given an opportunity to present an

28  amended, modified, or new plan of reorganization. This is not a case where the Debtor

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 │ has had the opportunity to present multiple plans that were not confirmed.  Rather, the

2 │ Debtor has moved expeditiously and diligently with the presentation of a plan and has

3 │ received the votes of all eligible creditors to accept the plan, except CCV and entities

4 │ created and controlled by CCV.

5 │       B.    The Debtor Should be Allowed Time to Obtain Confirmation of a Plan

6 │       The Ninth Circuit BAP has noted that the "key question" is whether an extension of

7 │ exclusivity will "facilitate movement toward a fair and equitable resolution of the case,

8 │ taking into account all the divergent interests involved." Henry Mayo Newhall Memorial

9 │ Hospital, 282 B.R. at 453.  Here, the Debtor was moved toward confirmation as

10 │ expeditiously as is feasible.  However, the initial hearing on confirmation of the Plan was

11 │ not set until August 6, 2010, and the currently scheduled continued confirmation hearing

12 │ is set for August 27, 2010.  As discussed above, on July 19, 2010, CCV filed a motion for

13 │ relief from the automatic stay.  CCV's relief from stay motion is currently set for status

14 │ conference on September 23, 2010, and the Court has held that there will be mediation

15 │ and a court-appointed valuation expert in the relief from stay matter.  CCV previously filed

16 │ a plan in this case that sought to impose a sale on the Debtor that would allow CCV to

17 │ credit bid at such a sale.[1]  This would be the equivalent of the foreclosure that CCV

18 │ seeks to implement in connection with its motion for relief from the automatic stay.

19 │ Assuming that the Debtor's Pending Plan is not confirmed, if a further extension of

20 │ exclusivity is not granted, CCV may be able to circumvent the procedures the Court has

21 │ put in place with respect to the pending relief from stay matter and attempt to impose the

22 │ equivalent of a foreclosure through the presentation of a plan under which it would credit

23 │ bid its disputed debt.

24 │       Under such circumstances, the Debtor should be given an opportunity to obtain

25 │ confirmation of the Plan without the potential of dealing with a competing plan and the

26 │

27 │ [1] Additionally, CCV's plan sought to eliminate the Debtor's objection to CCV's claim and dismiss the litigation pending against CCV.

28 │

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  inevitable expense, distraction, and diversion of resources, and the potential delay that

2  would result.  Doing otherwise would provide a disincentive to debtors to continue to work

3  with creditors to consensually resolve plan issues.  Moreover, if exclusivity is not

4  extended, parties may divert time and resources away from continuing to explore and

5  negotiate a consensual resolution to pursuing and defending competing plans.  Such a

6  battle will only result in substantial costs and potential delay that may otherwise be

7  avoided.

8        C.     The Debtor is Paying its Bills as They Become Due

9        The Debtor is current on its post-petition operating expenses, including as of July

10  15, 2010, having made $8,250,000 of postpetition payments to Corus LLC.  The Debtor is

11  in compliance with reporting and other requirements imposed by the Bankruptcy Code,

12  Bankruptcy Rules, Local Rules, and the United States Trustee.  The Debtor is acting

13  responsibly as a debtor-in-possession.  Therefore, this factor weighs in favor of granting

14  this Motion and extending exclusivity period.

15        D.     The Debtor's Case has Been Pending for Approximately One Year

16        The Debtor's case has been pending for approximately one year and, as

17  discussed above, the Debtor has move this case forward on an appropriate expeditious

18  basis.  Further, the Debtor is well within the time frame added to section 1121(d) by

19  Congress in the 2005 amendments to the Bankruptcy Code.  *See* 11 U.S.C. § 1121(d)

20  (prohibiting exclusivity extensions of more than 18 months (to file a plan) or 20 months (to

21  solicit votes and obtain confirmation of a plan)).  Accordingly, in the event that the

22  Pending Plan is not confirmed on August 27, 2010, the Debtor should be allowed the

23  opportunity to move forward with amended, modified, or new plan, without having to

24  address a competing plan that might be nothing more than an attempt to implement what

25  effectively would be a foreclosure by CCV.

26

27

28

E.    The Debtor is Not Using Exclusivity in Order to Pressure Creditors to
Submit to the Debtor's Reorganization Demands

The Debtor is not using the exclusivity periods for the improper purpose of delay, to gain advantage in negotiations with any claimants, or to pressure creditors to accede to the terms of its plan. The Debtor has previously participated in mediation with CCV and the Committee and is anticipating further court-ordered mediation in connection with CCV's pending motion for relief from the automatic stay. Given the good faith progress made by the Debtor, it is appropriate to provide the Debtor with an opportunity to confirm a plan without the potential imposition of a competing plan. *See* also Adelphia Communications, 352 B.R. 589 (concluding that "it would be premature to say that it's time for the Debtors to abandon their efforts to bring creditors together, and to subject the estate to the discord that would result from competing plans").

F.    The Foregoing Factors Support a Future Extension of Exclusivity

As set forth above, cause exists for the granting of the requested extension. The Debtor has diligently pursued the development and presentation of a plan. The Debtor has moved the case forward as quickly as feasible under the circumstances. The Debtor should be allowed the opportunity to confirm a plan without having to address a competing plan. For the aforementioned reasons, cause exists under section 1121(d) to extend the exclusivity for an additional 90 days.

IV.

**CONCLUSION**

For the reasons set forth above, the Debtor respectfully requests that the Court enter an order:

1.    Granting a 90-day extension of exclusivity, as requested above, without prejudice to the Debtor's ability to seek further extensions of exclusivity;

2.    Extending the period referred to in section 1121(c)(3) up to and including November 30, 2010;  and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1        3.      Granting such other relief as the Court deems just and proper.

2

3    August 12, 2010                    **Sulmeyer**Kupetz
                                       A Professional Corporation

4

5                                      By: _____

6                                          David S. Kupetz
                                           Bankruptcy Counsel for GTS 900 F, LLC,
7                                          Debtor and Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DKUPETZ\ 676566.1                          18

**DECLARATION OF SONNY ASTANI**

I, Sonny Astani, declare:

1.      I have personal knowledge of the facts stated herein.  I can testify that said facts are true and correct.

2.      I am the authorized representative of GTS 900 F, LLC ("GTS" or the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 reorganization case.

3.      GTS is a California limited liability company.  I am an equity holder in and/or control entities that are equity holders in GTS.  I am also the President of Concerto Manager, Inc., the managing entity of the Debtor.

4.      On September 17, 2009, the Debtor filed a voluntary chapter 11 petition.

5.      The Debtor is the owner and developer of an approximately 1,000,000 square foot residential real estate development known as "Concerto" located in downtown Los Angeles.  The Concerto project is built on nearly a full city block ideally situated at the north end of an evolving entertainment district anchored by the Ritz Carlton (110 hotel rooms and 214 residences), JW Marriott (600 hotel rooms), Staples Center and the $2 billion L.A. Live, a sports and entertainment complex, sometimes described as Times Square West.  Concerto is part of a wave of development that has gained momentum since 2003, when Los Angeles expanded adaptive reuse policies similar to those of New York.  Construction on the Concerto project started in 2007 and was timed to come on line with a full range of residential units and retail space at the same time as L.A. Live and the new Ralph's Supermarket serving downtown residents.

6.      In 2004, the Debtor purchased the 100,000 square foot parcel on which the Concerto project is located.  The development team envisioned an environmentally conscious all glass residential structure with a range of moderately priced to higher priced condominium units, together with shared amenities, ample parking and retail and restaurant space as part of the "new downtown L.A."  In all, the Debtor

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  invested more than $63,000,000 as equity funds into the Concerto project (with more

2  than $54,500,000 in cash and approximately $8,500,000 consisting of deferred

3  developer's and general contactor's fees), starting one of the first high rise residential

4  construction projects in downtown Los Angeles in more than 15 years.

5         7.    Phase I of the Debtor's development consists of Tower I (containing

6  271 residential units and retail and storage space), the Loft (containing 77 residential

7  units and retail and storage space), and the Parking Garage (a seven-story partly

8  underground parking structure consisting of 977 stalls).  As of this time, phase I of the

9  Project is virtually complete.  A phase II of the Concerto development consisting of Tower

10  II (a second 30-story tower) is contemplated for the future, and its infrastructure (including

11  subterranean parking, elevator shafts, DWP vaults, excavation, shoring and some

12  foundation) and some common recreational areas have been completed. Tower II

13  remains nearly 25-30% complete.  It will require an additional 15 months from

14  recommencement of work for construction of Tower II to be completed.  The Debtor's

15  phase II assets also serve as collateral for the construction loan made by Corus Bank to

16  the Debtor, although that loan was never designed to fund construction of Tower II.

17  Corus Bank's cost segregator allocated $25 million of total actual costs (on both phases)

18  to Phase II in 2007.

19         8.    On September 11, 2009, the Federal government seized and shut

20  down Corus Bank.  Thereafter, CCV acquired the Corus Bank construction loan to the

21  Debtor.  On October 7, 2009, Starwood Capital Group ("Starwood") issued a press

22  release stating that Starwood, TPG Capital, Perry Capital and WLR LeFrak had reached

23  a definitive agreement with the FDIC to acquire an equity interest in a limited liability

24  company that would hold construction loans and real estate owned assets formerly

25  owned by Corus Bank.  The Debtor's construction loan was one of the significant assets

26  acquired by a newly formed joint entity consisting of the FDIC and the Starwood-lead

27  investment consortium.  A true and correct copy of the Press Release is attached as

28  Exhibit 10 to the Debtor's Disclosure Statement and Plan pending before the Court.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Among other things, the Press Release stated that the transaction equated to

2  approximately 60% of unpaid principal balance and a significantly greater discount to

3  total construction costs, that the FDIC will hold a 60% equity interest in the newly formed

4  Corus Construction Ventures, LLC ("Corus LLC"), and will provide financing with a 0%

5  coupon for 50% of the purchase price to Corus LLC.

6        9.     The Debtor commenced the above-captioned reorganization case

7  after Corus Bank was seized and shut down by the Federal government.  Since that time,

8  the Debtor has moved forward expeditiously and diligently with the administration of this

9  reorganization case, the sale of units in the Debtor's Loft building (of the total 77 units in

10  the Loft building, only 2 units remain available for sale), the process of completing

11  construction on phase I of the Debtor's project, including Tower I, and among other

12  things, the development and presentation of a plan of reorganization.  The Court

13  approved the Debtor's Disclosure Statement pursuant to an order entered on May 5,

14  2010.  The Official Creditors' Committee appointed in the Debtor's chapter 11 case has

15  advised the Debtor that the Committee supports the Debtor's pending Plan of

16  reorganization (the "Pending Plan").  Except for CCV and entities set up and controlled

17  by CCV, creditors have voted overwhelmingly in favor of the Pending Plan and a

18  continued hearing on confirmation of the Pending Plan is currently set for August 27,

19  2010.

20        10.    The Debtor's business plan supports the feasibility of the Debtor's

21  Plan of Reorganization currently pending before the Court.  The Debtor's business plan

22  primarily involves the sale of residential units at the Concerto project and use of the sale

23  proceeds to (along with commercial income generated from retail, parking, and storage

24  space at the Project) satisfy the Debtor's debts by payment of allowed claims in full over

25  time.  The financial model that reflects the Debtor's business plan and sets forth an

26  adequate basis for performing the Pending Plan is attached to the Debtor's pending

27  Disclosure Statement and Plan as Exhibits 1 - 7.  The Debtor's ability to perform under a

28  plan of reorganization is not complicated by numerous factors.  Rather, its ability is

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 primarily based simply upon the velocity and sales prices of units of the Debtor's real

2 estate project that can be achieved by the Debtor.

3      11.    The Debtor has received a TCO (Temporary Certificate of

4 Occupancy) for Tower I and currently, approximately $4 million in construction costs

5 remain (the Debtor has approximately $12 million in cash and escrows).  Furthermore,

6 upon confirmation of the Pending Plan, the Debtor anticipates that it will be able to close

7 and move in 30 new purchasers to Tower I in or around September 2010 netting $15

8 million (an additional $10 million will already be in the debtor in possession account).

9 Thus, a total of approximately $25 million should be available to distribute under the

10 Pending Plan on or shortly following the Effective Date of the Pending Plan.

11      12.    The Concerto project is located in downtown Los Angeles, which is

12 currently one of the few residential real estate markets with strong buyer demand.

13 Downtown Los Angeles has more than 35 million square feet of office space and more

14 than 500,000 people are employed in the Downtown Los Angeles area.  Further, the

15 largest convention, sports and entertainment epicenter in the western United States is

16 within one block of the Concerto project.  All of these factors contribute to a strong

17 demand and a sustainable market for the sale of units at the Concerto project.

18      13.    The reasonably anticipated absorption rate for the future sale of

19 condominium units in the Downtown Los Angeles market has been steadily increasing.

20 The two major contributing factors to this improvement are (a) the diminishing supply of

21 existing condominium units and no new construction on the horizon and (b) the strong

22 and growing demand for Downtown housing.  These factors show that the absorption rate

23 used in the Debtor's business plan described in the Disclosure Statement and Plan of 8

24 units per month is very conservative.

25      14.    The closing of sales of units in the Loft building began following the

26 Debtor obtaining Court authority to close such sales in this chapter 11 case.

27 Construction necessary to complete the Lofts and Tower I was delayed as a result of the

28 lack of an agreement on updated construction budget.  Nonetheless, of the total of 77

1 | units for the Loft building only 2 units (units 401 and 700) are still available for sale.  As of

2 | July 15, 2010, the Debtor has paid Corus LLC $8,250,000 in postpetition payments.

3 |        15.    On October 29, 2009, CCV filed a Proof of Claim in this chapter 11

4 | case in the amount of $162,662,216.26, which was assigned claim number 16 in the

5 | claims register in this case.  Thereafter, on January 29, 2010, CCV filed an amended

6 | proof of claim.  The amendment did not change the amount of the claim asserted by

7 | CCV.  The Proof of Claim is based upon a Promissory Note dated as of July 2, 2007

8 | given by the Debtor to Corus Bank, which is CCV's predecessor in interest, and the Deed

9 | of Trust given by the Debtor to Corus Bank.  Both the Promissory Note and the Deed of

10 | Trust reference the underlying Construction Loan Agreement between the Debtor and

11 | Corus Bank.

12 |        16.    In response to CCV's Proof of Claim, the Debtor filed on December

13 | 29, 2009, a Complaint and Objection to Claim against Corus LLC thereby commencing

14 | an adversary proceeding in this Bankruptcy Case entitled *GTS 900 F, LLC v. Corus*

15 | *Construction Venture, LLC, Adv. No. 2:09-ap-03557-VZ.*  The Complaint, as amended

16 | on February 3, 2010, alleges that the claim filed by CCV should be reduced because of

17 | the misconduct of Corus Bank in the administration of the construction loan.  As Corus

18 | Bank's successor in interest and assignee of Corus Bank's liabilities under the Loan

19 | Agreement, CCV acquired the loan with knowledge of a prepetition lawsuit brought by the

20 | Debtor against Corus Bank and the injuries alleged to the Concerto Project.   The Debtor

21 | alleges that CCV's Proof of Claim should be disallowed to the extent of damages caused

22 | by and defenses resulting from Corus Bank's breaches of its contractual obligations and

23 | breaches of the implied covenant of good faith and fair dealing arising from the Loan

24 | Agreement and related documents.

25 |        17.    The Amended Complaint asserts claims for (1) declaratory relief as

26 | to the amount of the CCV claim, (2) offset and recoupment of damages against the loan

27 | amount, and (3) equitable subordination of the CCV claim and lien to the claims of

28 | creditors holding allowed secured and unsecured claims against the Debtor.  The

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Amended Complaint alleges that as a result of Corus Bank's actions and inactions, the

2  Debtor has been damaged in an amount to be determined, but believed to be in excess

3  of $46,000,000. The Objection to Proof of Claim asserts that CCV's claims should be

4  reduced to the extent of the damages caused by the conduct of its predecessor and

5  assignor, Corus Bank. Litigation with respect to this matter is pending before the Court.

6  As of this time, CCV's claim against the Debtor has not been allowed, except for the

7  limited purpose of voting on the Pending Plan.

8          18.    CCV filed personal guarantee lawsuits on June 2, 2010, in Chicago,

9  Illinois, against  Sonny Astani, Jo Cho (Sonny Astani's wife), and Marco Astani in

10 connection with CCV's disputed claim against the Debtor.

11         19.    On July 19, 2010, CCV filed its Motion for relief from the automatic

12 stay with apparent disregard for the impact that such a motion might have on the final

13 stages of completion of phase I of the Concerto project and on subcontractors who are

14 working vigorously to complete construction of phase I.  In the Motion, CCV asserts that

15 its $122,000,000 valuation for the entire Concerto project as of April 6, 2010, "is by far

16 the most accurate and reliable estimate of the Project's true current value and clearly

17 shows that there is no equity in the Project." See CCV's memorandum of points and

18 authorities submitted with the Motion (p. 38 of 41).  In the Motion, CCV argues that the

19 Debtor speculates at the risk and expense of creditors.  However, the Debtor believes

20 that its business plan is conservative.  Moreover, the Debtor has invested more than

21 $54,500,000 in cash in the Project and has already made $8,250,000 in postpetition

22 payments to CCV (and CCV's claim has not yet even been allowed).  Further, all other

23 creditors (all eligible voters other than CCV and entities it created and controls) voted to

24 accept and support confirmation of the Pending Plan.

25         20.    As stated above, on July 19, 2010, CCV filed a motion for relief from

26 the automatic stay in the Debtor's chapter 11 case.  CCV's relief from stay motion is

27 currently set for status conference on September 23, 2010, and the Court has held that

28 there will be a mediation and a court-appointed valuation expert in the relief from stay

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | matter.  CCV previously filed a plan in this case that provided for a sale of the Debtor's

2 | real estate project that would allow CCV to credit bid its disputed claim against the

3 | Debtor.

4 |      I declare under penalty of perjury under the laws of the State of California that the

5 | foregoing is true and correct.

6 |      Executed August _12_, 2010, at Los Angeles, California.

7 |

8 |

9 | SONNY ASTANI

10 |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

DKUPETZ\ 676566.1                          25

| In re:<br>GTS 900 F, LLC<br><br>Debtor(s). | CHAPTER: 11<br><br>CASE NUMBER: 2:09-BK-35127-vz |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as **DEBTOR'S MOTION FOR FURTHER EXTENSION OF EXCLUSIVITY RE PLAN OF REORGANIZATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SONNY ASTANI** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 12, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

- Paul M Brent - on behalf of Creditor Masonry Concepts    snb300@aol.com
- Cathrine M Castaldi - on behalf of Creditor MR. CRANE, INC.    ccastaldi@rusmiliband.com
- Kevin C Fields - on behalf of Creditor Superior Wall Systems, Inc.    KevinF@FieldsLG.com
- David K. Eldan - on behalf of Interested Party Courtesy NEF    alvarado@pmcos.com; rpinal@pmcos.com; calendar@pmcos.com
- Yan Gershfeld - on behalf of Creditor Carpenters Southwest Administrative Corporation etc.    ygershfeld@deconsel.com
- Barry S Glaser - on behalf of Creditor Psomas, a California corporation    bglaser@swjlaw.com
- Allan H Ickowitz - on behalf of Defendant FDIC as Receiver for Corus Bank, N.A.    aickowitz@nossaman.com
- Nicolino I Iezza - on behalf of Creditor West Coast Door and Moulding    niezza@spiwakandiezza.com
- Robbin L Itkin - on behalf of Interested Party Coastal International, Inc.    ritkin@steptoe.com
- Jeanne M Jorgensen - on behalf of Creditor Park West Landscape, Inc.    jjorgensen@pj-law.com, esorensen@pj-law.com
- Gary M Kaplan - on behalf of Creditor Psomas, a California corporation    gkaplan@fbm.com
- John W Kim - of Interested Party FDIC as Receiver for Corus Bank, N.A.    jkim@nossaman.com
- Michael S Kogan - on behalf of Creditor Ervin Cohen & Jessup LLP    mkogan@ecjlaw.com
- Tamar Kouyoumjian - on behalf of Debtor GTS 900 F, LLC    tkouyoumjian@sulmeyerlaw.com
- David S Kupetz - on behalf of Debtor GTS 900 F, LLC    dkupetz@sulmeyerlaw.com
- Dare Law - on behalf of U.S. Trustee United States Trustee (LA)    dare.law@usdoj.gov
- Joel S. Miliband - on behalf of Interested Party Courtesy NEF    jmiliband@rusmiliband.com
- Frank W Molloy - on behalf of Creditor Alno Pasadena    jgalambos@hmspasadena.com, mdickey@hmspasadena.com
- James S Monroe - on behalf of Creditor Sold2U, Inc    jim@monroe-law.com
- Ramon Naguiat - on behalf of Interested Party Courtesy NEF    rnaguiat@skadden.com
- Daryl G Parker - on behalf of Plaintiff Official Committee of Creditors Holding Unsecured Claims    dparker@pszjlaw.com
- Katherine C Piper - on behalf of Interested Party Coastal International, Inc.    kpiper@steptoe.com
- Hamid R Rafatjoo - on behalf of Creditor Committee of Creditors Holding Unsecured Claims    hrafatjoo@venable.com
-    ataylor@venable.com; revey@venable.com; jnassiri@venable.com; bclark@venable.com
- Kurt Ramlo - on behalf of Creditor Corus Construction Venture, LLC    kurt.ramlo@dlapiper.com
- Bruce D Rudman - on behalf of Creditor JW DOOR CORPORATION    bdr@agrlaw.net
- Gregory M Salvato - on behalf of Creditor Astani Construction, Inc.    gsalvato@salvatolawoffices.com
- Nathan A Schultz - on behalf of Creditor Murray Company    schultzn@gtlaw.com
- Marian K Selvaggio - on behalf of Creditor ACCO Engineered Systems, Inc    selvaggio@huntortmann.com
- Pamela E Singer - on behalf of Creditor Com.ee of Creditors Holding Unsecured Claims    psinger@pszjlaw.com, ksuk@pszjlaw.com
- Shashauna Szczechowicz - on behalf of Creditor Architectural Glass and Aluminum Company    sszczechowicz@wolkincurran.com
- Alan G Tippie - on behalf of Debtor GTS 900 F, LLC    atippie@sulmeyerlaw.com
- Marcus Tompkins - on behalf of Debtor GTS 900 F, LLC    mtompkins@sulmeyerlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Ronald Weiss - on behalf of Creditor 888 Enterprises Ltd    rwattyatlaw@aol.com
- Sharon Z Weiss - on behalf of Creditor DeStefano and Partners, Ltd.    sharon.weiss@hro.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>GTS 900 F, LLC | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:09-BK-35127-vz |

- William E Winfield - on behalf of Creditor ALNO USA
- Steven Werth – on behalf of Debtor GTC 900 F, LLC

wwinfield@nchc.com
swerth@sulmeyerlaw.com

## II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 12, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Richard A Clark
Gary Ganchrow
Parker, Milliken, Clark et al.
555 S Flower 30th Flr
Los Angeles, CA 90071-2440

Van C Durrer
Skadden Arps Slate Meagher & Flom LLP
300 S. Grand Avenue, Ste. 3400
Los Angeles, CA 90071-3144

David C. Palmer
Wagner Palmer PC
400 Oceangate Ste. 700
Long Beach, CA 90802

Jeffrey Cluett
QUADROS & JOHNSON, LLP
247 North San Mateo Drive
San Mateo, CA 94401

Bruce A Hatkoff
16633 Ventura Blvd #940
Encino, CA 91436-1801

Michael S Kogan
ERVIN, COHEN & JESSUP LLP
9401 Wilshire blvd., Ninth Floor
Beverly Hills, CA 90212-2974

James D Curran
Wolkn Curran LLP
555 Montgomery St Ste 1100
San Francisco, CA 94111

Andy Kong
Arent Fox LLP
555 West Fifth Street , 48th Floor
Los Angeles, CA 90013

E Scott Holbrook
1290 E Ctr Crt Dr
Covina, CA 91724

☐ Service Information continued on attached page.

## III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on  August 12, 2010  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of suite 1360
225 E. Temple Street
Los Angeles, CA  90012

☒ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 12, 2010 | Denise Givens | /s/Denise Givens |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
DKUPETZ\ 676134.1 8/12/2010 (2:50 PM)

**F 9013-3.1**

| In re:<br>GTS 900 F, LLC | CHAPTER: 11 |
| | |
| Debtor(s). | CASE NUMBER: 2:09-BK-35127-vz |

## ADDITIONAL SERVICE INFORMATION (if needed):

Richard S. Friedman, Rita M. Haeusler
Hughes Hubbard & Reed LLP
350 So. Grand Avenue
Los Angeles, CA 90071-3442
friedman@hugheshubbard.com
haeusler@hugheshubbard.com

James R. Maddox, Jr.
Steve Green
Kibel Green, Inc.
2001 Wilshire Blvd., Suite 420
Santa Monica, CA 90403
jmaddox@kginc.com
sgreen@kginc.com

Alno, U.S.A.
c/o Chad L. Hershman, Esq.
c/o Doreen M. Zankowski, Esq.
Hinkley Allen & Snyder LLP
28 State Street
Boston, MA 01209
chershman@haslaw.com

Troyer Contracting Company, Inc.
c/o Richard Wagner, Esq.
WAGNER PALMER, PC
400 Oceangate, Ste. 700
Long Beach, CA 90802
richwagner@wagnerpalmer.com

Mr. Crane, Inc.
Attn: Mr. Steve Corso
Chief Financial Officer
647 N. Hariton
Orange, CA 92868-1311
steve@mrcrane.com

Carpet USA Ltd
Attn: Jerry Agam, President
11143 W. Washington Blvd.
Culver City, CA 90232
jerryag2000@yahoo.com

SASCO
Attn: John Stevenson
Sasco Legal Affairs Manager
2750 Moore Avenue
Fullerton, CA 92833
jstevenson@sasco.com

Masonry Concepts, Inc.
c/o Gray Duffy, LLP
15760 Ventura Blvd., 16th Floor
Encino, CA 91436
Ggray@grayduffylaw.com

ACCO Engineered Systems, Inc.
Attn: Carlton Seyforth
Risk & Safety Mgr.
6265 San Fernando Rd.
Glendale, CA 91201
cseyforth@accoes.com

Architectural Glass & Aluminum
Attn: John Buckley, President
1151 Marina Village Parkway, # 101
Alameda, CA 94501
jbuckley@aga-ca.com

Carpet USA Ltd
Attn: Jerry Agam, President
11143 W. Washington Blvd.
Culver City, CA 90232
jerryag2000@yahoo.com
Ken Grossbart ksg@aglaw.net

Golden Construction
32910 Deerglen Lane
Santa Clarita, CA 91390
Dgat1@sbcglobal.net

J.W. Door Corporation
Attn: Gerald E Weiss  (Registered
Agent)
14764 Oxnard Street
Van Nuys, CA 91411
Jwdoor-jane@hotmail.com

Otis Elevator
Dept. LA 21684
Pasadena, CA 91185-1684
Rychelle.bloss@otis.com

Troyer Contracting Company, Inc.
c/o Richard Wagner, Esq., David C. Palmer
WAGNER PALMER, PC
400 Oceangate, Ste. 700
Long Beach, CA 90802
richwagner@wagnerpalmer.com

Debtor
GTS 900 F, LLC
c/o Sonny Astani
Concerto Manager, Inc.
9595 Wilshire Blvd., Ste. 1010
Beverly Hills, CA 90212
sonny@astanienterprises.com
marlene@hpgmanagement.com
Brenda@astanienterprises.com
Marco@astanienterprises.com

CMF, Inc.
1317 West Grove Avenue
Orange, CA 92865
jdouglas@cmfinc.com

ACCO Engineered Systems, Inc.
Attn: Carlton Seyforth
Risk & Safety Mgr.
6265 San Fernando Rd.
Glendale, CA 91201
cseyforth@accoes.com

Alno, U.S.A.
c/o Chad L. Hershman, Esq.
c/o Doreen M. Zankowski, Esq.
Hinkley Allen & Snyder LLP
28 State Street
Boston, MA 01209
chershman@haslaw.com

Architectural Glass & Aluminum
Attn: John Buckley, President
1151 Marina Village Parkway, Suite 101
Alameda, CA 94501
jbuckley@aga-ca.com

Borbon, Inc.
7312 Walnut Avenue
Buena Park, CA 90620
Nicole@borbon.net

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.