1  David S. Kupetz (CA Bar No. 125062)
      dkupetz@sulmeyerlaw.com
2  Steven F. Werth (CA Bar No. 205434)
      swerth@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
5  Telephone: 213.626.2311
   Facsimile: 213.629.4520
6
7  Attorneys for GTS 900 F, a California limited liability company, Debtor and Debtor in
   Possession
8
                    **UNITED STATES BANKRUPTCY COURT**
9
           **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**
10
11  In re                                    |  Case No. 2:09-bk-35127-VZ

12  GTS 900 F, LLC, a California limited         Chapter 11
    liability company,
13                                              **DECLARATION OF SONNY ASTANI IN
              Debtor.                           SUPPORT OF DEBTOR AND DEBTOR
14                                              IN POSSESSION'S OPPOSITION TO
                                                MOTION OF CORUS CONSTRUCTION
15                                              VENTURE, LLC FOR APPOINTMENT OF
                                                CHAPTER 11 TRUSTEE**
16
                                                **(Opposition to Motion of Corus
17                                              Construction Venture, LLC for
                                                Appointment of Chapter 11 Trustee and
18                                              Evidentiary Objections to Declarations
                                                of Seth Hewitt and David Kim filed
19                                              concurrently herewith)**

20                                              Date:    January 18, 2011
                                                Time:    11:00 a.m.
21                                              Place:   Courtroom "1368"
22
23
24
25
26
27
28

(sidebar) **Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    I, Sonny Astani, declare and state as follows:

2    1.    I am an individual over the age of eighteen, and am the duly

3    authorized representative of GTS 900 F, LLC, a California limited liability company (the

4    "Debtor" or "GTS"), the debtor and debtor in possession in the above-captioned case. I

5    am the President of Concerto Manager, Inc. ("Concerto Manager"), the Manager of the

6    Debtor. I make this declaration in support of the Debtor's opposition to the "Motion of

7    Corus Construction Venture, LLC for Appointment of Chapter 11 Trustee" (the "Motion")

8    [Docket No. 961], filed by Corus Construction Venture, LLC ("CCV"), concurrently filed

9    herewith. Except as otherwise indicated, I have personal knowledge of the facts stated in

10    this declaration, and if called to testify, could and would competently testify thereto.

11    2.    In my capacity as the duly authorized representative of the Debtor

12    and President of Concerto Manager, I am responsible for, among other things,

13    supervising the maintenance of the books and records of the Debtor with respect to its

14    relationship with CCV, contractors, and subcontractors, including, among other things, all

15    current and past work being performed for the Debtor on the Concerto project. I have

16    access to such materials, and I am also generally familiar with them, consistent with my

17    duties and responsibilities regarding the administration of the chapter 11 case and the

18    Debtor's relationships and obligations to its contractors, subcontractors, and creditors,

19    including CCV. Except as otherwise indicated, I have personal knowledge of the facts

20    stated in this declaration, and if called to testify, could and would competently testify

21    thereto.

22    3.    More than fifteen months have passed since the Debtor filed for

23    chapter 11 protection. During this time, the Debtor has moved the administration of the

24    case forward in an appropriate and effective manner, consistent with its responsibilities

25    under the Bankruptcy Code. Phase I of the Debtor's project is on the verge of completion

26    (the Tower is more than 98% complete) requiring only $3,000,000 in addition to the

27    $270,000,000 spent to date to complete construction. The Debtor has closed sales on all

28    77 units in its Loft building. The Debtor's objection to CCV's disputed claim and

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   affirmative claims against CCV are pending before the Court, with the deadline of

2   February 4, 2001 having been set by the Court for the selection of a neutral, court-

3   appointed damage expert.  The Court has approved the Debtor's retention of a real

4   estate broker to sell the Debtor's project and the Debtor anticipates presenting such a

5   sale to the Court in the next 30 to 45 days.  CCV's own plan is set for confirmation

6   hearing less than 30 days after the hearing CCV has set for the Motion and CCV's

7   pending motion for relief from the automatic stay is set for final hearing on March 7, 2011.

8          4.        Despite the progress that has been made, such as obtaining

9   Temporary Certificates of Occupancy in August 2010 for the Tower, selling all 77 units in

10  the Loft, and managing the HOA to the owners' satisfaction for over a year, and in spite

11  of the fact that the Debtor has paid CCV, including its counsel and consultants, in excess

12  of $12,000,000, the argument is now made by CCV that the Debtor can no longer be

13  trusted to manage its own affairs as it is allegedly engaging in "manipulative" conduct and

14  is purportedly breaching its fiduciary duties.  The allegations are completely false and are

15  not based on credible evidence.

16         5.        This is not the first time that CCV has made incorrect assertions in

17  this case.  During this case, CCV repeatedly asserted that the Concerto project has as

18  value of $122,000,000 (this is the value asserted in CCV's pending relief from stay

19  motion).  The court-appointed neutral valuation expert, John G. Ellis, however, concluded

20  that the Debtor's project had an as is value as of November 1, 2010, of approximately

21  $174,000,000, and a projected as completed value as of March 1, 2011, of approximately

22  $185,000,000 (costs to complete amount to only approximately $3,000,000).  CCV also

23  asserted repeatedly during this case that its lien was senior to all mechanic's liens and

24  only after many months of dispute during this case did CCV concede that its contentions

25  regarding priority of its lien were incorrect.

26         6.        In my opinion, as a fiduciary for the estate, I do not believe that

27  cause exists to appoint a chapter 11 trustee, which would needlessly add an additional

28  layer of administrative expenses to this case and unnecessarily add new players to this

1 | case at this late stage. Without the Debtor's motivation, experience, or expertise needed
2 | to complete the Tower that is more than 98% complete and market and sell the Concerto
3 | project, it is likely that a trustee would immediately shutdown the Debtor's operations.
4 | Regardless, substantial additional, and unnecessary expenses would be imposed on the
5 | estate, such as additional change orders from subcontractors since the trust that has
6 | taken years to establish between the subcontractors and the Debtor and its general
7 | contractor will be interrupted leading to more requirements and demands from
8 | subcontractors forced to deal with new sets of rules and parties. All of the consultants
9 | and construction professionals, such as inspectors and structural and mechanical
10 | engineers, will be negatively affected and the agreements, contracts, and coverage will
11 | have to be reviewed and reevaluated, leading to more delays and costs to the project. In
12 | my opinion, CCV seeks the appointment of a trustee as a litigation tactic in response to
13 | the Debtor's pending cash collateral motion, since CCV's primary objection is not that the
14 | project cannot be timely completed, but that the new budget does not continue adequate
15 | protection payments to CCV as in past budgets. Proper grounds exist to eliminate the
16 | adequate protection payments to be made to CCV, on account of the fact that the
17 | Concerto project requires approximately $3,000,000 to complete by March 2011, the
18 | Debtor possesses adequate cash to make these payments (it is holding approximately
19 | $3,300,000 in its debtor in possession accounts), but the Debtor likely will not possess
20 | enough cash to make these payments along with an additional $750,000 per month to
21 | CCV. If these payments are not reduced or eliminated, that will result in delay or
22 | disruption to the construction of the Concerto project. Absent from the Motion is the fact
23 | that CCV will be a primary beneficiary of this project becoming completed, since its
24 | completion will add an additional $11,000,000 in value, as concluded by John Ellis. CCV
25 | is thus adequately protected and there is no further need to make these payments to the
26 | prejudice of the completion of the project, particularly since the added value inures to
27 | CCV's benefit. The Motion promotes CCV's selfish goals of stripping the Debtor's control
28 | of its pending objection to CCV's disputed claim and the Debtor's claims against CCV

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 and furthers CCV's desire to suppress the value of the project in connection with CCV's

2 pending plan (which in my opinion is unconfirmable) that seeks to transfer the Debtor's

3 project to CCV and apply the value of the project against CCV's disputed claim.

4        7.     CCV has not demonstrated that the Debtor is incompetent,

5 committing fraud, mismanaging the estate and its property, harming creditors, breaching

6 its fiduciary duty, or that there is a diminution in the value of the estate or other factors

7 preventing the Debtor from reorganizing its affairs (clearly, the project is worth

8 substantially more than the $122,000,000 that CCV asserted was the value of the

9 Concerto project for the majority of the case).

10        8.     The Motion purports to be based on the Debtor's failure to satisfy its

11 basic duties to (i) safeguard the estate's assets for the benefit of all creditors, and (ii)

12 ensure that the chapter 11 case remains administratively solvent.  CCV's factual

13 assertions in this regard are patently false.  The Debtor has identified fourteen primary

14 points which CCV has attempted to manufacture into a factual basis for approval of the

15 Motion.  As detailed in greater below, CCV's factual allegations purportedly supporting

16 the appointment of a chapter 11 trustee are refuted.

17        9.     The first misnomer is that the Debtor delayed disclosing its inability

18 to fund the completion of the Concerto project while encouraging vendors to provide

19 goods and services, including providing misleading information to the court-appointed

20 valuation expert.  There is no evidence supporting such a contention.  Rather, the Debtor

21 has at all times been acting in good faith by completing construction, based on the CCV

22 and court-approved September 2010 budget.  The approved September budget included

23 all costs for work done by vendors that CCV now falsely alleges the Debtor improperly

24 encouraged to provide goods or services, with the exception of a minimal amount of

25 general conditions of the Debtor's general contractor that were being negotiated with

26 CCV.  The Debtor has acted consistently since the inception of this case and did not

27 reasonably anticipate that CCV would decline to approve disbursement of payments to

28 subcontractors for work that had been pre-approved in the approved September budget.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1        10.    Pursuant to the cash collateral order entered on October 30, 2009,

2    the Debtor was authorized to make disbursements to creditors for work performed in

3    connection with construction of the Concerto project, so long as (i) the disbursements

4    were within the parameters established in the most-recent applicable budget, and (ii)

5    CCV consented to the disbursement.  Approximately twice each month since the entry of

6    the cash collateral order, the Debtor has submitted a draw request to CCV for approval

7    and CCV has approved such draw requests, that is, until October 15, 2010.  The Debtor

8    submitted draw requests on October 15, 2010, October 30, 2010, and November 15,

9    2010, all of which requested disbursements within the parameters set forth in the

10   September 2010 budget.  CCV failed to approve any of these draw requests.  As a

11   consequence, the Debtor has not paid any contractor or subcontractor for work

12   performed on the Concerto project since October 15, 2010.  Only after further attempts at

13   obtaining CCV's consent failed did the Debtor determine that it needed to seek court

14   intervention through the filing of the Budget Motion.  Thus, the implication that the Debtor

15   was less than diligent in seeking to fund the project's completion is patently false.  It is

16   CCV that inappropriately created the problem (failure to approve payments that were

17   already included in an approved budget) that in large part compelled the filing of the cash

18   collateral motion after the Debtor determined that its efforts to reach agreement on such

19   payments with CCV were not going to succeed.

20       11.    CCV's second misrepresentation is that the Debtor is either lying

21   about health and safety issues or has inadequate funds to complete the project.  In fact,

22   CCV's bad faith refusal to approve draw requests according to prior court-approved

23   budgets during the last two months has resulted in the near-complete cessation of

24   construction at the Concerto project.  In its opposition to the cash collateral motion, CCV

25   states that it has  permitted "health and safety" related payments to be made.  However,

26   CCV's definition of "health and safety" appears to narrowly apply only to the safety of the

27   building itself.  Even then, CCV misunderstands the interrelatedness of the work

28   performed at the site.  For example, fire sprinkler systems (payment for which CCV has

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   permitted) cannot be completed without the work of the plumbing and electrical

2   contractors (payment for whose work CCV has not permitted), and these contractors are

3   unwilling to return to the Concerto project without being paid.  Thus, the fact that CCV

4   has permitted some safety-related measures is an empty gesture, as they cannot be

5   completed without work performed by other subcontractors.

6           12.     Further, CCV's definition of "health and safety" does not appear to

7   include projects relating to the health and safety of the subcontractors who walk in and

8   around the Tower, as well as owners of the Lofts units.  CCV has refused, for example, to

9   permit the Debtor to pay "CPS Signage & Marketing Corp.", the subcontractor which

10  installs permanent signs for stairwells, elevators, and also evacuation maps.  Not only will

11  failure to install these signs potentially result in the Los Angeles Fire Department (the

12  "LAFD") deeming the Concerto project unsafe, which could then prompt the LAFD to take

13  action to close the building down, this directly relates to the health and safety of the

14  people working in and around the project.  Yet, on the contrary, CCV refused to pay

15  ALNO Cabinets for the shipment of cabinets it had approved in the September budget on

16  the basis that they no longer met CCV's idea of building standards, but after much

17  pressure from ALNO and its counsel, CCV finally authorized the Debtor to release the

18  payment on December 22, 2010.  CCV's contradictory action in refusing the Debtor the

19  authority to pay for work that relates to the safety of those working in the building, yet

20  authorizing payment for other non-health and safety services is unconscionable and

21  highlights the fact that CCV is not proceeding in good faith and is seeking to force the

22  cessation of construction to force down the project's valuation as the hearings on CCV's

23  pending plan and relief from stay motion approaches.

24          13.     In 2006, the land on Phase II of the Debtor's project was excavated

25  and shored.  In October 2009, when CCV first took control of the Corus Bank, N.A.

26  ("Corus") loan portfolio, the Debtor informed CCV that the vacant hole on Phase II

27  needed to be addressed prior to receiving notice of city-required inspections.  Although

28  the Debtor has taken all necessary precautions of securing the area, for example,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 · FAX 213.629.4520

secured fencing, steel and concrete posts, posting "Warning" and "No Trespassing"

signs, maintaining insurance coverage, and security guards, so that no imminent danger

exists, despite the Debtor's repeated requests CCV has declined to make any clear

indications as to what it is willing to agree to regarding how these issues should be

addressed.  Finally, a "Notice of Intent to Expire Permit" for the area in which excavation

occurred was recently received by the Debtor.  The issue is related to the shoring which

was never designed to be a long-term support structure.  Even David Kim, CCV's

construction consultant, concedes in his declaration in support of the Motion that the

shoring needs to be inspected, which the Debtor has initiated.   Moreover, the Debtor has

retained a broker, who is marketing the Phase I Tower and Phase II land for sale.  A

qualified bidder will be selected in mid-January, and the proposed buyer will decide how

to deal with Phase II.  The Debtor has consulted with the structural engineer and

engaged a soil engineer to produce a report on the Phase II land.

14.    Further, in no case has the Debtor refused to make payment to a

subcontractor if CCV has allowed that payment.  The health and safety of the workers on

the Concerto project and others who work in or around the project is of paramount

importance, and CCV should not be permitted to refuse to allow the Debtor to make

payments related to these services.  The Debtor currently is holding approximately

$3,300,000 in cash and anticipates that it will be able to complete the Concerto project in

another two and a half months (providing that its contractors and subcontractors are

timely paid) at a cost of approximately $3,000,000 to finish construction.  Thus, the

Debtor has adequate cash on hand to make the disbursements as requested in the

October 15, 2010, October 30, 2010, and November 15, 2010, draw requests and to fund

the completion of the project.

15.    The third misrepresentation is that the Debtor has failed to propose a

feasible, substantiated budget to complete construction of the Concerto project.  Once

again, there is no substance behind this contention.  The budget that the Debtor has

proposed to complete construction is not materially different from previously approved

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  budgets, except in the additional amount of general conditions required because of the

2  delays caused by CCV, and the delaying of some finishes to penthouse units, which the

3  broker has disclosed to potential buyers of the project, and for which funds will be

4  allocated in escrow.  The Debtor has provided CCV with all documents it has requested

5  to substantiate the budget and is not aware of any additional requests.  CCV has had four

6  asset managers and two construction consultants since October 2009.  It has shut down

7  construction at the project twice for a total of six months, increasing the duration and

8  amount of adequate protection payments, general contractor and remobilization costs

9  and creating hardship for subcontractors.  The budget accompanying the cash collateral

10 motion is feasible and should be approved.

11         16.     CCV's statement that it has offered to fund completion of the project

12 in full also is incorrect.  According to CCV, the budget remains incomplete and questions

13 remain unanswered, yet it proposes to fund any shortage to complete construction,

14 including the anticipated "reasonable" expenses of a chapter 11 trustee.  However, CCV,

15 not the Debtor, stopped approving funding construction in October 2010, even though

16 funds were, and remain, available in the Debtor's accounts.  If CCV truly wanted the

17 project completed, it would have agreed to the draw requests for payment of expenses

18 that were included in the approved September 2010 budget and not forced the Debtor to

19 file the cash collateral motion.  By seeking to impose arbitrary and unreasonable

20 conditions on the Debtor, CCV has placed completion of the project in peril.

21         17.     The fifth misrepresentation is that the Debtor represented to the

22 court-appointed valuation expert that it was receiving revenue from an agreement for the

23 lease of parking space within the project when no revenue existed.  This allegation is

24 untrue.  In fact, information provided by the Debtor to the court-appointed expert with

25 regard to the parking revenue was not misleading.  There is a valid and enforceable

26 lease in place with a parking operator and the valuation expert was provided with a copy

27 of the agreement.  The lease was scheduled to commence in December 2009, however,

28 due to construction delays, the Debtor was not able to turn over the parking spaces to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   operator as they are currently being used for construction staging.  As detailed in the

2   court-appointed expert's valuation report, the report assumes that the property is owned

3   and operated under normal market conditions.  This assumption would include a timely

4   completion of construction and the ability to deliver the required spaces to the operator.

5   The Debtor did not attempt to mislead the valuation expert as to the effect the lease had

6   on the project's value, in both an "as is" and "completed" condition.  On the other hand,

7   CCV misinformed the neutral interest rate expert appointed earlier in this case in utilizing

8   its $122,000,000 appraisal report, which resulted in a high interest rate undermining the

9   opportunity for confirmation of the Debtor's second amended plan which was supported

10  by every creditor in this case other than CCV and entities created by CCV, and only later

11  changed its appraisal of the project to $150,000,000.

12          18.    CCV wrongly alleges that the Debtor presented a dramatically

13  different budget for December 2010.  Even a cursory review of the September 2010

14  budget and the budget attached to the cash collateral motion reveals the errors in this

15  statement.  In fact, the only dramatic difference in the two budgets is the Debtor seeking

16  to terminate the adequate protection payments being made to CCV.  The specific

17  contention that the new budget does not allocate any funds to renewing earthquake

18  coverage is also misleading.  The Debtor's order to bind earthquake insurance has been

19  provided, such that the total annual cost of insurance for earthquake and building policy

20  is not in the budget, only what is anticipated to be paid during construction.  Thereafter it

21  will be covered under the HOA (Homeowner's Association) policy, which it is budgeted

22  for.

23          19.    CCV also wrongly contends that a reconciliation of the cash

24  collateral account to the proposed budget was requested and not yet provided by the

25  Debtor.  The Debtor has no objection to providing the reconciliation of the budget to cash

26  collateral as requested, and has not refused to do so in the past.

27          20.    Another misrepresentation is that the Debtor has not provided CCV

28  with copies of current insurance policies.  The Debtor has, indeed, forwarded to CCV and

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  its insurance consultant all proof of insurance requested.  Any suggestion to the contrary

2  is untrue.  True and correct copies of the evidence of insurance provided to CCV are

3  attached hereto as Exhibit "A" and incorporated herein by reference.

4         21.    Although CCV disagrees with the Debtor's proposed budget, since it

5  seeks to eliminate monthly adequate protection payments to CCV, CCV argues that the

6  failure to make the December 2010 adequate protection payment supports the

7  appointment of a trustee.  However, my understanding is that there are remedies already

8  in place to protect CCV's rights.  First, my understanding is that CCV can, as it already

9  has done, oppose the cash collateral motion.  Second, and more important in the context

10  of this Motion, my understanding is that the October 2009 cash collateral order provides

11  that an approved adequate protection payment can be made within ten (10) business

12  days of CCV filing a notice regarding failure to make the payment by the fifteenth (15th) of

13  any month.  As of this date, the Debtor is unaware of CCV filing any such notice.  Even

14  presuming a timely notice is filed, and no payment is made within ten business days

15  thereafter, the remedy set forth in the cash collateral order is to seek relief from stay, not

16  the appointment of a trustee.  Further, my understanding is that the Court's order entered

17  on May 26, 2010, modifying the monthly payment requirement to CCV expressly

18  references the Debtor's ability to seek to change or even eliminate the monthly adequate

19  protection payments to CCV.

20         22.    CCV further alleges that the out-of-court statements I made

21  regarding CCV's conduct during this case are part of a campaign to create false and

22  negative perceptions of CCV for the benefit of the me and the Debtor's principals and to

23  the detriment of creditors.  First, the simple fact is that, as the duly authorized

24  representative of the Debtor, I have every right to answer questions and issue such

25  statements regarding this chapter 11 case.  In fact, very negative statements have been

26  made against me by others associated with this case.  For instance, Barry Sternlicht,

27  CEO of Starwood Hotels and Starwood Capital, called me an "extortionist" in a published

28  article.  He further claims in that article that CCV will make the FDIC (the 60% owner) a

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    profit of $1 Billion, while the FDIC is trying to convince the court to dismiss the case since

2    it holds no assets. Indeed, I have every right and an obligation to provide statements to

3    stakeholders, such as the City of Los Angeles, regarding the progress of a project in the

4    heart of downtown Los Angeles, including addressing any questions or concerns after

5    witnessing two construction shut downs.

6              23.        The most serious and unfounded allegation is that the Debtor has

7    engaged in misconduct, a breach of fiduciary duty, and prioritizing interests of principals

8    over those of creditors. However, there is not a shred of credible evidence supporting

9    these fictitious accusations. For instance, without any evidence whatsoever, CCV

10   alleges that creditors have lost confidence in the Debtor and that this purported lack of

11   confidence supports the appointment of a trustee. In fact, not one creditor has been

12   identified by CCV as espousing this alleged lack of confidence. On the contrary, the

13   Debtor and its general contractor have an excellent working relationship with creditors,

14   contractors, and subcontractors, some dating back as far as twenty years. Since 2006,

15   these contractors and subcontractors have been working on the Concerto project, and

16   they trust the Debtor and the Debtor's general contractor's ability to complete

17   construction. I strongly believe that the majority, if not all, support the cash collateral

18   motion, and the Debtor's efforts to complete construction by March 2011. As evidence of

19   their support, attached hereto as Exhibit "B" are true and correct copies of declarations of

20   support from sixteen contractors and subcontractors attesting to the fact that, contrary to

21   the allegations of CCV, they have full confidence in the Debtor's ability to manage and

22   successfully complete the project. Thus, CCV, not the Debtor, has caused construction

23   to virtually cease. The refusal to continue work is not due to purported lack of confidence

24   in and distrust of the Debtor, but is solely due to CCV's calculated refusal to consent to

25   the disbursement of funds for work approved in the September 2010 budget. As set forth

26   in the attached declarations, all subcontractors are willing to return to work if payment is

27   disbursed in a timely manner so that their work can be completed prior to the March 31,

28   2011 OCIP expiration, while they remain covered.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    24.    Another misrepresentation is that even if the Court adopts the neutral

2    valuation expert's conclusion of a completed project value of $185,000,000, there is no

3    value for unsecured creditors or equity holders.  CCV does not mention that its claim is

4    disputed, has not been allowed, and that the objection to its claim and litigation regarding

5    affirmative claims against CCV are pending before the Court.  Even if CCV's claim were

6    not to be reduced pursuant to the pending objection to claim and litigation, at a value of

7    $185,000,000, with approximately $12,000,000 of post-petition payments having been

8    made to CCV, there is value for unsecured creditors and, potentially, equity holders of the

9    Debtor.  Moreover, if it were to be determined that CCV is undersecured, a possibility

10    recognized by CCV in its proposed plan of reorganization, which states that if CCV is

11    found to be undersecured, the adequate protection payments made by the Debtor (in

12    excess of $12,000,000) will be used to pay down the amount of CCV's allowed claim.

13    Under such a scenario, CCV's secured claim is reduced to approximately $150,000,000

14    (not taking into account that the claim is disputed, and the amount of the claim remains

15    subject to a pending claim objection and litigation).

16    25.    The final false contention upon which CCV seeks a trustee is that the

17    budget attached to the cash collateral motion does not call for completion of construction

18    of the project in a manner consistent with the assumptions underlying the court-appointed

19    expert's "at completion" value.  Mr. Ellis's conclusion was derived from a budget to

20    complete the project per the approved plans and specifications.  There are sufficient

21    funds, once the adequate protection payments to CCV are terminated, to allow the

22    completion in a manner consistent with the assumptions of Mr. Ellis.  For example,

23    adequate protection payments would not be incurred by a new buyer (the market value

24    assumption).  Thus, there is more than sufficient funds available for completion of the

25    project.

26    26.    In sum, in my opinion, there is a complete lack of evidence

27    demonstrating "cause" for the appointment of trustee and the Motion should be denied

28    and the Debtor permitted the opportunity to sell the project under applicable provisions of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 the Bankruptcy Code. Neither the Debtor nor I have taken any action after the

2 commencement of this case which has been harmful to the Debtor's estate and its

3 creditors. Conversely, the Debtor and I have taken all actions necessary to protect and

4 preserve the estate's assets and the intrinsic value of the Concerto project, despite the

5 ceaseless efforts of CCV, itself the holder of a disputed claim, to thwart the Debtor's

6 ability to complete the project and emerge from chapter 11. The costly appointment of a

7 trustee at this stage of the case will not serve any purpose, other than the selfish motives

8 of CCV. The appointment of a trustee is meant to punish the Debtor, without cause, and

9 wrestle control of the project and the objection to CCV's claim and litigation against CCV

10 away from the Debtor and prevent the Debtor from being able to maximize the value of

11 the estate through a Section 363 sale of the project. Seizing the property, not

12 reorganization, has always been CCV's goal, and the Motion demonstrates that fact loud

13 and clear.

14       I declare under penalty of perjury under the laws of the United States of

15 America that the foregoing is true and correct.

16       Executed this 4th day of January, 2011, at Los Angeles, California.

17

18 

19 Sonny Astani

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# Exhibit A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXTENSION OF EXPIRATION DATE FOR CONSTRUCTION PROJECTS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1)   In consideration of an additional premium of $3,500, the Expiration Date shown in the Declarations is amended to 03/31/2011. This additional premium is a flat charge and is not subject to adjustment. It will not be credited toward the Minimum Retained Audit Premium, nor will it be credited toward the final earned premium calculation set forth in **3)** below.

2)   Notwithstanding anything to the contrary in the Premium Computation Endorsement or any other terms and conditions of the policy, the Minimum Retained Audit Premium shown in **Item 4** of the Declarations is fully earned as of the "original Expiration Date" of this policy and is not subject to adjustment in the event of cancellation.

3)   Subject to **2)** above, the final earned premium due under this policy shall be determined by a premium audit, in accordance with the provisions of the Premium Computation Endorsement which forms a part of the Policy.

4)   The **LIMITS OF INSURANCE** set forth in the Policy continue to apply and are not separate or different from, increased with respect to, or reinstated for, the extension provided herein.

As used in this endorsement, "original Expiration Date" means the Expiration Date shown in the Declarations at the time the policy was first issued.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 28

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: GAC0014457-00

Named Insured: GTS 900F, LLC A California Limited Liability Company; Astani Enterprises, Inc.

Endorsement Effective Date: 11/17/2010

00 CGL0249 00 12 08                                                                                    Page 1 of 1

15

**ENDORSEMENT NO. 12**

This endorsement, effective 12:01 AM:  November 17, 2010

Forms a part of policy no.:        2063942

Issued to:  GTS 900 F, LLC, ASTANI ENTERPRISES, INC.

By:  THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA


**AMENDATORY ENDORSEMENT**

In consideration of an Additional Premium of $5,000, it is agreed that the Policy Period on the
Declarations Page is amended to read as follows:

POLICY PERIOD:    FROM:   May 17, 2008      TO:    March 31, 2011

All other terms, definitions, conditions, and exclusions of this policy remain
unchanged.

_____
Christopher G. Kopser
**Authorized Representative
or countersignature (where required by law)**

16

ENDORSEMENT  #  024

This endorsement, effective **12:01 AM**    11/17/10

Forms a part of policy no.:    6761406

Issued to:    GTS 900 F, LLC

By:  LEXINGTON INSURANCE COMPANY

POLICY EXTENSION

It is hereby understood and agreed that the policy is extended 03/31/11 in lieu of 11/17/10
for an additional premium of $2,500.

All other terms and conditions shall remain unchanged.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**



**Arthur J. Gallagher & Co.**

Insurance Brokers of California, Inc.
505 North Brand Boulevard, Suite 600
Glendale, CA 91203-3944
Phone: (818) 539-2300
License # 0726293

**GTS 900 F, LLC**

c/o Astani Enterprises, Inc.
9595 Wilshire Blvd., Ste. 1010
Beverly Hills, CA  90212

| I N V O I C E # | 151912 | | Page 1 |
|---|---|---|---|
| ACCOUNT NO. ASTAN-1-3001 | OP TK | DATE 12/07/10 | |
| OCIP General Liability | | | |
| POLICY # GAC001445700 | | | |
| COMPANY ARCH SPECIALTY INS COMPANY | | | |
| EFFECTIVE 05/17/06 | EXPIRATION 03/31/11 | | |
| AMOUNT PAID | | AMOUNT DUE $   3,911.13 | |

ALL PREMIUMS ARE DUE AND PAYABLE UPON RECEIPT
DETACH & RETURN THIS PORTION TO INSURE PROPER CREDIT

**PLEASE REMIT PAYMENT TO: FILE # 62430, LOS ANGELES, CALIFORNIA 90074-2430**

| Itm # | Eff Date | Type | Policy # | Description | | Amount |
|---|---|---|---|---|---|---|
| INVOICE # | 151912 | | | | | |
| 548551 | 11/17/10 | OCGL | GAC001445700 | Extend Primary to 03/31/11 | ARCH SPECIALTY INS COMPANY | $   3,500.00 |
| 548552 | 11/17/10 | OCGL | GAC001445700 | CA Surplus Lines Taxes & Fees | ARCH SPECIALTY INS COMPANY | $   111.13 |
| 548553 | 11/17/10 | OCGL | GAC001445700 | Wholesale Broker Fee | ARCH SPECIALTY INS COMPANY | $   300.00 |
| | | | | | Invoice Balance: | $   3,911.13 |



**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
License # 0726293

**RETAIN BOTTOM HALF FOR YOUR RECORDS**

## Compensation Disclosure

Gallagher receives usual and customary brokerage commissions or fees (and occasionally fees in
addition to commissions) for its services. In addition to such fees and commissions, Gallagher may also
receive compensation in other forms. For more details, please see the Gallagher website at
www.ajg.com or contact your Gallagher representative.



**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
505 North Brand Boulevard, Suite 600
Glendale, CA 91203-3944
Phone: (818) 539-2300
License # 0726293

**GTS 900 F, LLC**
c/o Astani Enterprises, Inc.
9595 Wilshire Blvd., Ste. 1010
Beverly Hills, CA 90212

| INVOICE # | 151513 | Page-1 |
|---|---|---|

| ACCOUNT NO. | OP | DATE |
|---|---|---|
| ASTAN-1-4001 | TK | 11/30/10 |

OCIP Excess Liability

POLICY #
42063942

COMPANY
INSURANCE CO OF THE STATE PA

| EFFECTIVE | EXPIRATION |
|---|---|
| 05/17/06 | 03/31/11 |

| AMOUNT PAID | AMOUNT DUE |
|---|---|
| $ | $     5,300.00 |

**ALL PREMIUMS ARE DUE AND PAYABLE UPON RECEIPT**
DETACH & RETURN THIS PORTION TO INSURE PROPER CREDIT

**PLEASE REMIT PAYMENT TO: FILE # 62430, LOS ANGELES, CALIFORNIA 90074-2430**

| Itm # | Eff Date | Type | Policy # | Description | | Amount |
|---|---|---|---|---|---|---|
| INVOICE # | 151513 | | | | | |
| 547544 | 11/17/10 | OCXS | 42063942 | Extend Lead XS to 03/31/11 | INSURANCE CO OF THE STATE PA $ | 5,000.00 |
| 547545 | 11/17/10 | OCXS | 42063942 | Wholesale Broker Fee | INSURANCE CO OF THE STATE PA $ | 300.00 |
| | | | | | Invoice Balance:     $ | 5,300.00 |





**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
License # 0726293

**RETAIN BOTTOM HALF FOR YOUR RECORDS**

**Compensation Disclosure**

Gallagher receives usual and customary brokerage commissions or fees (and occasionally fees in
addition to commissions) for its services. In addition to such fees and commissions, Gallagher may also
receive compensation in other forms. For more details, please see the Gallagher website at
www.ajg.com or contact your Gallagher representative.



**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
505 North Brand Boulevard, Suite 600
Glendale, CA 91203-3944
Phone: (818) 539-2300
License # 0726293

**GTS 900 F, LLC**
c/o Astani Enterprises, Inc.
9595 Wilshire Blvd., Ste. 1010
Beverly Hills, CA 90212

| INVOICE # | 151514 | | Page 1 |
|---|---|---|---|
| ACCOUNT NO. ASTAN-1-5001   OP TK | | DATE 11/30/10 | |

OCIP Excess Liability

POLICY #
6761406

COMPANY
**LEXINGTON INSURANCE COMPANY**

| EFFECTIVE 05/17/06 | EXPIRATION 03/31/11 | |
|---|---|---|
| AMOUNT PAID | AMOUNT DUE $   2,879.38 | |

**ALL PREMIUMS ARE DUE AND PAYABLE UPON RECEIPT**
DETACH & RETURN THIS PORTION TO INSURE PROPER CREDIT

**PLEASE REMIT PAYMENT TO: FILE # 62430, LOS ANGELES, CALIFORNIA 90074-2430**

| Itm # | Eff Date | Type | Policy # | Description | | Amount |
|---|---|---|---|---|---|---|
| INVOICE # | 151514 | | | | | |
| 547546 | 11/17/10 | OCXS | 6761406 | Extend 2nd XS to 03/31/11 | LEXINGTON INSURANCE COMPA $ | 2,500.00 |
| 547547 | 11/17/10 | OCXS | 6761406 | CA Surplus Lines Taxes & Fees | LEXINGTON INSURANCE COMPA $ | 79.38 |
| 547548 | 11/17/10 | OCXS | 6761406 | Wholesale Broker Fee | LEXINGTON INSURANCE COMPA $ | 300.00 |
| | | | | | Invoice Balance: $ | 2,879.38 |

**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
License # 0726293

**RETAIN BOTTOM HALF FOR YOUR RECORDS**

Description

## Compensation Disclosure

Gallagher receives usual and customary brokerage commissions or fees (and occasionally fees in
addition to commissions) for its services. In addition to such fees and commissions, Gallagher may also
receive compensation in other forms. For more details, please see the Gallagher website at
www.ajg.com or contact your Gallagher representative.



**Arthur J. Gallagher & Co.**

Insurance Brokers of California, Inc.
505 North Brand Boulevard, Suite 600
Glendale, CA 91203-3944
Phone: (818) 539-2300
License # 0726293

**GTS 900 F, LLC**

c/o Astani Enterprises, Inc.
9595 Wilshire Blvd., Ste. 1010
Beverly Hills, CA 90212

| INVOICE # | 151511 | Page 1 |
|---|---|---|

| ACCOUNT NO. | OP | DATE |
|---|---|---|
| ASTAN-110001 | TK | 11/30/10 |

**OCIP Excess Liability**

| POLICY # |
|---|
| NU6293404 |

| COMPANY |
|---|
| ALLIED WORLD ASSURANCE CO LTD |

| EFFECTIVE | EXPIRATION |
|---|---|
| 05/17/06 | 03/31/11 |

| AMOUNT PAID | AMOUNT DUE |
|---|---|
| | $ 5,458.75 |

**ALL PREMIUMS ARE DUE AND PAYABLE UPON RECEIPT**
DETACH & RETURN THIS PORTION TO INSURE PROPER CREDIT

---

**PLEASE REMIT PAYMENT TO: FILE # 62430, LOS ANGELES, CALIFORNIA 90074-2430**

| Itm # | Eff Date | Type | Policy # | Description | | Amount |
|---|---|---|---|---|---|---|
| INVOICE # | 151511 | | | | | |
| 547549 | 11/17/10 | OCXS | NU6293404 | Extend 3rd XS to 03/31/11 | ALLIED WORLD ASSURANCE CO | $ 5,000.00 |
| 547550 | 11/17/10 | OCXS | NU6293404 | CA Surplus Lines Taxes & Fees | ALLIED WORLD ASSURANCE CO | $ 158.75 |
| 547551 | 11/17/10 | OCXS | NU6293404 | Wholesale Broker Fee | ALLIED WORLD ASSURANCE CO | $ 300.00 |
| | | | | | Invoice Balance: | $ 5,458.75 |

**Arthur J. Gallagher & Co.**
Insurance Brokers of California, Inc.
License # 0726293

**RETAIN BOTTOM HALF FOR YOUR RECORDS**

**Compensation Disclosure**

Gallagher receives usual and customary brokerage commissions or fees (and occasionally fees in
addition to commissions) for its services. In addition to such fees and commissions, Gallagher may also
receive compensation in other forms. For more details, please see the Gallagher website at
www.ajg.com or contact your Gallagher representative.

ACORD | **EVIDENCE OF COMMERCIAL PROPERTY INSURANCE** | DATE (MM/DD/YYYY) 11/23/2010

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): 877-945-7378 | COMPANY NAME AND ADDRESS | NAIC NO: 20443-000 |
|---|---|---|---|
| Willis Insurance Services of California, Inc.<br>26 Century Blvd.<br>P. O. Box 305191<br>Nashville, TN 37230-5191 | | Continental Casualty Company<br>CNA Plaza<br>Chicago, IL 60685 | |
| | FAX (A/C, No): 888-467-2378   E-MAIL ADDRESS: certificates@willis.com | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH | |
| CODE: | SUB CODE: | POLICY TYPE | |
| AGENCY CUSTOMER ID #: | | GTS 900FLLC Property | |
| NAMED INSURED AND ADDRESS<br>GTS 900 F LLC<br>9595 Wilshire Blvd<br>Suite 1010<br>Beverly Hills, CA 90212 | | LOAN NUMBER | POLICY NUMBER RMP4025876101 |
| | | EFFECTIVE DATE 11/01/2010 | EXPIRATION DATE 11/01/2011 |
| ADDITIONAL NAMED INSURED(S) | | THIS REPLACES PRIOR EVIDENCE DATED: 11/23/2010 WITH ID: 15035351 | CONTINUED UNTIL TERMINATED IF CHECKED |

**PROPERTY INFORMATION** (Use REMARKS on page 2, if more space is required) [X] BUILDING  OR  [X] BUSINESS PERSONAL PROPERTY

LOCATION/DESCRIPTION
RE: Concerto Project Phase I, 900 Figueroa Street, Los Angeles, CA

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**   PERILS INSURED | BASIC | BROAD | [X] SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: $  $183,530,000         DED: $25,000

| | YES | NO | N/A | |
|---|---|---|---|---|
| [X] BUSINESS INCOME   [ ] RENTAL VALUE | x | | | If YES, LIMIT: $300,000   [X] Actual Loss Sustained; # of months 12 |
| BLANKET COVERAGE | | x | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | | x | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | x | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | x | | |
| LIMITED FUNGUS COVERAGE | | x | | If YES, LIMIT:                  DED: |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | x | | | Policy Form |
| REPLACEMENT COST | x | | | |
| AGREED VALUE | | | x | |
| COINSURANCE | | | x | If YES,        % |
| EQUIPMENT BREAKDOWN (If Applicable) | x | | | If YES, LIMIT:     $100,000,000      DED: $25,000 |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | x | | | |
| - Demolition Costs | x | | | If YES, LIMIT:     $250,000      DED: $25,000 |
| - Incr. Cost of Construction | x | | | If YES, LIMIT:     included      DED: $25,000 |
| EARTH MOVEMENT (If Applicable) | | x | | If YES, LIMIT:                  DED: |
| FLOOD (If Applicable) | | x | | If YES, LIMIT:                  DED: |
| WIND / HAIL (If Subject to Different Provisions) | | x | | If YES, LIMIT:                  DED: |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | x | | | |

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**ADDITIONAL INTEREST**

| [X] MORTGAGEE   [ ] CONTRACT OF SALE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|
| [X] LENDERS LOSS PAYABLE | |
| NAME AND ADDRESS<br>Corus Construction Venture LLC<br>c/o TriMont Real Estate Advisors<br>3424 Peachtree Road NE, Suite 2200<br>Atlanta, GA 30326 | AUTHORIZED REPRESENTATIVE |

ACORD 28 (2009/12) Coll:3192230 Tpl:1184266 Cert:15036419 Page 1 of 1  © 2003–2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

22