Van C. Durrer II (SBN 226693)
Ramon M. Naguiat (Cal. Bar No. 209271)
Emily C. Ma (Cal. Bar No. 246014)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600
van.durrer@skadden.com
ramon.naguiat@skadden.com
emily.ma@skadden.com

Attorneys for Corus Construction Venture, LLC
and the CCV Lien Claimants[1]

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:09-bk-35127-VZ |
| GTS 900 F, LLC, a California limited liability company, aka Concerto, | Chapter 11 |
| Debtor. | **Preliminary Objections of Corus Construction Venture, LLC and the CCV Lien Claimants to Plan of Reorganization Proposed by GTS 900 F, LLC** |
| | **[Docket No. 917]** |
| Tax ID # 20-2396211 | Date:      February 17, 2011<br>Time:      9:30 a.m.<br>Judge:     Hon. Vincent P. Zurzolo<br>Location:  Courtroom 1368<br>           255 E. Temple Street<br>           Los Angeles, CA  90012 |

---

[1] The CCV Lien Claimants are listed individually on Schedule 1 attached hereto.

Corus Construction Venture, LLC ("CCV"), the successor-in-interest to Corus Bank, N.A. ("Corus Bank"), the largest secured creditor of GTS 900 F, LLC (the "Debtor") for the Debtor's Concerto development project (the "Project"), and certain of CCV's affiliates (the "CCV Lien Claimants," and collectively with CCV, the "CCV Parties") hereby submit the following preliminary objections to the plan of reorganization proposed by the Debtor (the "GTS Plan"), which was filed on December 1, 2010, as part of the First Amended Unitary Disclosure Statement and Competing Plans of Reorganization Proposed by GTS 900 F, LLC and Corus Construction Venture, LLC [Docket No. 917] (the "Unitary Disclosure Statement"). Consistent with the Court's instructions at the November 18, 2010 hearing at which the Court approved the Unitary Disclosure Statement, these objections are presented in outline form and are without prejudice to the submission of more detailed objections and evidence in support of such objections. Accordingly, the CCV Parties object to the GTS Plan on the following grounds:

1. **Feasibility**. Under the GTS Plan, the Debtor proposes to pay all claims (estimated by the Debtor at $184,737,000) in full from cash held in the Debtor's estate and from the proceeds of a sale of the assets comprising the Project (the "Project Assets") free and clear of claims, interests, and encumbrances. The Debtor intends to seek approval of the sale pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"). According to the Unitary Disclosure Statement, the Debtor commenced marketing the Project Assets on September 14, 2010. The Debtor suggests, by reference to figures provided by its real estate broker, Moran & Company, that the sale will yield between $190-$200 million. Based on the Debtor's planned 14-19 week marketing process, the closing of the sale was/is projected to occur between December 21, 2010 and January 25, 2011. The Debtor has yet to file a motion to approve a sale of the Project Assets, which suggests that the Debtor will not close within the assumed timeline. The GTS Plan is not feasible, as required by section 1129(a)(11) of the Bankruptcy Code, because, among other reasons, the GTS Plan (i) underestimates the amounts payable to claimants by failing to provide for post-petition interest, fees, and costs that have accrued with respect to the Class 1 secured claim of CCV and Class 2 mechanic's lien claims; (ii) underreports the amounts of administrative claims that have already accrued and are outstanding, as well as additional amounts that continue to accrue;

(iii) fails to account for fees payable to the Debtor's real estate broker; (iv) relies upon a projected sale value that is unrealistic and significantly higher than the values stated in the valuation report filed by the neutral, Court-appointed expert, which report may itself be premised on certain incorrect assumptions; (v) assumes completion of the Phase I tower as originally contemplated under the July 2, 2007 construction loan agreement between the Debtor and Corus Bank even though the Debtor has decided to leave certain aspects of the Project incomplete; and (vi) the Debtor will not have sufficient cash to consummate the GTS Plan on the effective date.

    **2.    Violation of the Fair and Equitable Requirement and the Absolute Priority Rule.** With respect to secured creditors in Classes 1 and 2, the GTS Plan does not comply with section 1129(b)(2)(A) of the Bankruptcy Code because it (i) does not expressly allow secured creditors to retain their liens and provide for deferred cash payments totaling the entire amounts of their claims; (ii) fails to provide secured creditors an opportunity to credit bid the amounts of their claims; and (iii) does not provide secured creditors the "indubitable equivalent" of their claims. As mentioned above, post-petition interest has accrued with respect to the Class 1 secured claim of CCV and Class 2 mechanic's lien claims. Accordingly, the GTS Plan is not fair and equitable because claimants in Classes 1 and 2 will neither retain their liens nor will they receive payment in full of the entire amounts of their claims and the applicable interest accruing on such claims. Further, the GTS Plan violates the absolute priority rule insofar as it allows equity interest holders to retain their interests in the Debtor, even though secured creditors will not be paid post-petition interest on their claims.

    **3.    Plan Does Not Comply with the Bankruptcy Code**.

    a.    The GTS Plan does not satisfy sections 510(a) and 1129(a)(1) of the Bankruptcy Code because the GTS Plan fails to subordinate the claims of Astani Construction, Inc. ("ACI"), which an affiliate of the Debtor, and of the Debtor's principals in accordance with the subordination provisions of the Repayment Guaranty, the Completion Guaranty, and the Carve-Out Guaranty, each executed by the principals of the Debtor and ACI on July 2, 2007.

    b.    T he GTS Plan does not satisfy section 506(b) of the Bankruptcy Code because, while the Debtor assumes that secured creditors are oversecured, the GTS Plan does not

provide for post-petition interest, fees, and costs that have accrued with respect to the Class 1 secured claim of CCV and Class 2 mechanic's lien claims.

    c.  The GTS Plan fails to satisfy sections 1122 and 1129(a)(1) of the Bankruptcy Code because the GTS Plan fails to separately classify the claims of ACI and the Debtor's principals, which are subordinated in accordance with the subordination provisions of the Repayment Guaranty, the Completion Guaranty, and the Carve-Out Guaranty, each executed by the principals of the Debtor and ACI on July 2, 2007.

  **4.**  **Best Interests Test**. The GTS Plan does not satisfy section 1129(a)(7) of the Bankruptcy Code because the GTS Plan is structured to allow equity interest holders to retain an interest in the Debtor even though claimants in Classes 1, 2, and 3 receive no post-petition interest. The "best interests test" requires that, as of the effective date, creditors must not receive amounts that are less than the amounts that they would receive if the Debtor were liquidated under chapter 7 on such date. Assuming *arguendo* that the Debtor's valuation assumptions are correct, if the Debtor were liquidated, claimants in Classes 1, 2, 3, as well as administrative creditors, would be paid in full, including post-petition interest, before equity interest holders are entitled to participate in any recovery. Under the GTS Plan, however, claimants in Classes 1 and 2 are deprived of the interest to which they are entitled. In addition, under section 726 of the Bankruptcy Code, in a chapter 7 liquidation, post-petition interest must be paid with respect to both secured and unsecured claims before any value is returned to the Debtor.

  **5.**  **Lack of Unanimous Acceptance**. The GTS Plan cannot satisfy section 1129(a)(8) of the Bankruptcy Code because the CCV Parties constitute more than half the members and hold more than one-third of the amounts of claims in each of Classes 1, 2, and 3 of the GTS Plan. Insofar as the CCV Parties have at least a blocking position in each of those classes and have voted to reject the GTS Plan, the GTS Plan cannot be consensually confirmed.

  **6.**  **Lack of Acceptance by at Least One Impaired Class**. The GTS Plan cannot satisfy section 1129(a)(10) of the Bankruptcy Code because Classes 1, 2, and 3 are the only impaired classes under the GTS Plan, and the CCV Parties constitute more than half the members and hold more than one-third of the amounts of claims in each of those classes. Insofar as the CCV

3

**CCV Parties' Preliminary Objections to Debtor's Plan**

632729.02-Los Angeles Server 2A - MSW

Parties have blocking positions in every impaired class and have voted to reject the GTS Plan, the GTS Plan cannot be confirmed.

7. The CCV Parties reserve their rights to make further preliminary objections or to amend these preliminary objections to the GTS Plan as the CCV Parties investigate the facts and obtain further information through the discovery process.

Date: January 10, 2011

                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                    By:    */s/ Ramon M. Naguiat*
                          Van C. Durrer II (Cal. Bar No. 226693)
                          Ramon M. Naguiat (Cal. Bar No. 209271)
                          Emily C. Ma (Cal. Bar No. 209271)
                          300 South Grand Avenue, Suite 3400
                          Los Angeles, California 90071
                          Telephone: (213) 687-5000
                          Facsimile: (213) 687-5600

                          Attorneys for Corus Construction Venture, LLC
                          and the CCV Lien Claimants

## Schedule 1 – CCV Lien Claimants

| | |
|---|---|
| CCV Concerto Lien 1, LLC | CCV Concerto Lien 22, LLC |
| CCV Concerto Lien 2, LLC | CCV Concerto Lien 23, LLC |
| CCV Concerto Lien 3, LLC | CCV Concerto Lien 25, LLC |
| CCV Concerto Lien 4, LLC | CCV Concerto Lien 26, LLC |
| CCV Concerto Lien 5, LLC | CCV Concerto Lien 27, LLC |
| CCV Concerto Lien 6, LLC | CCV Concerto Lien 28, LLC |
| CCV Concerto Lien 7, LLC | CCV Concerto Lien 29, LLC |
| CCV Concerto Lien 8, LLC | CCV Concerto Lien 30, LLC |
| CCV Concerto Lien 9, LLC | CCV Concerto Lien 31, LLC |
| CCV Concerto Lien 10, LLC | CCV Concerto Lien 32, LLC |
| CCV Concerto Lien 11, LLC | CCV Concerto Lien 34, LLC |
| CCV Concerto Lien 12, LLC | CCV Concerto Lien 35, LLC |
| CCV Concerto Lien 13, LLC | CCV Concerto Lien 36, LLC |
| CCV Concerto Lien 14, LLC | CCV Concerto Lien 37, LLC |
| CCV Concerto Lien 15, LLC | CCV Concerto Lien 38, LLC |
| CCV Concerto Lien 16, LLC | CCV Concerto Lien 40, LLC |
| CCV Concerto Lien 17, LLC | CCV Concerto Lien 41, LLC |
| CCV Concerto Lien 18, LLC | CCV Concerto Lien 42, LLC |
| CCV Concerto Lien 19, LLC | CCV Concerto Lien 43, LLC |
| CCV Concerto Lien 20, LLC | CCV Concerto Lien 45, LLC |
| CCV Concerto Lien 21, LLC | |