# EXHIBIT 1

1  Van C. Durrer II (SBN 226693)
   Ramon M. Naguiat (SBN 209271)
2  Emily C. Ma (SBN 246014)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
3  300 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-3144
4  Telephone: (213) 687-5000
   Facsimile:  (213) 687-5600
5  van.durrer@skadden.com
   ramon.naguiat@skadden.com
6  emily.ma@skadden.com

7  Attorneys for Corus Construction Venture,
   LLC
8
                    UNITED STATES BANKRUPTCY COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10
                         LOS ANGELES DIVISION
11
   In re:                              )   Case No.:  2:09-bk-35127-VZ
12                                      )
   GTS 900 F, LLC, a California limited liability )   Chapter 11
13 company, aka Concerto,               )
                                        )   **ORDER GRANTING MOTION TO**
14                Debtor.               )   **CONFIRM CORUS CONSTRUCTION**
                                        )   **VENTURE LLC'S PLAN OF**
15                                      )   **REORGANIZATION**
                                        )
16                                      )   Date:       February 17, 2011
   Tax ID # 20-2396211                  )   Time:       9:30 a.m.
17                                      )   Judge:      Hon. Vincent P. Zurzolo
                                        )   Location:   Courtroom 1368
18                                      )               255 E. Temple Street
                                        )               Los Angeles, CA  90012
19 ─────────────────────────────────── )

20         A hearing was held on February 17, 2011 (the "Hearing") to consider the Motion to

21 Confirm Corus Construction Venture LLC's Plan of Reorganization [Docket No. _____] (the

22 "Motion") filed by Corus Construction Venture LLC (collectively with its designee(s), "CCV").

23 By the Motion, CCV seeks confirmation of its plan of reorganization (the "CCV Plan"),[1] which is

24 incorporated in the First Amended Unitary Disclosure Statement and Competing Plans of

25 Reorganization Proposed by GTS 900 F, LLC and Corus Construction Venture, LLC [Docket No.

26 ───────────────────

27        [1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to
28 them in the CCV Plan.

                                        1

1  917] (the "Underline Unitary Disclosure Statement"), and related relief.  Appearances of parties at the

2  Hearing were noted on the record.  The Court has considered the CCV Plan, the Motion, the

3  declarations of Seth Hewitt, John Barkidjija, James Pike, and Peter Kravitz in support of the

4  Motion, the Unitary Disclosure Statement, the record of this chapter 11 case (including the

5  documents filed herein), any other evidence before this Court, and the arguments of counsel.  It

6  appears that that just cause exists to grant the Motion and to confirm the CCV Plan.  Accordingly,

7  after due deliberation and for good cause shown,

8      IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED

9  THAT:

10      **FINDINGS OF FACT AND CONCLUSIONS OF LAW**[2]

11      A.    Jurisdiction and Venue.  The Court has jurisdiction over this case under 28 U.S.C.

12  §§ 157 and 1334.  Confirmation of the CCV Plan is a core proceeding under 28 U.S.C. § 157(b)(2),

13  and the Court has exclusive jurisdiction to determine whether the CCV Plan complies with the

14  applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and should be

15  confirmed.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in

16  the Central District of California was proper as of the date this case was commenced (the "Petition

17  Date") and continues to be proper.

18      B.    Judicial Notice.  The Court takes judicial notice of the docket of this bankruptcy

19  case maintained by the Clerk of the Court or its duly appointed agent, including, without limitation,

20  all pleadings and other documents filed, all orders entered, and all evidence and arguments made,

21  proffered, or adduced at, the hearings held before the Court during the pendency of this case.

22      C.    Solicitation.  The Unitary Disclosure Statement (including the CCV Plan), the

23  ballots, and certain related materials (collectively, the "Solicitation Packages") were transmitted

24  and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, applicable

25  nonbankruptcy law, and the order approving the Unitary Disclosure Statement [Docket No. 932]

26  ────────────────

27      [2] These findings of fact and conclusions of law are in addition any findings of fact and
conclusions of law stated orally at the Hearing, which findings and conclusions are incorporated
28  herein by reference.

1  (the "<u>Disclosure Statement and Solicitation Procedures Order</u>").  Such transmittal and service of

2  the Solicitation Packages were adequate and sufficient.  Adequate and sufficient notice of the CCV

3  Plan, the Motion, and the Hearing was given in compliance with the Bankruptcy Code, the

4  Bankruptcy Rules, and the Disclosure Statement and Solicitation Procedures Order, and no other or

5  further notice is or shall be required.  Votes for acceptance and rejection of the CCV Plan were

6  solicited in good faith and such solicitation complied with the Bankruptcy Code (including, without

7  limitation, sections 1125 and 1126 of the Bankruptcy Code), the Bankruptcy Rules (including,

8  without limitation, Bankruptcy Rules 3017 and 3018), the Disclosure Statement and Solicitation

9  Procedures Order, and all other applicable rules, laws, and regulations.

10       D.    <u>Burden of Proof</u>.  CCV, as the proponent of the CCV Plan, has met its burden of

11  proving by a preponderance of evidence that the CCV Plan satisfies the requirements of sections

12  1129(a) and (b) of the Bankruptcy Code.

13       E.    <u>Voting</u>.  Votes on the CCV Plan were solicited after the disclosure of "adequate

14  information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Declaration

15  of Michael J. Paque with Respect to the Tabulation of Votes on the Competing Plans of

16  Reorganization Proposed by GTS 900 F, LLC and Corus Construction Venture, LLC Pursuant to

17  Local Rule 3018-1 [Docket No. 1033], votes to accept the CCV Plan have been solicited and

18  tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement and

19  Solicitation Procedures Order, the Bankruptcy Code, and the Bankruptcy Rules.

20       F.    <u>CCV Plan Satisfies the Confirmation Standards of 11 U.S.C. §§1129(a)(1) - (a)(7)</u>

21  <u>and 1129(a)(9) - (a)(16)</u>. The CCV Plan satisfies the confirmation standards set forth in sections

22  1129(a)(1) - (a)(7) and 1129(a)(9) - (a)(16) of the Bankruptcy Code.  The CCV Plan does not,

23  however, satisfy section 1129(a)(8) of the Bankruptcy Code and, therefore, must be confirmed

24  under section 1129(b) of the Bankruptcy Code.

25       G.    <u>Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. §</u>

26  <u>1129(b))</u>.  Notwithstanding the fact that certain classes either voted not to accept or are deemed to

27  reject the CCV Plan (the "<u>Rejecting Classes</u>"), the CCV Plan may be confirmed pursuant to section

28  1129(b)(1) of the Bankruptcy Code because (i) at least one impaired class has voted to accept the

3

CCV Plan Confirmation Order

1  CCV Plan, and (ii) the CCV Plan does not discriminate unfairly and is fair and equitable with

2  respect to the Rejecting Classes.  Thus, the CCV Plan may be confirmed notwithstanding the

3  failure to satisfy section 1129(a)(8) of the Bankruptcy Code.  After entry of this order and upon the

4  occurrence of the CCV Plan Effective Date (defined below), the CCV Plan shall be binding upon

5  the members of the Rejecting Classes.

6       H.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The CCV Plan is the only plan of

7  reorganization filed in this case that is confirmable under sections 1129(a) and (b) of the

8  Bankruptcy Code.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

9       I.    <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the CCV

10  Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act, and no

11  governmental unit has objected to the confirmation of the CCV Plan on such grounds.  The CCV

12  Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

13       J.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court

14  in this case, CCV, its affiliates, and their respective present and former members, officers, directors,

15  partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents

16  (collectively, all such entities and individuals, the "<u>CCV Entities</u>") have solicited acceptances of

17  the CCV Plan in good faith and in compliance with the applicable provisions of the Bankruptcy

18  Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any

19  applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in

20  connection with such solicitation.

21       K.    <u>Satisfaction of Confirmation Requirements</u>. For all of the foregoing reasons, the

22  CCV Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy

23  Code.

24       L.    <u>Good Faith Consummation of the CCV Plan</u>.  The CCV Entities will be acting in

25  good faith if they proceed to (i) consummate the CCV Plan and the agreements, settlements,

26  transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by

27  this order.

28

1    M.    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>.  The

2  Motion satisfies all requirements for the assumption and assignment of executory contracts and

3  unexpired leases contained in the Bankruptcy Code, including, without limitation, the requirement

4  to cure all outstanding defaults, if any, and to provide adequate assurance of future performance

5  under such contracts and leases.

6    N.    <u>Settlements and Compromises</u>. The settlements and compromises reflected in the

7  CCV Plan and this order, including, without limitation, the discharges, the releases, the

8  exculpations, and the injunctions and the allowance of CCV's claim, are fair, equitable, reasonable,

9  in good faith, and are in the best interests of the Debtor's estate and other parties in interest.  The

10  record of the Hearing and this case is sufficient to support the settlements and compromises

11  reflected in the CCV Plan and this order.

12    O.    <u>Subordination of Astani Claims</u>.  Pursuant to section 510 of the Bankruptcy Code,

13  the subordination provisions of (i) the Repayment Guaranty dated July 2, 2007, (ii) the Completion

14  Guaranty dated July 2, 2007, and (iii) the Carve-Out dated July 2, 2007 (collectively, the

15  "<u>Guaranties</u>"), each executed by Sonny Astani, Marco Astani, individually and as trustee of the

16  Marco Astani Family Trust dated as of March 15, 2006, and Sonny H. Astani and Jo Cho, as

17  Trustees of the Astani/Cho Living Trust dated as of April 29, 1999 (collectively, the "<u>Guarantors</u>"),

18  are valid and enforceable, and  are appropriately reflected in the CCV Plan's treatment of the

19  Astanti Claims.  Various claims asserted or held, or scheduled by the Debtor as held, by Astani

20  Construction, Inc. ("<u>Astani Construction</u>") are (a) Class 5 claims, including, without limitation,

21  claim numbers 45, 87, and 96, and/or (b) Class 6 claims, including, without limitation, claim

22  numbers 45, 94, and 110.  Given that these claims are held by Astani Construction, which

23  is controlled by Sonny Astani and Marco Astani, such claims are subject to the Guaranties,

24  subordinated to CCV's claims, and may not be paid until CCV's claims are paid in full.  Nothing

25  herein shall be deemed or interpreted as allowing any such claims of Astani Construction.

26    P.    <u>CCV Deposit</u>.  Pursuant to the Court's order approving the Unitary Disclosure

27  Statement [Docket No. 932], CCV deposited $1,074,929.54 (the "<u>CCV Deposit Amount</u>") into a

28  segregated account held by Kurtzman Carson Consultants LLC, the voting agent (the "<u>Voting</u>

5

<u>CCV Plan Confirmation Order</u>

1  Agent"). The CCV Deposit Amount is based on CCV's reasonable estimate of the total amount to

2  be paid in CCV Cash in satisfaction of allowed claims as of the CCV Plan Effective Date based on

3  a review of the CCV Plan, the Debtor's schedules, the claims register, and the record in this case.

4  As set forth in the Declaration of Seth Hewitt (ST Residential, LLC) in Support of Plan of

5  Reorganization Proposed by Corus Construction Venture, LLC [Docket No. 988] (the "CCV

6  Deposit Declaration"), the CCV Deposit Amount consists of (i) $954,392.74 in non-insider

7  mechanics lien claims classified under Class 2 of the CCV Plan, inclusive of post-petition interest,

8  and (ii) $120,536.80 in non-insider general unsecured claims classified under Class 3 of the CCV

9  Plan, none of which claims have been acquired by CCV or its affiliates. Exhibits A and B to the

10 CCV Deposit Declaration set forth the claims that CCV believes have been allowed by the Court

11 and are classified in Classes 2 and 3 of the CCV Plan.

12                                     **DECREES**

13          NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

14          1.      CCV Plan is Confirmed. The CCV Plan and each of its provisions, as may be

15 modified herein, are confirmed by this order pursuant to section 1129 of the Bankruptcy Code.

16 The terms of the CCV Plan are incorporated by reference into and are an integral part of this order.

17 The "CCV Plan Effective Date" shall be the first business day after the date on which this order is

18 no longer subject to any stay.

19          2.      Objections Overruled. All objections that have not been withdrawn, waived, or

20 settled, and all reservations of rights, pertaining to the Motion or to confirmation of the CCV Plan

21 are overruled on the merits.

22          3.      Administrative Claims. Allowed claims for administrative costs or expenses that

23 are allowable under section 503(b) of the Bankruptcy Code or 28 U.S.C. § 1930 ("Administrative

24 Claims") shall be paid in full from the Estate Held Cash (defined below) on the later of the CCV

25 Plan Effective Date and the date on which such Administrative Claims are allowed. Any requests

26 for payment of an Administrative Claim must be filed with the Court and served on the Plan

27 Administrator (defined below) no later than forty-five (45) days after the CCV Plan Effective Date

28 (the "Administrative Claims Bar Date"). Holders of Administrative Claims that do not file and

serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the above-captioned debtor (the "Debtor") or its estate, and such Administrative Claims shall be deemed discharged as of the CCV Plan Effective Date.  The Plan Administrator shall file any objections to Administrative Claims no later than sixty (60) days after the Administrative Claims Bar Date (the "Administrative Claims Objection Deadline").  The Plan Administrator may resolve Administrative Claims without further order of the Court.  Notwithstanding anything to the contrary in the CCV Plan or this order, CCV shall have the right to review and object to the allowance of any asserted Administrative Claims.  The Plan Administrator shall hold $2,900,000 of the Estate Held Cash in reserve for payment of allowed Administrative Claims (the "Administrative Claims Reserve"), including $150,000 for compensation of the Plan Administrator, $1,750,000 for allowed Administrative Claims (including, without limitation, the allowed Administrative Claims of professionals and of vendors that provided goods and services necessary to preserving the Debtor's estate) through the CCV Plan Effective Date, and $1,000,000 for fees and expenses of the Plan Administrator's advisors.  Pursuant to the terms of the order approving its employment, [Docket NO. 885], Moran & Company does not have any Administrative Claim and is not entitled to any payment under the Joint Plan or otherwise.  To the extent that the Administrative Claims Reserve is insufficient to pay all allowed Administrative Claims, CCV shall provide additional CCV Cash sufficient to cover any such deficiency.

4.    Tax Claims.  Any allowed pre-petition tax claims shall be treated as Class 3 claims and shall be paid in full from the CCV Cash on the later of the CCV Plan Effective Date and the dates on which such pre-petition tax claims are allowed.

5.    Class 1 Claims (CCV's Secured Claim).  CCV's claim shall be allowed in full, without prejudice to (a) the action captioned GTS 900 F, LLC v. Corus Construction Venture, LLC, Adv. No. 2:09-ap-03557V (the "Debtor Adversary Proceeding"), which was filed in this Court and may be subject to related proceedings in the District Court or (b) the proceeding before the United States District Court for the Central District of California titled GTS 900 F, LLC v. FDIC et al., Civ. No. 2:10-cv-02763-SJO (the "FDIC District Court Proceeding").  Subject to the terms of this

7

1  order, on the CCV Plan Effective Date, title to the CCV Project Assets shall be transferred to CCV

2  in satisfaction of CCV's secured claim.  To the extent that the value of the CCV Project Assets

3  (defined below) transferred to CCV, net of payments to satisfy Mechanic's Lien Claims (defined

4  below), is less than the amount of CCV's claim, CCV shall have a deficiency claim for the

5  difference (the "CCV Deficiency Claim").  The CCV Deficiency Claim shall be treated as a Class

6  4 claim and be paid as set forth below.

7          6.      Class 2 (Non-Insider Mechanic's Lien Claims).  Allowed non-insider claims for

8  work performed, or services, equipment, and/or materials provided, with respect to the Project

9  (defined below) that are secured by validly perfected mechanic's liens on assets of the Debtor

10  (such allowed claims, excluding any Astani Claims (defined below), the "Mechanic's Lien Claims")

11  shall be paid in full, including Postpetition Interest (defined below), from the cash to be contributed

12  by CCV for payment of allowed claims in accordance with the CCV Plan (the "CCV Cash") on the

13  later of the CCV Plan Effective Date and the dates on which such Mechanic's Lien Claims are

14  allowed.  As used herein, "Postpetition Interest" means interest accrued from the Petition Date

15  through the CCV Plan Effective Date as allowed under section 506(b) and applicable

16  nonbankruptcy law.  Upon payment in full of an allowed Mechanic's Lien Claim, the applicable

17  mechanic's lien(s) and any and all claims and causes of action that the holder of such Mechanic's

18  Lien Claim may have against CCV shall each be extinguished.  Notwithstanding anything to the

19  contrary in the CCV Plan or this order, CCV shall have the right to contest the validity and amount

20  of any asserted mechanic's lien claim.

21          7.      Treatment of Class 3 (Non-Insider General Unsecured Claims).  Allowed non-

22  insider general unsecured claims (such allowed unsecured claims, excluding any Astani Claims and

23  the CCV Deficiency Claim, the "General Unsecured Claims") shall be paid in full from the CCV

24  Cash on the later of the CCV Plan Effective Date and the dates on which such General Unsecured

25  Claims are allowed.

26          8.      Treatment of Class 4 (CCV Deficiency Claim).  The CCV Deficiency Claim shall

27  be paid from any Estate Proceeds (defined below).  As used herein, "Estate Proceeds" means the

28  net proceeds of any and all claims and causes of action belonging to the estate (collectively, such

8

CCV Plan Confirmation Order

1  claims and causes of action, the "Estate Actions"), including the Debtor Adversary Proceeding, the

2  FDIC District Court Proceeding, and the action captioned Astani Construction, Inc. v. Corus

3  Construction Venture, LLC, Adv. No. 2:09-ap-01361-VZ (the "Astani Construction Adversary

4  Proceeding"), which was filed in this Court.  Payment of the CCV Deficiency Claim from any

5  Estate Proceeds is expressly without prejudice to CCV's rights to pursue payment of the CCV

6  Deficiency Claim against non-Debtor parties, including, without limitation, the Guarantors.

7          9.      Treatment of Class 5 (Astani Secured Claims).  Subject to the terms of any

8  enforceable subordination agreement, allowed secured Astani Claims (such allowed secured claims,

9  the "Astani Secured Claims") shall be paid in full, plus Postpetition Interest, from CCV Cash on

10  the later of the CCV Plan Effective Date and the dates on which such Astani Secured Claims are

11  allowed pursuant to a final order (such final order, the "Astani Secured Claim Order").  For the

12  avoidance of doubt, any and all Astani Secured Claims are classified in Class 5, regardless of

13  whether such Astani Secured Claims might fall within the parameters of some other class of claims

14  under the CCV Plan.  To the extent that the Court determines in the Astani Secured Claim Order

15  that the Astani Secured Claims are subordinated to CCV's claims pursuant to the Guaranties, the

16  applicable payments shall be redirected to CCV on account of the CCV Deficiency Claim, if any,

17  in enforcement of the Guaranties.  To the extent that the Court determines in the Astani Secured

18  Claim Order that the Astani Secured Claims are not subordinated to CCV's claims pursuant to the

19  Guaranties, the applicable payments shall be made directly to the holders of Astani Secured Claims.

20          10.     Treatment of Class 6 (Astani Unsecured Claims).  Subject to the terms of any

21  enforceable subordination agreement, allowed unsecured Astani Claims (such allowed unsecured

22  claims, the "Astani Unsecured Claims") shall be paid from Estate Proceeds pro rata with the CCV

23  Deficiency Claim on the later of the date on which Estate Proceeds become available and the dates

24  on which such Astani Unsecured Claims are allowed pursuant to a final order (such final order, the

25  "Astani Unsecured Claim Order").  For the avoidance of doubt, any and all Astani Unsecured

26  Claims are classified in Class 6, regardless of whether such Astani Unsecured Claims might fall

27  within the parameters of some other class of claims under the CCV Plan.  To the extent that the

28  Court determines in the Astani Unsecured Claim Order that the Astani Unsecured Claims are

CCV Plan Confirmation Order

1    subordinated to CCV's claims pursuant to the Guaranties, the applicable payments shall be

2    redirected to CCV on account of the CCV Deficiency Claim, if any, until the CCV Deficiency

3    Claim is paid in full, in enforcement of the Guaranties.  To the extent that the Court determines in

4    the Astani Unsecured Claim Order that the Astani Unsecured Claims are not subordinated to

5    CCV's claims pursuant to the Guaranties, the applicable payments shall be made directly to the

6    holders of allowed Astani Unsecured Claims.

7         11.    <u>Treatment of Class 7 (Equity Interests)</u>.  Equity interests shall be cancelled.  Unless

8    the Estate Proceeds are sufficient to pay creditors in full plus interest (any remaining proceeds after

9    payment in full of creditor claims plus interest, the "<u>Residual Proceeds</u>"), holders of equity

10   interests shall not receive anything on account of their interests.  To the extent there are any

11   Residual Proceeds, they will be distributed to holders of equity interests in Class 7.

12        12.    <u>Transfer of Project Assets to CCV</u>.  On the CCV Plan Effective Date, the CCV

13   Project Assets shall be transferred and conveyed pursuant to a grant deed, substantially in the form

14   attached hereto as <u>Exhibit A</u>, and a general assignment, substantially in the form attached hereto as

15   <u>Exhibit B</u>, from the Debtor to CCV free and clear of any and all liens, claims, interests, and

16   encumbrances that are dealt with by the CCV Plan.  As used herein, (a) "<u>Project</u>" refers,

17   collectively, to that certain parcel of real property located at 900 South Figueroa Street, 901 South

18   Flower Street, and 700 West 9th Street in the City of Los Angeles, County of Los Angeles, State of

19   California, as more particularly described in <u>Exhibit C</u> hereto (the "<u>Land Parcel</u>") and the

20   following construction thereon: (i) a tower that would contain 271 residential units as well as retail

21   space and storage space, which tower is commonly referred to as "Tower I";  (ii) a loft building

22   that would contain 77 residential units as well as retail space and storage space; (iii) a second

23   planned tower on the Land Parcel, which tower is commonly referred to as "Tower II"; and (iv) a

24   seven-story partly underground parking structure; and (b) "<u>CCV Project Assets</u>" includes the

25   Project and, more specifically, refers collectively to (i) the cash held in the Debtor's estate as of the

26   CCV Plan Effective Date (the "<u>Estate Held Cash</u>"), subject to payment of the Administrative

27   Claims Reserve; (ii) the Land Parcel; (iii) all improvements (including, without limitation, all

28   infrastructure and public improvements) attached to or placed, erected, constructed, or developed

1  on the Land Parcel or otherwise affixed thereto (collectively, the "Improvements"); (iv) any and all

2  fixtures, furnishings, equipment, machinery, furniture, and other items of tangible personal

3  property located on the Land Parcel or in the Improvements or used in connection with the

4  development, construction, use, occupancy, operation, and maintenance of all or any part of the

5  Land Parcel or the Improvements, including construction equipment, machinery, signs, artwork,

6  furnishings, specialized fixtures, furnishings, and equipment relating to the Debtor's development

7  of the Land Parcel, and all renewals of or replacements or substitutions for any of the foregoing,

8  whether or not the same are or shall be attached to the Land Parcel or the Improvements (the "CCV

9  Plan FF&E"); (v) any contracts relating to the Land Parcel, the Improvements, or the CCV Plan

10 FF&E (including all construction related agreements, license agreements, service agreements,

11 maintenance agreements, management agreements, and other agreements relating to the

12 development of the Land Parcel) that are assumed and assigned to CCV under this order; (vi) all

13 entitlements, permits, licenses, franchises, certificates, and other rights and privileges obtained in

14 connection with the Land Parcel; and (vii) all streets, roads, public places, easements and rights-of-

15 way, existing or proposed, public or private, adjacent to or used in connection with, belonging, or

16 pertaining to the Land Parcel.

17         13.     Exemption from Certain Taxes and Recording Fees.  Pursuant to section 1146(a) of

18 the Bankruptcy Code, the making or delivery of any instrument of transfer under, or in connection

19 with, the CCV Plan shall not be taxed under any law imposing a stamp tax or similar tax.

20 Furthermore, and without limiting the foregoing, any transfers from the Debtor to any person

21 pursuant to the CCV Plan shall not be subject to any document recording tax, stamp tax,

22 conveyance fee, intangibles tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage

23 recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

24 governmental assessment.  All filing or recording officers (or any other person with authority over

25 any of the foregoing), wherever located and by whomever appointed, shall comply with the

26 requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax

27 or governmental assessment, and shall accept for filing and recordation any of the foregoing

28

---

CCV Plan Confirmation Order

1   instruments or other documents without the payment of any such tax or governmental assessment.

2   The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

3       14.    Subordination of the Astani Claims.  The Astani Claims are subordinated to CCV's

4   claims, unless the Court orders otherwise.  Unless the Court finds that the subordination provisions

5   are unenforceable or inapplicable, the entirety of distributions on account of all Astani Claims shall

6   be transferred to CCV until the entirety of CCV's claims are paid in full. As used in this order, (a)

7   the "Astani Parties" means, collectively, in all capacities, Sonny Astani, Marco Astani, their

8   respective spouses and relatives, and any and all affiliates of any or all of the foregoing, including,

9   without limitation, Astani Enterprises, Astani Construction, Astani/Cho Living Trust, the Marco

10  Astani Living Trust, Concerto Partners, LLC, Concerto Manager, HPG Management, Inc.; and (b)

11  the "Astani Claims" means, collectively, (i) with respect to Administrative Claims (defined below),

12  any and all Administrative Claims of any of the Astani Parties that relate in any way to payments

13  made by or on behalf of the Astani Parties to any estate professionals, and (ii) with respect to non-

14  Administrative Claims, any and all claims of any of the Astani Parties, including, without

15  limitation, any claims transferred or sold to any of the Astani Parties.

16      15.    Disbursement of Funds Held in Segregated Account.  On the CCV Plan Effective

17  Date, the Voting Agent shall disburse the CCV Deposit Amount to the holders of claims in Classes

18  2 and 3, as identified in Exhibits A and B to the CCV Deposit Declaration, with any excess amount

19  to be immediately remitted to CCV.

20      16.    Estate Actions.  On the CCV Plan Effective Date, (a) the Estate Actions shall be

21  transferred to the Plan Administrator.  The Debtor and the Astani Parties shall turn over any and all

22  information and documents in their possession relating to any Estate Actions to the Plan

23  Administrator.  The Astani Construction Adversary Proceeding is an Estate Action.

24      17.    Actions in Furtherance of CCV Plan.  Following the CCV Plan Effective Date, CCV

25  and the Plan Administrator are authorized, and the Debtor is authorized and directed, to take any

26  and all actions as are necessary or appropriate to effect the provisions and purposes of the CCV

27  Plan.  Without limiting the foregoing, the Debtor shall execute all documents necessary or

28  appropriate to fully transfer and convey all of the Debtor's right, title, and interest in and to the

12

CCV Plan Confirmation Order

CCV Project Assets to CCV, including, but not limited to, all affidavits, documents, instruments of conveyance, and other agreements as CCV determines are necessary or appropriate.  Pursuant to the power of attorney attached hereto as Exhibit D, CCV is hereby appointed as the attorney-in-fact of the Debtor and the Debtor's estate for purposes of (a) executing and delivering to (or for the benefit of) CCV such affidavits, documents, instruments of conveyance, or other agreements as CCV determines are necessary or appropriate to fully transfer and convey all of the Debtor's right, title, and interest in and to the CCV Project Assets to CCV, and (b) otherwise effecting the terms of the CCV Plan and this order.

18.    Plan Administrator.  As of the CCV Plan Effective Date, Peter S. Kravitz is appointed as the plan administrator (the "Plan Administrator").

a.    The Plan Administrator shall be paid 3% of Estate Proceeds remaining after payment of fees and expenses of the Plan Administrator and his advisors ("Distributable Estate Proceeds").  The Plan Administrator will be entitled to guaranteed monthly minimum fees (the "Monthly Minimums") for up to 18 months following the CCV Plan Effective Date as follows:  (i) $15,000 per month for the first six months after the CCV Plan Effective Date; (ii) $7,500 per month for the next six months thereafter; (iii) and $2,500 for the next six months thereafter. The Plan Administrator shall credit the Monthly Minimums against the 3% of Distributable Estate Proceeds payable to himself, but no portion of the Monthly Minimums shall be refundable in the event that they exceed the 3% of Distributable Estate Proceeds payable to the Plan Administrator.  The Plan Administrator's compensation shall be paid from the Administrative Claims Reserve and Estate Proceeds.  The fees and expenses of the Plan Administrator's advisors shall be paid, up to $1,000,000, from the Administrative Claims Reserve.

b.    After the CCV Plan Effective Date, the Plan Administrator may employ, without notice, hearing, or order of the Court, such attorneys, accountants, and other professionals as he may desire to render services on such terms as he deems reasonable.  With respect to services rendered by professional persons

employed by the Plan Administrator after the CCV Plan Effective Date, the Plan Administrator shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Court; provided however, that with respect to fees, costs, and expenses of such professional persons for services rendered after the CCV Plan Effective Date in or in connection with this chapter 11 case, or in connection with the CCV Plan and incident to the case, in the event the Plan Administrator disputes the reasonableness of any such fees, costs, or expenses, the Plan Administrator shall pay such professional person only the undisputed amount, if any, and the Plan Administrator or the professional may file an application with the Court to determine the reasonableness of the fees, costs, or expenses which are in dispute.

c.      The Plan Administrator shall serve as the estate's representative under section 1123(b)(3) of the Bankruptcy Code and shall have the right to assert any or all of the Estate Actions post-Effective Date in accordance with applicable law.  The Plan Administrator shall (i) investigate Estate Actions and may, in the exercise of his reasonable business judgment, prosecute and/or settle the Estate Actions, and (ii) distribute the Estate Proceeds in accordance with the terms of this CCV Plan.  The Plan Administrator shall not investigate or pursue any avoidance actions arising from payments made during the ninety days before the Petition Date.

d.      As noted above, the Plan Administrator has until the Administrative Claims Objection Deadline to file objections to asserted Administrative Claims. The $2,900,000 in the Administrative Claims Reserve shall be allocated as follows: (i) $1,750,000 in the Administrative Claims Reserve for payment of allowed Administrative Claims, (ii) $1,000,000 for payment of fees and expenses of the Plan Administrator's advisors, and (iii) $150,000 for payment of the Plan Administrator's compensation.  To the extent that that the Estate Held Cash is insufficient to fund such allocated amounts, CCV shall fund the shortfall.  To the extent that the Estate Held Cash exceeds the amount necessary to fund such allocated amounts, the Plan

14

1    Administrator shall remit the excess cash of the Debtor to CCV as soon as

2    practicable, but in no case later than the twentieth (20th) day after the

3    Administrative Claims Bar Date.  If an Administrative Claim is allowed in an

4    amount lower than the claimed amount, the Plan Administrator shall remit the

5    difference from the Administrative Claims Reserve to CCV within five (5) days

6    following the Court's entry of an order, or the Plan Administrator's entry into an

7    agreement, allowing such Administrative Claim.

8         e.    The Plan Administrator shall make distributions of Estate Proceeds

9    in accordance with the terms of this CCV Plan at such times as the Plan

10   Administrator deems appropriate in light of the amount of Estate Proceeds available

11   at any given time and costs of making a distribution at such time.  Upon reasonable

12   request by any party with an interest in the Estate Proceeds, the Plan Administrator

13   shall provide an accounting of the Estate Proceeds.  Nothing in this CCV Plan shall

14   prohibit any party with an interest in the Estate Proceeds from requesting that the

15   Plan Administrator make a distribution of Estate Proceeds or, if the Plan

16   Administrator refuses to do so, filing with the Court a motion to compel a

17   distribution.

18         f.    To the extent that any pending claims objections are not resolved by

19   the CCV Plan Effective Date, the Plan Administrator shall succeed to the Debtor's

20   rights with respect to such unresolved objections.

21   19.    Discharge of Claims.  Pursuant to section 1141(d) of the Bankruptcy Code, and

22   except as otherwise specifically provided in the CCV Plan or this order, the distributions, rights,

23   and treatment that are provided in the CCV Plan and this order shall be in complete satisfaction,

24   discharge, and release, effective as of the CCV Plan Effective Date, of claims, interests, and causes

25   of action of any nature whatsoever in or against the Debtor or their assets that arose before the

26   CCV Plan Effective Date, whether known or unknown, whether contingent or not, in each case

27   whether or not (a) a proof of claim or interest based upon such debt, right, or interest is filed or

28   deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or an interest based upon

1  such debt, right, or interest is allowed pursuant to section 502 of the Bankruptcy Code; or (c) the

2  holder of such a claim or an interest has accepted the CCV Plan.

3      20.    Injunctions.  Except as otherwise provided or contemplated in the CCV Plan or this

4  order, all entities that have held, hold, or may hold claims, interests, or causes of action that have

5  been discharged, released, or are subject to exculpation under this order (but only to the extent of

6  such exculpation) are permanently enjoined and precluded, from and after the CCV Plan Effective

7  Date, from (a) commencing or continuing in any manner any action or other proceeding of any

8  kind against any entity so discharged, released, or exculpated (or the property or estate of any

9  entity so discharged, released, or exculpated) on account of or in connection with or with respect to

10  any such discharged, released, or exculpated claims, interests, or causes of action; (b) enforcing,

11  attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order

12  against any entity so discharged, released, or exculpated (or the property or estate of any entity so

13  discharged, released, or exculpated) on account of or in connection with or with respect to any such

14  discharged, released, or exculpated claims, interests, or causes of action; (c) creating, perfecting, or

15  enforcing any lien, claim, or encumbrance of any kind against any entity so discharged, released, or

16  exculpated (or the property or estate of any entity so discharged, released, or exculpated) on

17  account of or in connection with or with respect to any such discharged, released, or exculpated

18  claims, interests, or causes of action; (d) asserting any right of setoff, subrogation, or recoupment

19  of any kind against any obligation due from any entity so discharged, released, or exculpated (or

20  the property or estate of any Entity so discharged, released, or exculpated) on account of or in

21  connection with or with respect to any such discharged, released, or exculpated claims, interests, or

22  causes of action, unless such holder has filed a motion requesting the right to perform such setoff

23  on or before the date on which the CCV Plan is confirmed, and notwithstanding any indication in a

24  proof of claim or interest or otherwise that such holder asserts, has, or intends to preserve any right

25  of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or

26  continuing in any manner any action or other proceeding of any kind against any entity so

27  discharged, released, or exculpated (or the property or estate of any entity so discharged, released,

28

1  or exculpated) on account of or in connection with or with respect to any such discharged, released,

2  or exculpated claims, interests, or causes of action.

3      21.    <u>Executory Contracts and Unexpired Leases</u>. As of the CCV Plan Effective Date, (a)

4  any executory contracts and unexpired leases of the Debtor identified in <u>Exhibit E</u> hereto (the

5  "<u>Assigned Agreements</u>") shall be deemed assumed by the Debtor and assigned to CCV pursuant to

6  sections 365 and 1123(b)(2) of the Bankruptcy Code, and (b) all executory contracts and unexpired

7  leases other than the Assigned Agreements shall be deemed rejected.

8          a.    To the extent provided under the Bankruptcy Code or other

9          applicable law, any provision that prohibits, restricts, or conditions the assignment

10         or transfer of any Assigned Agreements or that terminates or modifies any Assigned

11         Agreements or allows the counterparty to any Assigned Agreements to terminate,

12         modify, recapture, impose any penalty, condition renewal or extension, or modify

13         any term or condition upon any such transfer and assignment shall constitute an

14         unenforceable anti-assignment provision and is void and of no force or effect.

15         b.    Any monetary defaults under an Assigned Agreement shall be

16         satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the

17         cure amount set forth in <u>Exhibit E</u> hereto from CCV Cash on the CCV Plan

18         Effective Date or on such other terms as the parties to such Assigned Agreement

19         may otherwise agree. Any counterparty to an Assigned Agreement that has failed to

20         timely object to the assumption and assignment of such Assigned Agreement is

21         deemed to have consented to such assumption and assignment.  In the event of a

22         dispute regarding (i) the amount of any cure payment, (ii) the ability of CCV to

23         provide "adequate assurance of future performance" (within the meaning of section

24         365 of the Bankruptcy Code) under the Assigned Agreement, or (iii) any other

25         matter pertaining to assumption and assignment, the applicable cure payments

26         required by section 365(b)(1) of the Bankruptcy Code shall be made following the

27         entry of a final order resolving the dispute and approving the assumption and

28         assignment.  If an objection to assumption and assignment and/or the proposed cure

17

1    amount is sustained by the Bankruptcy Court, CCV, in its sole discretion, may

2    decide that the applicable Assigned Agreement be rejected effective as of the CCV

3    Plan Effective Date in lieu of being assumed and assigned to CCV.

4            c.      Any claims arising out of the rejection of an executory contract or

5    unexpired lease pursuant to this order (the "Rejection Claims") must be filed with

6    the Court no later than thirty (30) days after the CCV Plan Effective Date (the

7    "Rejection Claims Bar Date").  Holders of Rejection Claims that do not file a claim

8    by the Rejection Claims Bar Date shall be forever barred, estopped, and enjoined

9    from asserting such Rejection Claims against the Debtor or its estate, and such

10    Rejection Claims shall be deemed discharged as of the CCV Plan Effective Date.

11    The Plan Administrator shall file any objections to Rejection Claims no later than

12    sixty (60) days after the Rejection Claims Bar Date (the "Rejection Claims

13    Objection Deadline").  The Plan Administrator may resolve Rejection Claims

14    without further order of the Court.

15        22.    Dissolution of Committee.  On the CCV Plan Effective Date, the official committee

16    of unsecured creditors appointed in this case shall be deemed dissolved to the extent any such

17    committee exists on such date.

18        23.    Modifications to the CCV Plan.  CCV may modify the CCV Plan pursuant to 11

19    U.S.C. § 1127.

20        24.    Retention of Jurisdiction.  Notwithstanding the entry of this order or the occurrence

21    of the CCV Plan Effective Date, the Court shall retain such exclusive jurisdiction as is legally

22    permissible, including jurisdiction over the matters set forth in the CCV Plan. The Court's retention

23    of jurisdiction shall not affect the finality of this order.

24        25.    Notice of Entry of Confirmation Order.  On or as soon as reasonably practicable

25    after the CCV Plan Effective Date, CCV shall cause notice of the entry of this order to be provided

26    in accordance with Rule 3020(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy

27    Rules").

28

CCV Plan Confirmation Order

1   26.   <u>References to CCV Plan Provisions</u>.  The failure to specifically include or reference

2   any particular provision of the CCV Plan in this order shall not diminish or impair the effectiveness

3   of such provision, it being the intent of the Court that the CCV Plan be confirmed in its entirety.

4   27.   <u>Exculpation of CCV</u>.  The CCV Entities shall enjoy the protections afforded by

5   section 1125(e) of the Bankruptcy Code.

6   28.   <u>Findings of Fact</u>.  The determinations, findings, judgments, decrees, and orders set

7   forth and incorporated in this order constitute the Court's findings of fact and conclusions of law

8   pursuant to Bankruptcy Rule 7052, made applicable to this proceeding to Bankruptcy Rule 9014.

9   Each finding of fact set forth or incorporated in this order, to the extent that it is or may be deemed

10  a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or

11  incorporated in this order, to the extent it is or may be deemed a finding of fact, shall also

12  constitute a finding of fact.

13  29.   <u>Conflicts Between Order and CCV Plan</u>.  To the extent of any inconsistency

14  between the provisions of the CCV Plan and this order, the terms and conditions contained in this

15  order shall govern.

16  30.   <u>Order Effective Immediately</u>.  Notwithstanding any stay that might be imposed by

17  Bankruptcy Rule 3020(e) or otherwise, this order shall be effective and enforceable immediately

18  upon entry hereof.

19

20

21

22

23

24

25

26

27

28

CCV Plan Confirmation Order

616399.08-Los Angeles Server 1A - MSW                                           Ex 1, Page 54

1

## EXHIBIT A

2

**[Form of Grant Deed]**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Attention: Van C. Durrer II, Esq.

_____
(Space Above This Line For Recorder's Use)

## GRANT DEED

A.P.N.  _____

The undersigned Grantor declares that, pursuant to Section 1146(a) of the United States Bankruptcy Code, no documentary transfer tax is due with respect to this conveyance.

       FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, GTS 900 F, LLC, a California limited liability company ("Grantor") does hereby grant, sell and convey unto [900 Figueroa Street Marketing, LLC, a Delaware limited liability company] ("Grantee"), that certain property located in the City of Los Angeles, County of Los Angeles, State of California and more particularly described on Exhibit "A" attached hereto and incorporated herein by reference (the "Property").

       TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in any way belonging unto the said Property, subject only to non-delinquent taxes and assessments and the matters set forth on Exhibit B attached hereto and incorporated herein by reference.

[*Remainder of Page Left Blank Intentionally*]

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed this ___ day of _____, 2011.


**GRANTOR**:

GTS 900 F, LLC,
a California limited liability company


By: _____
Name:
Title:

(Grant Deed Signature Page)

GENERAL ACKNOWLEDGMENT

STATE OF _____}
COUNTY OF _____} S.S.

On  _____,  _____  before  me,  _____
_____, a Notary Public in and for said County and    State,
personally      appeared,      _____
_____
_____, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

(Notary Seal)

(Grant Deed Notary Page)

## EXHIBIT A

LEGAL DESCRIPTION

# **EXHIBIT B**

CERTAIN MATTERS OF RECORD

B-1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT B

**[Form of Assignment]**

## GENERAL ASSIGNMENT

THIS GENERAL ASSIGNMENT ("Assignment") is made and entered into as of _____, 2011 (the "Effective Date"), by GTS 900 F, LLC, a California limited liability company ("Transferor"), in favor of [900 Figueroa Street Marketing, LLC, a Delaware limited liability company] ("Transferee").

### R E C I T A L S

WHEREAS, Transferor is the owner and developer of that certain mixed-use condominium project located at 900 South Figueroa Street, 901 South Flower Street, and 700 West 9th Street, Los Angeles, California, commonly known as the "Concerto" project and consisting of elements commonly referred as Phases I and II (the "Project").

WHEREAS, Transferor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which chapter 11 case is currently pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division, in re GTS 900 F, LLC, Case No. 2:09-bk-35127-VZ (the "Bankruptcy Case").

WHEREAS, in connection with the Bankruptcy Case, Transferor desires to assign, transfer and convey to Transferee all of Transferor's right, title and interest in, to and under the Property (as hereinafter defined).

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Transferor hereby agrees as follows:

### A G R E E M E N T

1. Effective as of the Effective Date, Transferor hereby assigns, transfers and conveys to Transferee all of Transferor's right, title and interest in and to all tangible and intangible personal property of any kind or character relating to the Project (collectively, the "Property"), including without limitation, the following:

a. All materials, supplies, fixtures, furnishings, equipment, machinery, tools and other tangible property of any kind, whether located on-site or off-site, that are owned by Transferor, that have been paid for by Transferor, that are to be incorporated into any portion of the Project, or to which Transferor otherwise has any ownership rights or interest;

b. All of Transferor's rights, entitlements and exemptions as Declarant under (i) the Master Declaration of Covenants, Conditions and Restrictions and Grant of Reciprocal Easements for Concerto, recorded October 1, 2009, as Document No. 2009-1489867 in the Official Records of the City and County of Los Angeles, California (the "Official Records"), and (ii) the Declaration of Covenants, Conditions and Restrictions for Concerto Lofts, recorded October 1, 2009, as Document No. 2009-1489869 in the Official Records.

c. That certain Standard Form of Agreement Between Owner and Contractor, dated as of July 2, 2007, between Transferor and Astani Construction, Inc., a California corporation ("ACI"), pursuant to which Transferor engaged ACI as the general contractor for the construction of the Project.

d.    All other contracts, subcontracts, rental agreements, purchase orders, supply contracts, utility agreements, architect's agreements, engineering agreements, consulting agreements and agreements with other design professionals;

e.    All governmental or quasi-governmental permits, agreements, licenses, certificates, authorizations, applications, approvals, entitlements, variances and waivers, and any appeal rights relating to any denial, cancellation or non-renewal of any of the foregoing;

f.    Any fees paid by Transferor to the California Department of Real Estate ("DRE") in connection with the Project, and all contents of DRE File No. 1125319 LAF00 (Concerto Tract 62367-01).

g.    All drawings, plans, specifications, change order logs, books, records, files, computer data bases in electronic format, reports, studies, maps, plats, condominium plans, surveys and street improvement specifications, and all other construction related documents and correspondence;

h.    All guaranties, warranties, payment bonds, performance bonds, and insurance policies, and all rights, claims and recoveries under any of the foregoing;

i.    The name "Concerto" and all other logos, designs, trade names, trademarks, service marks, naming rights and other intellectual property relating to the Project, the goodwill of the business appurtenant thereto, and all marketing materials and applicable telephone numbers relating to the Project;

j.    All claims and causes of action arising out of or in connection with the Construction Contract or the work to be performed by ACI pursuant thereto, including, without limitation, claims against subcontractors, suppliers and consultants; and

k.    Without limitation of the foregoing, the items listed on Schedule 1 attached hereto.

2.    This Assignment shall inure to the benefit of Transferee and its successors and assigns, and shall be binding upon Transferor and its successors and assigns.

3.    This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of California.

*[Remainder of Page Left Blank Intentionally]*

IN WITNESS WHEREOF, this Assignment was made and executed as of the date first above written.

**TRANSFEROR:**

GTS 900 F, LLC,
a California limited liability company

By: _____
    Name:
    Title:

3

## <u>SCHEDULE 1</u>

**CERTAIN PROPERTY**

1.  [List.]

617865.01-Los Angeles Server 1A - MSW

1

## <u>EXHIBIT C</u>

2

**[Insert legal description from title report (when available)]**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL 1:

LOT A, OF TRACT 4383, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 51 PAGE 10 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT; THENCE SOUTH 52 DEGREES 09 MINUTES 00 SECONDS EAST ALONG THE NORTHEASTERLY LINE OF SAID LOT A DISTANCE OF 166.80 FEET TO THE EASTERLY CORNER OF SAID LOT; THENCE WESTERLY ALONG A CURVE CONCAVE TO THE SOUTH TANGENT AT ITS BEGINNING TO SAID NORTHWESTERLY LINE AND HAVING A RADIUS OF 30.51 FEET; AN ARC DISTANCE OF 19.33 FEET TO A POINT OF A TANGENCY IN A STRAIGHT LINE THAT PASSES THROUGH THE MOST WESTERLY CORNER OF SAID LOT; THENCE NORTH 88 DEGREES 26 MINUTES 50 SECONDS WEST ALONG SAID STRAIGHT LINE, A DISTANCE OF 171.95 FEET TO A POINT IN A LINE PARALLEL WITH A DISTANT 10 FEET SOUTHEASTERLY MEASURED AT RIGHT ANGLES FROM THE NORTHWESTERLY LINE OF SAID LOT; THENCE SOUTH 37 DEGREES 46 MINUTES 20 SECONDS WEST ALONG SAID PARALLEL LINE A DISTANCE OF 7.34 FEET TO THE SOUTHWESTERLY LINE OF SAID LOT; THENCE NORTHWESTERLY ALONG SAID SOUTHWESTERLY LINE A DISTANCE OF 10 FEET TO SAID MOST WESTERLY CORNER OF LOT "A"; THENCE NORTH 37 DEGREES 46 MINUTES 20 SECONDS EAST ALONG THE NORTHWESTERLY LINE OF SAID LOT A DISTANCE OF 115.05 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

LOTS 23 AND 24 OF THE SUBDIVISION OF BLOCK 65 ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 3:

PART OF LOTS 25 AND 26 OF EUGENE MEYER'S SUBDIVISION OF BLOCK 65 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE SOUTHEASTERLY LINE OF SAID LOT 25, DISTANT 16-2/3

1386469 07032675

*Deed of Trust*
*(Concerto)*



FEET SOUTHERLY FROM NORTHEAST CORNER THEREOF; THENCE NORTHWESTERLY PARALLEL WITH THE DIVISION LINE BETWEEN SAID LOTS, 165 FEET TO THE NORTHWESTERLY LINE OF SAID LOT 25; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF LOTS 25 AND 26, 33-1/3 FEET; THENCE SOUTHEASTERLY PARALLEL WITH THE DIVISION LINE, 165 FEET TO THE SOUTHEASTERLY LINE OF SAID LOT 26; THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY LINE OF SAID LOTS 25 AND 26, 33-1/3 FEET TO THE BEGINNING.

PARCEL 4:

PART OF LOT 25 OF EUGENE MEYER'S SUBDIVISION OF BLOCK 65 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT THE SOUTHEASTERLY CORNER OF LOT 25; THENCE NORTHEASTERLY ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 33-1/3 FEET TO THE SOUTHEASTERLY CORNER OF THE LAND CONVEYED TO CAROLINE HUFF; THENCE NORTHWESTERLY PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT AND ALONG THE SOUTHWESTERLY LINE OF SAID LAND OF CAROLINE HUFF, 165 FEET TO THE NORTHWESTERLY LINE OF SAID LOT; THENCE SOUTHWESTERLY ALONG THE NORTHWESTERLY LINE OF SAID LOT, 33-1/3 FEET TO THE SOUTHWESTERLY CORNER OF SAID LOT; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID LOT, 165 FEET TO THE PLACE OF BEGINNING.

PARCEL 5:

THE NORTH 33 1/3 FEET OF LOT 26 OF EUGENE MEYERS SUBDIVISION OF BLOCK 65 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 6:

LOT "A" DEMING AND TRASK PROPERTY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGE 154 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION OF LOT A, DEMING AND TRASK PROPERTY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON MAP FILED IN BOOK 12 PAGE 154 OF MAPS, IN THE OFFICE OF THE REGISTRAR-RECORDER OF SAID COUNTY, WITHIN THE FOLLOWING DESCRIBED BOUNDARIES:

*Deed of Trust*
*(Concerto)*

BEGINNING AT THE INTERSECTION OF THE NORTHEASTERLY LINE OF SAID LOT WITH THE NORTHWESTERLY LINE OF THE SOUTHEASTERLY 5 FEET OF SAID LOT; THENCE SOUTH 37 DEGREES 46 MINUTES 24 SECONDS WEST ALONG SAID NORTHWESTERLY LINE 10.00 FEET; THENCE NORTH 7 DEGREES 13 MINUTES 22 SECONDS WEST 14.14 FEET TO A POINT IN SAID NORTHEASTERLY LINE DISTANT NORTH 52 DEGREES 14 MINUTES 03 SECONDS WEST THEREON 10.00 FEET FROM THE POINT OF BEGINNING; THENCE SOUTH 52 DEGREES 14 MINUTES 03 SECONDS EAST ALONG SAID NORTHEASTERLY LINE 10.00 FEET TO SAID POINT OF BEGINNING, AS CONVEYED TO THE LOS ANGELES COUNTY TRANSPORTATION COMMISSION, A PUBLIC AGENCY, IN A DEED RECORDED JUNE 29, 1988 AS INSTRUMENT NO. 88-1029193.

PARCEL 7:

LOT 7 OF MEYER'S RESUBDIVISION OF BLOCK 65, OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 8:

LOTS 8 AND 9 OF EUGENE MEYERS SUBDIVISION OF BLOCK 65 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 9:

LOT 10 OF EUGENE MEYER SUBDIVISION OF BLOCK 65, OF ORD'S SURVEY, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 10:

LOT 22 IN THE SUBDIVISION OF BLOCK 65 OF ORD'S SURVEY, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5 PAGE 330 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

1386469 07032675

*Deed of Trust
(Concerto)*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Exhibit D**

**[Power of Attorney]**

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Attention: Van C. Durrer II, Esq.

_____
(Space Above This Line For Recorder's Use)

## POWER OF ATTORNEY

      The undersigned, _____, as _____ of GTS 900 F, LLC, a California limited liability company ("<u>GTS</u>"), does hereby appoint [900 Figueroa Street Marketing, LLC, a Delaware limited liability company] ("<u>900 FSM</u>") as GTS's true and lawful attorney-in-fact and agent, for it and in its name, place and stead, to represent it in all capacities in connection with the transaction for the transfer and conveyance by GTS to 900 FSM (and/or its designee(s)) of all right, title and interest of GTS in and to that certain parcel of real property located at 900 South Figueroa Street, 901 South Flower Street, and 700 West 9th Street in the City of Los Angeles, County of Los Angeles, State of California, commonly known as the "Concerto" project, as more particularly described in Exhibit A hereto, together with all tangible and intangible real and personal property of any kind or character relating thereto, including, without limitation, by executing and delivering such affidavits, documents, instruments of conveyance, or other agreements as 900 FSM determines are necessary or appropriate to fully effectuate the foregoing.

      The undersigned hereby grants unto such attorney-in-fact and agent each and every act and thing requisite and necessary to be done in and about the premises as fully as to all intents and purposes as she might or could do in person, and does hereby ratify and confirm as her own acts and deeds all that such attorney-in-fact and agent shall lawfully do or cause to be done by virtue hereof.  Such attorney-in-fact and agent shall have, and may exercise, all of the powers hereby conferred.

Date: _____

                          GTS 900 F, LLC,
                          a California limited liability company

                          By: _____
                          Name:
                          Title:

## GENERAL ACKNOWLEDGMENT

STATE OF _____}
COUNTY OF _____} S.S.

On _____, _____ before me, _____
_____, a Notary Public in and for said County and State,
personally appeared, _____
_____
_____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

(Notary Seal)

## **EXHIBIT A**

LEGAL DESCRIPTION

616751.02-Los Angeles Server 1A - MSW

1

**<u>Exhibit E</u>**

2

**[Schedule of Executory Contracts and Unexpired Leases, If Any, To Be Assumed by the**

3

**Debtor and Assigned to CCV]**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Schedule of Assumed and Assigned Agreements

| Agreement | Counterparty/Counterparties | Cure Amount |
|---|---|---|
| Construction Control Agreement between GTS 900 F, LLC, Builders Control Service Co., Astani Construction, Inc., and Indemnity Company of California | Astani Construction, Inc. 9595 Wilshire Blvd., Ste. 1010 Beverly Hills, CA 90212<br><br>Builders Control Service Co. 7447 N. Figueroa St., Ste. 305 Los Angeles, CA 90041<br><br>Indemnity Company of California 17780 Fitch, Ste. 200 Irvine, CA 92614 | $0.00 |