Van C. Durrer II (SBN 226693)
Ramon M. Naguiat (SBN 209271)
Emily C. Ma (SBN 246014)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600
van.durrer@skadden.com
ramon.naguiat@skadden.com
emily.ma@skadden.com

Attorneys for Corus Construction Venture, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.:  2:09-bk-35127-VZ |
| GTS 900 F, LLC, a California limited liability company, aka Concerto, | Chapter 11 |
| Debtor. | **Corus Construction Venture, LLC's Conditional Motion to (I) Approve the Settlement, (II) Authorize Modifications to Corus Construction Venture LLC's Plan of Reorganization, and (III) Confirm the Modified Plan** |
| Tax ID # 20-2396211 | Date:           February 17, 2011<br>Time:           9:30 a.m.<br>Judge:          Hon. Vincent P. Zurzolo<br>Location:       Courtroom 1368<br>                    255 E. Temple Street<br>                    Los Angeles, CA  90012 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................II

PRELIMINARY STATEMENT ........................................................................................1

JURISDICTION AND VENUE .........................................................................................2

BACKGROUND ..................................................................................................................2

RELIEF REQUESTED........................................................................................................5

BASIS FOR RELIEF ..........................................................................................................5

ARGUMENT .......................................................................................................................8

    I.     The Settlement is Fair and Equitable and Meets the Standard for Approval..........8

    II.    The Modifications Reflected in the Modified Plan are Appropriate ....................10

    III.   The Court Should Confirm the Modified Plan .......................................................12

IMMEDIATE EFFECTIVENESS......................................................................................16

CONCLUSION...................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arden v. Motel Partners (In re Arden),
   176 F.3d 1226, 1228 (9th Cir. 1999) ...................................................................8

Computer Task Grp., Inc. v. Brotby (In re Brotby),
   303 B.R. 177, 192-93 (B.A.P. 9th Cir. 2003) ......................................................14

In re G-I Holdings Inc.,
   420 B.R. 216, 256 (Bankr. D.N.J. 2009) ............................................................11

In re Gulf Coast Holdings, Inc.,
   2007 WL 1340802 (Bankr. N.D. Tex. Apr. 30, 2007).........................................9

In re MCorp. Fin., Inc.,
   137 B.R. 237, 238 (Bankr. S.D. Tex. 1992). ......................................................10

In re New Power Co.,
   438 F.3d 1113 (11th Cir. 2006) .........................................................................10

In re Simplot,
   2007 WL 2479664 (Bankr. D. Idaho Aug. 28, 2007).........................................10

In re Winn-Dixie Stores, Inc.,
   377 B.R. 322, 335 (M.D. Fla. 2007) ...................................................................9

Martin v. Kane (In re A & C Props.),
   784 F.2d 1377, 1381 (9th Cir. 1986) ...................................................................8

**Statutes**

11 U.S.C. § 1123(a)(5)..............................................................................................12

11 U.S.C. § 1123(b)(3)(A).........................................................................................7

11 U.S.C. § 1124(1) .................................................................................................11

11 U.S.C. § 1127(a) ...................................................................................................9

11 U.S.C. § 1129(a)(2)..............................................................................................14

11 U.S.C. § 1129(a)(3)..............................................................................................14

11 U.S.C. § 1129(a)(7)..............................................................................................14

28 U.S.C. § 157(b).....................................................................................................2

28 U.S.C. §§ 1408......................................................................................................2

28 U.S.C. §§ 157.......................................................................................................2

1       Corus Construction Venture, LLC ("CCV"), the successor-in-interest to Corus Bank, N.A.

2 ("Corus Bank") and the largest secured creditor of GTS 900 F, LLC (the "Debtor"), hereby

3 conditionally moves this Court (the "Motion"), pursuant to sections 105, 1123, 1127, and 1129 of

4 title 11 of the United States Code (the "Bankruptcy Code") and Rules 3018, 3019 and 9019 of the

5 Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the extent the Settlement (as

6 defined below) is consummated, to enter an order (a) approving the Settlement, (b) authorizing the

7 Modifications (as defined below) to CCV's plan of reorganization (the "CCV Plan"),

8 (c) confirming the Modified Plan (as defined below), and (d) granting related relief.  In support of

9 the Motion, CCV submits the supporting declaration of Seth Hewitt of ST Residential, LLC (the

10 "Hewitt Declaration").  In further support of the Motion, CCV respectfully represents as follows:

11 **PRELIMINARY STATEMENT**

12       1.      CCV and the Debtor, Astani Construction, Inc. ("Astani Construction"), Sonny

13 Astani, Marco Astani, and the Equity Holders,[1] in all capacities, on behalf of themselves, their

14 respective affiliates, and any entities controlled by them (collectively, such parties, their affiliates,

15 and any entities controlled by them, excluding the Debtor and Astani Construction, the "Astani

16 Parties") have engaged in settlement discussions where, if the proposed settlement (the

17 "Settlement") is consummated, the CCV Plan will be modified consistent with such Settlement.

18       2.      At this time, the Settlement is not finalized.  Nonetheless, to provide disclosure and

19 to allow for the Modified Plan to be confirmed on February 17, 2011 if the Settlement is timely

20 consummated, by this Motion, CCV is proposing modifications to the CCV Plan (the

21 "Modifications"), which Modifications implement the terms of the Settlement and are conditional

22 upon the consummation thereof.

23

24

25 _____

26     [1] As used herein, the "Equity Holders" means, collectively, the following holders of the
equity (membership) interests in the Debtor: (a) Sonny Astani and Jo Cho, as trustees of the

27 Astani/Cho Living Trust (30%); (b) Marco Astani, as trustee of the Marco Astani Living Trust
(5%); (c) FG 98 Investment Co., LP. (15%); and (d) Concerto Partners, LLC, a California limited

28 liability company (50%).

Conditional Motion to Modify Corus Construction Venture LLC's Plan of Reorganization
617723.04-Los Angeles Server 1A - MSW

## JURISDICTION AND VENUE

3.        The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.        The statutory predicates for the relief requested herein are sections 105, 1123, 1127, and 1129 of the Bankruptcy Code, and Bankruptcy Rules 3018, 3019 and 9019.

## BACKGROUND

5.        On September 17, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On October 16, 2009, CCV, an entity unaffiliated with Corus Bank, N.A. ("Corus Bank"), purchased certain loan assets of Corus Bank, including Corus Bank's rights under that certain Construction Loan Agreement, dated July 27, 2007, between the Debtor and Corus Bank (the "Loan Agreement"), from the Federal Deposit Insurance Corporation (the "FDIC") in its capacity as receiver for Corus Bank.

6.        On October 29, 2009, CCV filed a proof of claim in the amount of $162,662,216.26.  Thereafter, on January 29, 2010, CCV filed an amended proof of claim.  The amendment did not change the amount of the claim asserted by CCV.  The proof of claim is based on the claim of Corus Bank under the Loan Agreement and the acquisition of that claim by CCV from the FDIC.

7.        On December 29, 2009, in response to CCV's proof of claim, the Debtor filed a Complaint and Objection to Claim against CCV, thereby commencing the action captioned GTS 900 F, LLC v. Corus Construction Venture, LLC, Adv. No. 2:09-ap-03557-VZ (the "Debtor Adversary Proceeding").  An amended complaint was filed on February 3, 2010.  CCV has filed an answer to such amended complaint.

8.        Also on December 29, 2009, Astani Construction, Inc. ("Astani Construction") filed the action captioned Astani Construction, Inc. v. Corus Construction Venture, LLC, Adv. No. 2:09-ap-01361-VZ (the "Astani Construction Adversary Proceeding").  An amended complaint was filed on January 27, 2010 (as amended, the "Astani Construction Complaint").  CCV has filed an answer to such amended complaint.

2

9.     On September 4, 2009, prior to the commencement of this chapter 11 case and prior to Corus Bank's seizure by the Federal government, the Debtor filed a lawsuit against Corus Bank for (a) breach of contract, (b) breach of the covenant of good faith and fair dealing, (c) declaratory relief, and (d) injunctive relief.  The action was originally filed in the Superior Court of the State of California, County of Los Angeles, as GTS 900 F, LLC v. Corus Bank, N.A., Case No. BC421309 (the "Prepetition Action").  On September 11, 2009, the FDIC was appointed as receiver of Corus Bank by Order of the Office of the Comptroller of the Currency.  As a result, the FDIC succeeded to all of the rights, titles, powers, and privileges of Corus Bank under the Loan Agreement. Following the Petition Date, the Debtor removed the Prepetition Action to Bankruptcy Court (the "Removed Action").  The Removed Action is pending as GTS 900 F, LLC v. Corus Bank, N.A., Adv. No. 2:09-ap-02188-VZ.

10.     In the Removed Action, the Court entered an order approving a stipulation between the Debtor and the FDIC (as receiver for Corus Bank) entitled Order Granting Stipulation (1) Substituting the Federal Deposit Insurance Corporation, as Receiver for Corus Bank, N.A.; (2) Extending Deadline to Answer or otherwise Respond to Complaint; and (3) Staying Adversary Proceeding [Docket No. 20 in the Removed Action], which stayed the Removed Action to allow the Debtor to pursue a claim in the FDIC's receivership proceedings for Corus Bank.

11.     On May 17, 2010, in the proceeding before the United States District Court for the Central District of California (the "District Court") titled GTS 900 F, LLC v. FDIC et al., Civ. No. 2:10-cv-02763-SJO (the "FDIC District Court Proceeding"), the District Court entered an order withdrawing the reference from the Bankruptcy Court [Docket no. 12 in the FDIC District Court Proceeding] of the Removed Action.  On June 8, 2010, the FDIC (as receiver for Corus Bank) issued its notice of disallowance of the claim that the Debtor asserted in Corus Bank's receivership proceeding.  The FDIC subsequently filed an answer to the Debtor's complaint on July 8, 2010 [Docket No. 16 in the District Court Proceeding].

12.     On July 19, 2010, CCV filed its Motion for Relief from the Automatic Stay Under 11 U.S.C. Section 362 [Docket No. 560] (the "Relief from Stay Motion").  In or about December 2010, CCV engaged in a Court-ordered mediation (the "Mediation") with respect to the Relief

3

1  from Stay Motion in an attempt to reach a global settlement of all of the issues.  No settlement was

2  reached.  A final hearing on the Relief from Stay Motion is scheduled for March 7, 2011.

3        13.    On September 10, 2010, the Debtor filed a Motion to "Withdraw Reference of GTS

4  900 F, LLC's Complaint In Adversary Proceeding 2:09-ap-03557-VZ; (2) Determine that GTS Is

5  Entitled to a Jury Trial in Its Damages Claims Against CCV; And (3) Consolidate Adversary

6  Proceeding 2:09-ap-03557-VZ  with Case No. CV 10-02763-SJO For Discovery and Trial

7  Purposes" in a District Court action titled GTS 900 F, LLC v. Corus Construction Venture, LLC,

8  Civ. No. 2:10-cv-06693-SJO (the "CCV District Court Proceeding").  The Court declined to

9  withdraw the reference of the Debtor Adversary Proceeding.

10        14.    On July 20, 2010, CCV filed a complaint against Sonny H. Astani, individually;

11  Marco K. Astani, individually; Sonny H. Astani and Jo Cho, as trustees of The Astani/Cho Living

12  Trust Dated as of April 29, 1999; and Marco Astani, as trustee of The Marco Astani Family Trust

13  Dated as of March 15, 2006 (collectively, the "Guarantor Defendants"), entitled Corus

14  Construction Venture, LLC v. Sonny Astani, et al., Case Number 2010L008316 in the Circuit

15  Court of Cook County, Illinois (the "State Court Guaranty Proceeding").  On August 19, 2010, the

16  Guarantor Defendants filed a notice of removal of the State Court Proceeding to the United States

17  Bankruptcy Court for the Northern District of Illinois, under Case No. 10-01668 (the "Illinois

18  Guaranty Proceeding").

19        15.    On December 1, 2010, the Debtor and GTS filed the First Amended Unitary

20  Disclosure Statement and Competing Plans of Reorganization Proposed by GTS 900 F, LLC and

21  Corus Construction Venture, LLC [Docket No. 917] (the "Unitary Disclosure Statement").

22        16.    On December 6, 2010, the Court entered its Order (1) Approving Unitary Disclosure

23  Statement, (2) Fixing Various Deadlines Relating to Plan Confirmation, and (3) Approving Forms

24  of Ballot and Notice [Docket No. 932] (the "Disclosure Statement Order").  Under the Disclosure

25  Statement Order, the Court set a hearing on February 17, 2011, at 9:30 a.m. (the "Confirmation

26  Hearing") to consider confirmation of the competing plans of reorganization proposed by the

27  Debtor and CCV (the Debtor's plan, the "Debtor Plan").  On January 10, 2010, the Debtor filed

28  preliminary objections [Docket No. 992] to the CCV Plan, Astani Construction filed preliminary

1    objections [Docket No. 999] to the CCV Plan (together, the "Objections"), and CCV filed

2    preliminary objections [Docket No. 995] to the Debtor Plan.

3        17.    On December 16, 2010, the Debtor filed its Motion to Approve Updated Budget to

4    Complete Construction, Eliminate Adequate Protection Payments, and Permit Payment of

5    Expenses Consistent with Prior Approved Budget [Docket No. 947] (the "Budget Motion"). On

6    December 23, 2010, CCV filed its objection to the Budget Motion and related pleadings.

7        18.    On December 23, 2010, CCV filed the Motion of Corus Construction Venture, LLC

8    for Appointment of Chapter 11 Trustee [Docket No. 961] (the "Trustee Motion"). On January 4,

9    2011, the Debtor filed its objection to the Trustee Motion and related pleadings. On January 11,

10    2011, CCV filed its reply and related pleadings in support of the Trustee Motion.

11        19.    A hearing to consider both the Budget Motion and the Trustee Motion was

12    scheduled for January 18, 2011, which hearing was continued until February 3, 2011 to allow the

13    parties to discuss a global settlement of the issues.

14                     **RELIEF REQUESTED**

15        20.    To the extent the Settlement is consummated on or before February 7, 2011, CCV

16    seeks entry of an order (a) approving the Settlement pursuant to section 1123(b)(3) of the

17    Bankruptcy Code, (b) authorizing modifications (the "Modifications") to the CCV Plan as reflected

18    in the Conditional Modified Plan of Reorganization Proposed by Corus Construction Venture, LLC,

19    substantially in the form attached hereto as Exhibit 1 (the "Modified Plan")[2] pursuant to section

20    1127(a) of the Bankruptcy Code, (c) confirming the Modified Plan, and (d) granting related relief.

21    To the extent the Settlement is not consummated on or before February 7, 2011, this Motion is

22    withdrawn.

23                     **BASIS FOR RELIEF**

24        21.    The Modifications address, effect, and/or reflect the potential Settlement. The

25    current terms of the Settlement are summarized as follows:

26

27       _____

28        [2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Modified Plan.

1)  On the first business day after the date on which the Court's order confirming this Modified Plan is no longer subject to any stay (the "Effective Date"), CCV will pay $9,400,000 to Astani Enterprises, Inc. ("Astani Enterprises").

2)  The Modified Plan calls for the settlement, discharge, and release of (a) all Estate Actions, including, but not limited to, the Debtor Adversary Proceeding and the Astani Construction Adversary Proceeding, but excluding the FDIC District Court Proceeding; (b) any and all claims that the Astani Parties, the Debtor, and Astani Construction may have against CCV and/or Corus Bank; (c) any and all claims that CCV and/or Corus Bank may have against the Astani Parties and Astani Construction; and (d) any and all claims and interests that any of the Astani Parties and Astani Construction may have against the Debtor's estate, including without limitation, the claims and interests classified in Classes 5, 6, and 7 of the CCV Plan and any and all claims that the Debtor's estate may have against the Astani Parties and Astani Construction.

3)  On the Effective Date, the FDIC District Court Proceeding and all rights, claims, and interests asserted therein will be transferred to Astani Enterprises and/or its designee(s).

4)  On the Effective Date, the Guarantor Defendants' liability under any guaranties executed in connection with the Loan Agreement will be released, including, without limitation, release of the State Court Guaranty Proceeding and the Illinois Guaranty Proceeding.

5)  The plan-administrator role is eliminated.  In addition, there will be no reserve for administrative claims.  Instead, allowed administrative claims will be paid from CCV Cash and/or Astani Cash consistent with the Settlement.

6)  Astani Enterprises shall be responsible for payment of all fees and expenses of the Debtor's professionals, including, without limitation, Moran & Company ("Moran")[3] (the "Estate Professional Claims"), incurred through and including January 25, 2011.

7)  CCV will pay all allowed administrative expense claims excluding the Estate Professional Claims incurred through and including January 25, 2011, which claims will be paid by Astani Enterprises.  CCV will, however, pay any allowed Estate Professional Claims, in an amount not to exceed $125,000 in the aggregate, that are incurred on and after January 26, 2011, through the Effective Date.

8)  The Debtor and CCV shall reasonably cooperate with each other and use their best efforts to cause the extension through at least April 30, 2011 of the existing OCIP insurance policy which currently covers the Concerto project through March 31, 2011 and, subject to the occurrence of the Effective Date, the Debtor and the Astani Parties shall reasonably cooperate with CCV

---

[3]    For the avoidance of doubt, Astani Enterprises shall be responsible for payment of any fees and expenses that may be owed to Moran, regardless of when such fees and expenses were incurred, and CCV shall not be responsible for paying any amounts to Moran under this Modified Plan or otherwise.

6

Conditional Motion to Modify Corus Construction Venture LLC's Plan of Reorganization
617723.04-Los Angeles Server 1A - MSW

regarding the transition of the Concerto project and the Project Materials to the new post-Effective Date owner.  In the event that the OCIP insurance policy is extended prior to the Effective Date, the Debtor may use cash collateral to pay the associated premium.  In the event that the OCIP insurance policy is extended on or after the Effective Date, CCV shall be responsible for the associated premium.

9)    The Debtor, Astani Construction, and the Astani Parties will reasonably cooperate with CCV regarding the transition of the Concerto project and the Project Materials to the post-Effective Date owner of the Concerto project (the "Owner").  Subject to the terms set forth in an indemnification agreement (the "Indemnity"), substantially in the form attached to the Modified Plan as Exhibit B, the Owner will indemnify Astani Enterprises, Astani Construction, Sonny H. Astani, Jo Cho, The Astani/Cho Living Trust Dated as of April 29, 1999, Marco K. Astani, The Marco Astani Family Trust Dated as of March 16, 2006, Concerto Partners, LLC, HPG Management, Inc., and FG 98 Investment Co., LP (each, individually, an "Indemnified Party," and collectively the "Indemnified Parties") and hold the Indemnified Parties harmless from and against any and all claims, losses and liabilities pertaining to the Concerto project solely to the extent arising from and after the Effective Date as a result of any act or omission of the Owner from and after said date, but expressly excluding any claims pertaining to the Concerto project to the extent arisin from or as a result of any act or omission of any Indemnified Party, or any officer, director, partner, manager, member, shareholder, trustee, affiliate, subsidiary, parent, agent, or employee of the Debtor or any Indemnified Party.

10)    The Debtor, Astani Construction, and the Astani Parties shall execute an agreement and acknowledgment, substantially in the form attached to the Modified Plan as Exhibit C (the "Acknowledgment"), in which they each agree, acknowledge, and represent as follows:  (a) not later than the Effective Date, HPG Management, Inc. (the "Loft Manager") will deliver a notice to Concerto Lofts Condominium Association (the "Loft HOA") terminating the Professional Management Agreement dated December 1, 2009 (the "Loft Management Agreement") between the Loft Manager and the Loft HOA, with such termination to be effective not later than 30 days following delivery of such notice; (b) other than the Loft Management Agreement, any and all rights and agreements, including, without limitation, management rights and agreements, relating to any homeowners' association Project (collectively, all such rights and agreements, the "HOA Rights") are held and/or are in the name of the Debtor or Astani Construction and no HOA Rights are held and/or are in the name of any person or entity that is not a signatory to the Acknowledgment; (c) any and all HOA Rights, other than the Loft Management Agreement, shall be transferred to CCV's designee under the General Assignment; (d) there are no contractual arrangements relating to or affecting the Project to which the Debtor or any affiliate of the Debtor is a party that will continue in effect after the Effective Date other than such rights as will be transferred and assigned to CCV or CCV's designee as provided under the Modified Plan; (e) neither the Debtor nor any affiliate of the Debtor will retain any interest in the Project after the Effective Date; (f) there shall be a letter from the Debtor and the Loft Manager to the Loft HOA introducing CCV or CCV's designee as the new owner of the Project and recommending CCV or CCV's designee as a replacement property manager for the Loft portion of the Project; (g) except as expressly identified in the Acknowledgment, any and all construction materials relating to the Project are located at 900 South Figueroa Street, 901

7

South Flower Street, and 700 West 9th Street in the City of Los Angeles, County of Los Angeles, State of California; and (h) any and all construction materials, wherever located, relating to the Project shall be transferred to CCV's designee under the General Assignment.

11)    The Debtor and CCV will reasonably cooperate with each other on the issuance of a public statement following the Effective Date regarding the Settlement, which must be reasonably acceptable to CCV and the Astani Parties.  For a period of two years following entry of an order confirming the Modified Plan, none of the Astani Parties, the Debtor, Astani Construction, Astani Enterprises or CCV shall be authorized to issue any public statements regarding the Settlement or the subject matter of the disputes resolved by the Settlement, except as otherwise agreed by the foregoing parties in advance in writing.  In addition, the foregoing parties shall be prohibited from issuing any materials or statements containing disparaging statements regarding the Concerto project, any parties to the Settlement, or any affiliates (excluding the FDIC and excluding any individuals who were employees, agents, and/or representatives of Corus Bank) of such parties.  Nothing in the Modified Plan, however, precludes the filing or submission of ordinary and necessary applications with any governmental official or regulator.

12)    None of the Astani Parties, Astani Construction, Astani Enterprises, and the transferee of the FDIC District Court Proceeding shall serve any discovery on CCV or CCV's affiliates, officers, directors, employees, agents, or equity holders (excluding the FDIC) in connection with the FDIC District Court Proceeding.

22.    Among other things, the Settlement and the Modified Plan are premised on (a) the Debtor's withdrawal of the Budget Motion, (b) withdrawal with prejudice of all Objections to the CCV Plan, (c) that votes of holders of claims and/or interests in Classes 6 and/or 7 under the CCV Plan are revised, or deemed revised, to be in acceptance of the CCV Plan, as modified by the Modified Plan, and (d) that each of the parties holding claims and/or interests in Classes 5, 6, and 7 under the CCV Plan expressly consents to confirmation of the Modified Plan.

## ARGUMENT

## I.    The Settlement is Fair and Equitable and Meets the Standard for Approval.

23.    At the heart of the Modified Plan are the terms of the Settlement.  Accordingly, as threshold matter, the Court should consider whether the Settlement should be approved.  Under section 1123(b)(3)(A) of the Bankruptcy Code, a plan shall provide for "the settlement or adjustment of any claim or interest belonging to the debtor or the estate."  11 U.S.C. § 1123(b)(3)(A).  The Ninth Circuit has provided that,

[c]onfirmation of the plan is subject to the court's determination that the compromise is fair and equitable to the estate after considering

8

1    the following factors: '(a) [t]he probability of success in the litigation;
     (b) the difficulties, if any, to be encountered in the matter of
2    collection; (c) the complexity of the litigation involved, and the
     expense, inconvenience and delay necessarily attending it; [and]
3    (d) the paramount interest of the creditors and a proper deference to
     their reasonable views . . . .'

4

5    Arden v. Motel Partners (In re Arden), 176 F.3d 1226, 1228 (9th Cir. 1999) (quoting Martin v.

6    Kane (In re A & C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986)).

7        24.    Such factors are clearly met in this case.  As noted above, the Settlement would

8    effectively settle all disputes surrounding the Debtor's chapter 11 case, including multiple Estate

9    Actions, any claims that the Astani Parties, the Debtor, and Astani Construction may have against

10   CCV and/or Corus Bank, any claims and interests that the Astani Parties and Astani Construction

11   may have against the Debtor's estate, and the proceedings with respect to the Guaranties.

12   Moreover, the Settlement would result in a consensual plan of reorganization, as reflected in the

13   Modified Plan attached hereto.

14       25.    CCV believes that it would ultimately prevail in all such litigation and that the

15   original CCV Plan is confirmable.  Absent the Settlement, however, the Debtor, Astani

16   Construction, the Astani Parties, and CCV would unnecessarily expend time, money, and human

17   resources to litigate such matters, and recovery inevitably would be delayed.  By entering into the

18   Settlement, the parties can avoid such costs as well as the uncertainty of litigation.

19       26.    The terms and conditions of the Settlement were negotiated over several weeks

20   following the Mediation and the filings of the Budget Motion and the Trustee Motion.  Hewitt Decl.

21   ¶ 3.  Such negotiations were conducted at arm's length and in good faith by the parties and their

22   respective counsel.  Id. ¶ 3.  Moreover, the Settlement will result in the full support of all

23   constituencies of the Modified Plan.  As set forth herein, there is more than sufficient business

24   justification for the parties to agree to the terms and conditions of the Settlement.  The Settlement

25   is fair, reasonable and in the best interest of the Debtor's estate and all parties thereto.  Accordingly,

26   CCV respectfully requests that the Court approve the Settlement as implemented in the Modified

27   Plan.

28

**II.**   **The Modifications Reflected in the Modified Plan are Appropriate**

27.   Section 1127(a) of the Bankruptcy Code provides:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

11 U.S.C. § 1127(a).  Section 1127(a) "is designed to implement the negotiation process, which is the essence of the formulation of any plan of reorganization."  In re Winn-Dixie Stores, Inc., 377 B.R. 322, 335 (M.D. Fla. 2007).  In fact, "[a]ny holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection."  11 U.S.C. § 1127(d).  Likewise, Bankruptcy Rule 3019(a) provides that a plan proponent may modify the plan even after the plan has been accepted, but before its confirmation.  Fed. R. Bankr. P. 3019(a).  Further,

> [i]f the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Id.

28.   The proposed Modifications do not "adversely change the treatment of any creditor or the interest of any equity security holder."  Id.  Specifically, the Modifications do not change the treatment of any claims or interests other than those held by the parties to the Settlement, whose claims and interests are those in Classes 1, 4, 5, 6, and 7.  Treatment of Classes 2 and 3 remain unchanged by the Modifications.  The Modifications merely address, effect, or reflect matters contemplated by the Settlement.  Because such Modifications are the product of extensive negotiations among the Debtor, Astani Construction, the Astani Parties, and CCV, and do not change any claims or interests other than those held by the parties to the Settlement, they should be considered non-material and non-adverse.  See In re Gulf Coast Holdings, Inc., 2007 WL 1340802, at *7 (Bankr. N.D. Tex. Apr. 30, 2007) (confirming plan containing "technical and immaterial"

modifications that did not adversely change treatment of any claims or interests, were disclosed

and discussed with unsecured creditors' committee before filing, and complied with provisions of

Bankruptcy Code).  Moreover, by this Motion, CCV is providing even more protections than

required by the Bankruptcy Code or the Bankruptcy Rules by providing notice of the proposed

Modifications and an opportunity to object to their designation as non-material and non-adverse.

See In re Simplot, 2007 WL 2479664, at *14 n.55 (Bankr. D. Idaho Aug. 28, 2007) (noting in order

confirming plan containing modifications that were documented in stipulations on the record that

notice and opportunity to object were given).

      29.    Because the Modifications do not alter the treatment of any claim or interest other

than those held by the parties to the Settlement, the Court should deem the Modified Plan accepted

by those impaired holders of Class 1 and 4 who previously voted to accept the CCV Plan pursuant

to section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019(a).  Pursuant to the

Settlement, holders of claims and interests in Classes 5, 6, and 7 will consent to confirmation of the

Modified Plan.  Additionally, Classes 6 and 7 will revise their votes to reflect acceptance of the

Modified Plan pursuant to the terms of the Settlement.  Bankruptcy Rule 3018(a) provides that,

"[f]or cause shown, the court after notice and hearing may permit a creditor or equity security

holder to change or withdraw an acceptance or rejection."  Fed. R. Bankr. P. 3018(a).  The test for

determining whether cause has been shown is not a stringent test.  The Court must ensure only that

the change is not improperly motivated.  See In re MCorp. Fin., Inc., 137 B.R. 237, 238 (Bankr.

S.D. Tex. 1992).  Here, change in the votes is for no improper purpose; rather, the change is merely

to effectuate the terms of a global settlement that allows the parties to come to the Court with a

consensual plan of reorganization.

      30.    If the modifications are material and adversely affect the way creditors are treated,

section 1127 requires a new disclosure statement and balloting of the amended plan.  In re New

Power Co., 438 F.3d 1113 (11th Cir. 2006).  The best test to determine whether the modifications

are material and adverse is "whether the modification so affects any creditor or interest holder who

accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its

acceptance." In re G-I Holdings Inc., 420 B.R. 216, 256 (Bankr. D.N.J. 2009) (quoting 9 Collier

1    on Bankruptcy ¶ 3019.01 (15th ed. rev. 2009)).  As noted above, the Modifications only affect the

2    treatment of Classes 1, 4, 5, 6, and 7.  The holder of claims in Classes 1 and 4 are the plan

3    proponents and accordingly would not reconsider its acceptance of the Modified Plan.  Consistent

4    with the negotiated terms of the Settlement, CCV believes that holders of claims and interests in

5    Classes 5, 6, and 7 will consent to confirmation of the Modified Plan.  Moreover, CCV believes

6    that holders of claims and interests in Classes 6 and 7 intend to revise their ballots to reflect

7    acceptance of the Modified Plan.  In other words, no creditors or interest holders would reconsider

8    acceptance of the Modified Plan.  Accordingly, it is not necessary to provide a new disclosure

9    statement or re-solicit the Modified Plan.

10   **III.    The Court Should Confirm the Modified Plan**

11           31.    As set forth in the Motion to Confirm Corus Construction Venture, LLC's Plan of

12   Reorganization (the "Confirmation Motion") [Docket No. 1044],[4] notwithstanding the Preliminary

13   Objections, the CCV Plan is confirmable pursuant to section 1129 of the Bankruptcy Code.  The

14   Modified Plan, which merely implements the terms of the Settlement, is likewise confirmable.

15           32.    The Modified Plan satisfies the requirements of section 1129(a)(1) of the

16   Bankruptcy Code, as it complies with sections 1122 and 1123 of the Bankruptcy Code.  Article IX

17   of the Modified Plan provides for the classification of claims and interests in seven individual

18   classes, each based upon the legal nature and/or priority of such claims and interests.  See Modified

19   Plan Art. IX.  Accordingly, the Modified Plan complies with section 1122 of the Bankruptcy Code.

20           33.    Likewise, the Modified Plan complies with the mandatory requirements for every

21   chapter 11 plan under section 1123(a) of the Bankruptcy Code.  In satisfaction of section 1123(a)(2)

22   of the Bankruptcy Code, Article IX of the Modified Plan specifies that Class 2 Mechanic's Lien

23   Claims, Class 3 General Unsecured Claims, and Class 5 Astani Secured Claims are unimpaired.

24   See id.; see also 11 U.S.C. § 1123(a)(2).  These classes are unimpaired because the Modified Plan

25   "leaves unaltered the legal, equitable, and contractual rights to which such claim[s] or interest

26   entitle[] the holder of such claim[s] . . . ."  11 U.S.C. § 1124(1).  Although the holders of Class 5

27

28           [4]         The relief requested in the Confirmation Motion is incorporated herein by reference.

1   Astani Secured Claims previously objected to their specification as unimpaired under the CCV

2   Plan, CCV believes that, as a part of the Settlement, such holders will consent to their treatment

3   under the Modified Plan pursuant to the terms thereof; moreover, such claims will be settled,

4   discharged, and released pursuant to the Settlement.  The Modified Plan also adequately specifies

5   the treatment of impaired classes (Class 1 CCV Secured Claim, Class 4 CCV Deficiency Claim,

6   Class 6 Astani Unsecured Claims, and Class 7 Equity Interests) pursuant to section 1123(a)(3) of

7   the Bankruptcy Code.  See Modified Plan Art. IX; 11 U.SC. § 1123(a)(3).  Although the Debtor

8   objected to the identification of Classes 1 and 4 as impaired, CCV belives that the Debtor will

9   consent to the terms of the Modified Plan if the Settlement is consummated.

10         34.    In compliance with section 1123(a)(5) of the Bankruptcy Code, the Modified Plan

11  provides adequate means of implementation.  See 11 U.S.C. § 1123(a)(5).  Article XV of the

12  Modified Plan provides for the future of the Debtor.  As noted above, the Modified Plan merely

13  implements the terms of the Settlement; nonetheless, attached to the Modified Plan are forms of

14  those certain documents, including an Indemnity, Grant Deed, General Assignment and

15  Acknowledgement, effectuating the transactions contemplated under the Settlement.  See Modified

16  Plan Exhibits B - E.  As an additional measure, CCV respectfully requests that the Court appoint

17  CCV, pursuant to a Power of Attorney substantially in the form attached to the Modified Plan as

18  Exhibit G, as the Debtor's and as Astani Construction's true and lawful attorney-in-fact and agent,

19  for each of them and in their respective names, places, and stead, to represent each of them in all

20  capacities in connection with (a) executing and delivering to (or for the benefit of) CCV such

21  affidavits, documents, instruments of conveyance, or other agreements as CCV determines are

22  necessary or appropriate to fully transfer and convey all of the Debtor's right, title, and interest in

23  and to the CCV Project Assets to CCV, and (b) otherwise effecting the terms of the CCV Plan and

24  any order confirming the Modified Plan (the "Confirmation Order").  Finally, CCV requests that,

25  pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of

26  transfer under, or in connection with, the Modified Plan not be taxed under any law imposing a

27  stamp tax or similar tax.  Without limiting the foregoing, CCV also respectfully requests that any

28  transfers from the Debtor to any person pursuant to the Modified Plan not be subject to any

1  document recording tax, stamp tax, conveyance fee, intangibles tax, sales or use tax, mortgage tax,

2  real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee,

3  or other similar tax or governmental assessment.  To implement the foregoing, CCV requests that

4  all filing or recording officers (or any other person with authority over any of the foregoing),

5  wherever located and by whomever appointed, be directed to comply with the requirements of

6  section 1146(a) of the Bankruptcy Code, forego the collection of any such tax or governmental

7  assessment, and accept for filing and recordation any of the foregoing instruments or other

8  documents without the payment of any such tax or governmental assessment.

9       35.     The Modified Plan also sets forth certain provisions that are permissible under

10  section 1123(b) of the Bankruptcy Code.  As noted above, the Modified Plan also provides for the

11  settlement or retention of claims or interests pursuant to section 1123(b)(3) of the Bankruptcy

12  Code, namely by implementing the terms of the Settlement.  Article XVI of the Modified Plan

13  provides that, as of the Effective Date, all remaining executory contracts and unexpired leases of

14  the Debtor that CCV has not designated for assumption by the Chapter 11 Trustee and assignment

15  to CCV shall be deemed rejected.  See Modified Plan Art. XVI.  Nevertheless, CCV hereby

16  requests that the Court approve the assumption by the Debtor and the assignment to CCV,

17  pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, those executory contracts and

18  unexpired leases listed on the schedule attached hereto as Exhibit 2 (the "Assigned Agreements"),

19  subject to the following terms:

20      (a)    To the extent provided under the Bankruptcy Code or other applicable law, the
Assigned Agreements will remain in full force and effect for the benefit of the
transferee or assignee in accordance with its terms, notwithstanding any provision in

21  such executory contract or unexpired lease (including those of the type described in
section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions

22  such transfer or assignment.  To the extent provided under the Bankruptcy Code or
other applicable law, any provision that prohibits, restricts, or conditions the

23  assignment or transfer of any Assigned Agreements or that terminates or modifies
any Assigned Agreements or allows the counterparty to any Assigned Agreements

24  to terminate, modify, recapture, impose any penalty, condition renewal or extension,
or modify any term or condition upon any such transfer and assignment will

25  constitute an unenforceable anti-assignment provision and is void and of no force or
effect.

26      (b)    Any monetary defaults under an Assigned Agreement will be satisfied, under
section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount set forth

14

in Exhibit 2 hereto from CCV Cash on the Effective Date or on such other terms as the parties to such Assigned Agreement may otherwise agree. Any counterparty to an Assigned Agreement that has failed to timely object to the assumption and assignment of such Assigned Agreement will be deemed to have consented to such assumption and assignment. If there is a dispute regarding (a) the amount of any cure payment, (b) the ability of CCV to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Assigned Agreement, or (c) any other matter pertaining to assumption or assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a final order by the Court resolving the dispute and approving the assumption and assignment. If an objection to assumption and assignment and/or the proposed cure amount is sustained by the Bankruptcy Court, CCV, in its sole discretion, may decide that the applicable Assigned Agreement be rejected effective as of the Effective Date in lieu of being assumed and assigned to CCV.

(c)     Any claims arising out of the rejection of an executory contract or unexpired lease pursuant to any Confirmation Order (the "Rejection Claims") must be filed with the Court no later than thirty (30) days after the Effective Date (the "Rejection Claims Bar Date"). Holders of Rejection Claims that do not file a claim by the Rejection Claims Bar Date will be forever barred, estopped, and enjoined from asserting such Rejection Claims against the Debtor or its estate, and such Rejection Claim will be deemed discharged as of the Effective Date. CCV will file any objections to Rejection Claims no later than sixty (60) days after the Rejection Claims Bar Date (the "Rejection Claims Objection Deadline"). CCV will have the authority to resolve Rejection Claims without further order of the Court.

36.     Also as noted above, the Modified Plan complies with sections 1125 and 1126 of the Bankruptcy Code and therefore satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(2); see also Computer Task Grp., Inc. v. Brotby (In re Brotby), 303 B.R. 177, 192-93 (B.A.P. 9th Cir. 2003) (focusing analysis under section 1129(a)(2) on adequacy of disclosure of plan). Furthermore, the Modified Plan has been proposed in good faith and not by any means forbidden by law in accordance with section 1129(a)(3) of the Bankruptcy Code, as CCV is optimistic that the Settlement will be consummated. See 11 U.S.C. § 1129(a)(3). At the heart of the Modified Plan are the terms of the potential Settlement, which, as noted above, were negotiated in good faith between the parties and at arm's length. See Hewitt Decl. ¶ 3.

37.     CCV believes that, consistent with the terms of the Settlement, all classes of claims and interests will consent or vote to accept the Modified Plan. Accordingly, the Modified Plan satisfies the best interests test under section 1129(a)(7) of the Bankruptcy Code. See 11 U.S.C. § 1129(a)(7) (if a class of claims or equity interests unanimously accepts the plan, the best interests

1  test is automatically deemed satisfied for all members of that class).  Likewise, section 1129(a)(8)

2  and (a)(10) of the Bankruptcy Code is satisfied.  See id. § 1129(a)(8) (requiring each class of

3  claims or interests to accept the plan); id. § 1129(a)(10) (requiring acceptance of the plan by at

4  least one impaired class entitled to vote).

5      38.    Finally, the Modified Plan is feasible pursuant to section 1129(a)(11) of the

6  Bankruptcy Code.  See id. § 1129(a)(11).  The documents necessary to effectuate the terms of the

7  Modified Plan will be executed pursuant to the terms of the Settlement.  The Modified Plan is

8  therefore clearly workable and has a reasonable likelihood of success.

9      39.    For the reasons set forth in the Confirmation Motion and herein, the Modified Plan

10  satisfies all of the requirements of section 1129(a) of the Bankruptcy Code and therefore should be

11  confirmed.

12  **IMMEDIATE EFFECTIVENESS**

13      40.    CCV requests that the terms of the Confirmation Order be effective immediately

14  upon entry thereof, notwithstanding any stay that might be imposed by Bankruptcy Rules 3020(e),

15  6004(h), 8001, 8002, or otherwise.  The immediate effectiveness of the Confirmation Order is

16  justified.  This is a single-asset real estate case that has been pending for 16 months – far too long

17  for creditors to be waiting for payment, particularly given that non-insider creditors are proposed

18  to be paid in full under the Modified Plan.  There is accordingly no reason to extend this delay any

19  longer.

20      41.    Moreover, the delays to date have put the Project in jeopardy.  Further delay only

21  exacerbates that harm.  For example, the Project remains at risk for losing certain beneficial

22  insurance that is in place as well as certain permits.  In addition, there remains a question as to

23  whether any safety hazards exist at the project.  Delaying the change of control provided under the

24  Modified Plan will provide unreasonable opportunity for mischief.  This is particularly true where,

25  as here, there is approved budget for the use of cash collateral.  CCV submits that allowing the

26  terms of the Confirmation Order to be effective immediately is appropriate under the

27  circumstances and will facilitate the resolution of this bankruptcy case without further undue delay.

28  See Hewitt Decl. ¶ 6.

1

## CONCLUSION

2          For the reasons set forth herein, to the extent the Settlement is consummated, CCV

3    respectfully requests that the Court enter an order, substantially in the form attached hereto as

4    Exhibit 3,[5] (a) approving the Settlement, (b) authorizing the Modifications to the CCV Plan,

5    (c) confirming the Modified Plan, and (d) granting CCV such other and further relief as is just and

6    proper.

7    Date: January 31, 2011

8                                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

9

10                                        By:      /s/ Ramon M. Naguiat
                                                 Van C. Durrer II (SBN 226693)
11                                               Ramon M. Naguiat (SBN 209271)
                                                 Emily C. Ma (SBN 246014)
12                                               300 South Grand Avenue, Suite 3400
                                                 Los Angeles, California 90071
13                                               Telephone:  213-687-5000
                                                 Facsimile:  213-687-5600

14                                           Attorneys for Corus Construction Venture, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27          [5]      The form of order attached hereto as Exhibit 3 does not include exhibits.  The

28    exhibits to the order will be based on the forms of documents included in Exhibit 1 hereto.