1  David S. Kupetz (CA Bar No. 125062)
   dkupetz@sulmeyerlaw.com
2  Marcus A. Tompkins (CA Bar No. 190922)
   mtompkins@sulmeyerlaw.com
3  **Sulmeyer**Kupetz
   A Professional Corporation
4  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California  90071-1406
5  Telephone: 213.626.2311
   Facsimile: 213.629.4520
6
   Bankruptcy Counsel for GTS 900 F, LLC,
7  Debtor and Debtor in Possession

8                    UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10

11  In re                                    Case No. 2:09-bk-35127-VZ

12  GTS 900 F, LLC, a California limited      Chapter 11
    liability company, aka Concerto,
13                                            **FIRST AND FINAL APPLICATION  FOR**
                                              **APPROVAL OF COMPENSATION AND**
14          Debtor.                           **REIMBURSEMENT OF EXPENSES OF**
                                              **SULMEYERKUPETZ, BANKRUPTCY**
15                                            **COUNSEL FOR DEBTOR IN**
                                              **POSSESSION; DECLARATION OF**
16                                            **DAVID S. KUPETZ**

17                                            **[11 U.S.C. § 330, Fed. R. Bankr. P. 2016**
                                              **and Loc. Bankr. R. 2016-1(b)]**
18

19                                            DATE:    April 7, 2011
                                              TIME:    1:30 p.m.
20                                            PLACE:   U.S. Bankruptcy Court
                                                       Courtroom 1368
21  Tax Id #20-2396211                                 255 East Temple Street
                                                       Los Angeles, CA 90012
22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

706440.1 3/16/2011 (3:45 PM)

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4     I. INFORMATION SUPPLIED IN CONFORMITY WITH FORM NO. 2016-1.2 .................2

5     II. GENERAL BACKGROUND/OVERVIEW.................................................................4

6          A.     Overview of Case ......................................................................4

7          B.     The Debtor's Real Estate Project .................................................5

8          C.     Pre-Petition Disputes with the Construction Lender .......................6

9          D.     The Debtor's Bankruptcy Case and the Employment of SK .........7

10    III. PRESENT STATUS OF THE CASE ....................................................8

11    IV. NARRATIVE STATEMENT OF SERVICES RENDERED BY OUST ACTIVITY
               CATEGORIES ..............................................................................8

12         A.     Business Operations (BO)................................................10

13         B.     Asset Disposition (AD) ...................................................10

14         C.     Cash Collateral (CC) ......................................................12

15         D.     Case Administration (CA) ...............................................14

16         E.     Claims Administration and Objections (CAO)...................15

17         F.     Plan and Disclosure Statement (PDS) ............................16

18         G.     Fee/Employment Applications (FEA)...............................19

19         H.     Relief from Stay (RFS) ..................................................21

20         I.     Motion for the Appointment of Trustee (MT)....................22

21    V. FEES AND EXPENSES FOR THE PERIOD FROM JANUARY 26, 2011
               THROUGH FEBRUARY 18, 2011 ...................................................23

22    VI. SUMMARY OF FEES AND EXPENSES ......................................24

23         A.     Fee for Services Rendered. ...........................................24

24         B.     Expenses .....................................................................26

25    VII. NO FEE SHARING....................................................................27

26    VIII. CONCLUSION ........................................................................27

27    DECLARATION OF DAVID S. KUPETZ.................................................29

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

i

I.

**INFORMATION SUPPLIED IN CONFORMITY WITH FORM NO. 2016-1.2**

[The following information is supplied in conformity with Form No. 2016-1.2 of the United States Bankruptcy Court for the Central District of California]

1.    Name of Applicant:  SulmeyerKupetz ("SK"), a professional corporation

2.    Type of Service Rendered:  Attorneys (General Bankruptcy Counsel) for GTS 900 F, LLC, aka Concerto, debtor in possession

3.    Date of Filing of Petition under Chapter 11 of the Bankruptcy Code:  September 17, 2009

4.    Date of Entry of Order Approving Applicant's Employment:  October 20, 2009

5.    Date of Filing of last Fee and/or Expense Application:  Not Applicable

6.    Total Fees allowed or paid to Applicant to Date (including Retainers and Prior Approved Fee Applications):

    a.    Prepetition Retainer remaining as of commencement of case:  $214,245.65

    b.    Retainer remaining as of the date of this application:  None

    c.    Total amount requested in all prior applications:  Not Applicable

    d.    Total amount actually paid pursuant to prior approved applications:  SK has not received any payments pursuant to prior approved fee applications, since no prior fee applications were filed.  However, SK has received payments totaling $1,425,669.25 (for fees), as of the effective date (February 18, 2011) of the plan of reorganization confirmed in this case, from the drawdown of the balance of SK's prepetition retainer remaining as of the commencement of the case and postpetition retainers paid to SK and pursuant to orders authorizing the Debtor to use cash collateral to make payments to SK.

    e.    Total amount currently due but unpaid pursuant to prior approved applications:  Not Applicable

    f.    Total amount allowed but reserved pending final fee application:  Not

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1          Applicable

2   7.    Summary of Requested Fees:  See Exhibits 1 (last page(s)), 2 and 3 attached

3          hereto.

4          The Firm's Blended Hourly Rate for Services Performed:  $509.52

5   8.    The hourly rates charged by SK are the same rates charged for SK's attorneys

6          and paraprofessionals for non-bankruptcy services

7   9.    Bonus requested (final fee applications only):  None

8   **10.   TOTAL FEES REQUESTED THIS APPLICATION:  $1,800,310.50**

9   11.   Total Expenses paid to Applicant to Date (including payments from retainers and

10         payments from authorized use of cash collateral):  $49,795.69

11  12.   Summary of Requested Expense Reimbursement:  See discussion of expenses in

12         Section V.B. of attached Application and also see two listings detailing expenses

13         attached collectively hereto as Exhibit 7.

14  **13.   TOTAL EXPENSE REIMBURSEMENT THIS APPLICATION:  $50,220.81**

15  14.   Applicant submits the following in support of the Application herein pursuant to

16         Local Bankruptcy Rule 2016-1 (specify):  See Narrative Statement of Services

17         Rendered by OUST Time Category, infra, and Exhibits 1 – 4 attached hereto.

18  15.   Total Number of attached pages of supporting documentation: 355 (exhibits)

19  16.   Applicant declares under penalty of perjury under the laws of the United States of

20         America that this Application and all attached supporting documentation are true

21         and correct and accurately reflect services rendered and expenses incurred.

22         Executed on the 16th day of March 2011, at Los Angeles, California.

23

24                              **Sulmeyer**Kupetz
                               A Professional Corporation
25

26                              By:  /s/ David S. Kupetz
                                    David S. Kupetz
27                                  Marcus A. Tompkins
                                    General Bankruptcy Counsel for GTS 900 F,
28                                  LLC, Debtor and Debtor in Possession

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

II.

## GENERAL BACKGROUND/OVERVIEW

A.    **Overview of Case**

GTS 900 F, LLC (the "Debtor"), commenced this bankruptcy reorganization case by filing a voluntary chapter 11 petition on September 17, 2009 (the "Petition Date").  The Debtor owned a large real estate construction project located in downtown Los Angeles encumbered by a secured loan that had been purchased from the Debtor's construction lender by Corus Construction Venture, LLC ("CCV").  The secured claim asserted by CCV exceeded $160,000,000.  In addition, mechanic's liens encumbered the Debtor's project in an amount in excess of $20,000,000.  At the time of the commencement of this chapter 11 case, and for many months thereafter, CCV asserted that its lien was senior to the mechanic's liens encumbering the Debtor's project and that the value of the Debtor's project was dramatically less than the debt owing to CCV (CCV initially asserted that the value of the Debtor's project was approximately $120,000,000 and filed a motion for relief from the automatic stay in July, 2010, asserting that the value of the project was $122,000,000.).  Accordingly, if CCV's initial position had prevailed in this case, there was significant risk that mechanic's lien and unsecured claims in this case would not be paid.

SulmeyerKupetz ("SK"), a professional corporation, rendered extensive services throughout this case as bankruptcy counsel to the Debtor.  Among other things, SK's services involved (1) communicating and negotiating with counsel for various different creditor constituencies in this case, including CCV, the creditors' committee, mechanic's lien claimants, and various other creditors and interested parties, (2) drafting of documents, pleadings, memoranda, correspondence, and other communications and materials, (3) legal research and analysis, (4) extensive communications with and advice rendered to the Debtor and its other professionals and experts, (5) court appearances on behalf of the Debtor, (6) representing the Debtor in mediations and in communications with Court-appointed experts, and (7) otherwise representing the Debtor as bankruptcy

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  counsel throughout this case.

2       After extensive negotiation, a global settlement that served as the basis for a

3  consensual plan of reorganization was achieved in this case.  The global settlement was

4  ultimately achieved on or about February 9, 2011.  The consensual plan was confirmed

5  on February 17, 2011.  The effective date of the confirmed plan was February 18, 2011.

6  Pursuant to the confirmed plan in this case, all creditors holding allowed claims have

7  been or will be paid in full with interest.  CCV is responsible for paying all such claims,

8  except for insider claims and except for administrative expense claims of the Debtor's

9  professionals incurred through and including January 25, 2011.  Pursuant to the

10  confirmed plan, CCV is responsible for payment of allowed administrative expense claims

11  of the Debtor's professionals (SK and Parker Milliken, et al.) for the period from January

12  26, 2011, through the effective date of the confirmed plan in a collective allowed amount

13  not to exceed $125,000.

14

15  **B.    The Debtor's Real Estate Project**

16       The Debtor was formed in January, 2005, for the purpose of acquiring and

17  developing certain real property located in downtown Los Angeles.  In February 2005, the

18  Debtor acquired approximately 100,900 square feet of land fronting Figueroa, Flower,

19  and 9th Streets in downtown Los Angeles, California 90015 (the "Site").[1]  The Site is

20  situated at the north end of an evolving entertainment district anchored by the Staples

21  Center and L.A. Live, a sports and entertainment complex sometimes referred to as

22  "Times Square West."  In developing this signature project, known as "Concerto," the

23  Debtor designed an environmentally conscious all-glass residential structure with a range

24  of moderately priced to luxury priced condominium units, together with shared amenities,

25  parking, and retail and restaurant space.

26  _____

27  [1]  The property has the commonly known addresses of 900 S. Figueroa Street, 901 S.
Flower Street, and 700 W. 9th Street, Los Angeles, California 90015.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    As of July 2007, the Debtor entered into a Construction Loan Agreement (which,

2 together with all documents executed by the Debtor pursuant to such agreement, shall be

3 referred to as the "Loan Agreement") pursuant to which Corus Bank, N.A. ("Construction

4 Lender" or "Corus Bank") agreed to lend to the Debtor up to $190,000,000 to enable the

5 Debtor to implement "Phase I" of the project – i.e. the construction on the Site, and the

6 marketing and selling of:  (1) a tower that would contain 271 residential units as well as

7 retail space and storage space ("Tower I"); (2) a loft building that would contain 77

8 residential units as well as retail space and storage space (the "Loft Building"); and (3) a

9 7-story partly underground parking structure (the "Parking Garage").  The Debtor and the

10 Construction Lender also anticipated that the Debtor would subsequently implement

11 "Phase II" of the project – i.e. construction of a second tower ("Tower II") on the Site,

12 which would not be financed through the Loan Agreement.  Tower I, the Loft Building, the

13 Parking Garage, Tower II, the land parcel underlying each, and all other related

14 improvements, fixtures, furnishings, equipment, contracts and permits shall be hereinafter

15 collectively referred to herein as the "Project."

16    Construction on the Project started in 2007, and as of commencement of the

17 Debtor's chapter 11 case, Phase I was approaching completion, but had been stalled for

18 a number of months.  As of the petition date, the Debtor had also completed certain work

19 on infrastructure for Tower II, but had not yet begun construction of that tower.

20

21 C.    **Pre-Petition Disputes with the Construction Lender**

22    In or before July of 2008, the Debtor began experiencing problems with its

23 Construction Lender.  The Debtor contended that, among other things, Corus Bank

24 refused to provide certain approvals, made improper demands, and delayed further

25 advances under the Loan Agreement.  The Debtor asserted that the Construction

26 Lender's actions or failures to act were the result of Corus Bank's severe financial

27 problems.  This led to, among other things, problems with payment to the Project's

28 construction manager and subcontractors, the departure of the construction manager,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  increased costs, difficulties in obtaining certain bonds, delays in the marketing and selling

2  of units, and general delays in completion of the Project.

3      On September 4, 2009, the Debtor filed a Complaint for:  (1) Breach of Contract,

4  (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Declaratory Relief, (4)

5  Injunctive Relief against the Construction Lender in the Los Angeles Superior Court,

6  which commenced the case entitled GTS 900 F, LLC v. Corus Bank, N.A., Case No. BC

7  421309 (the "Pre-petition Corus Litigation").  On September 11, 2009, the Construction

8  Lender was seized and closed by the Office of the Comptroller or the Currency, which

9  appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver.  Thereafter,

10  CCV acquired Corus Bank's claim against the Debtor and rights under the Construction

11  Loan.

12

13  **D.    The Debtor's Bankruptcy Case and the Employment of SK**

14      The Debtor commenced this case by filing a voluntary chapter 11 petition on

15  September 17, 2009.  Pursuant to an order of the Court entered on October 20, 2009, the

16  Debtor employed SK as the Debtor's bankruptcy counsel effective as of the

17  commencement of the case.  On October 16, 2009, the Office of the United States

18  Trustee appointed an official creditors' committee in this case.

19      This chapter 11 case has involved extensive negotiation and litigation, including

20  significant written discovery and numerous depositions, various contested hearings, and

21  lengthy mediations.  SK has represented the Debtor as bankruptcy counsel throughout

22  this case and in all of these matters.  SK was able to assist and guide the Debtor in a

23  manner that ultimately resulted in a global settlement serving as the basis for a

24  consensual plan of reorganization.  As stated above, the consensual plan was confirmed

25  by the Court on February 17, 2011, and the effective date of the consensual plan was the

26  next day, February 18, 2011.

27      This Final Fee Application requests that the Court allow compensation for all

28  services rendered, and reimbursement for all expenses incurred, by SK during this case,

1  from the commencement of this case (September 17, 2009) through the effective date

2  (February 18, 2011) of the confirmed plan of reorganization.

3

4                                                     III.

5                            **PRESENT STATUS OF THE CASE**

6          A consensual plan of reorganization was confirmed pursuant to an order of the

7  court entered on February 17, 2011.  The effective date of the confirmed plan was

8  February 18, 2011.  Pursuant to the plan of reorganization confirmed in this case, CCV

9  has paid or will pay all allowed claims in full (plus interest), with the exception that the

10  reorganized debtor is responsible for payment of insider claims and for administrative

11  expenses of the Debtor's professionals (with the exception that CCV shall pay for

12  administrative expenses incurred by the Debtor's professionals for the period from

13  January 26, 2011 through the effective date of the confirmed plan up to the amount of

14  $125,000).  Pursuant to the confirmed plan, the Debtor's real estate project was

15  transferred to an entity set up by CCV and CCV paid approximately $9.5 million to the

16  reorganized debtor.  As indicated above, the confirmed, consensual plan of

17  reorganization provides for payment in full (with interest) of all allowed secured and

18  unsecured claims in this case.

19

20                                                     IV.

21  **NARRATIVE STATEMENT OF SERVICES RENDERED BY OUST ACTIVITY**

22                                         **CATEGORIES**

23          Pursuant to Federal Rule of Bankruptcy Procedure 2016(a) and Local Bankruptcy

24  Rule 2016-1(c)(2) (referencing Local Bankruptcy Rule 2016-1(a)(1)), SK hereby submits

25  this narrative of services rendered and expenses incurred by SK on behalf of the Debtor

26  during the period from the Petition Date through the plan's effective date, organized by

27  the categories set forth in the United States Trustee ("UST") Fee Guidelines.  The

28  narrative is meant primarily as a limited summary of the major areas of work performed

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  by SK.  More detailed descriptions of the services provided by SK, and the time

2  expended in performing such services, are set forth in SK's billing statements attached

3  hereto as **Exhibits 1, 2, and 3**, which are incorporated herein by this reference.

4  In accordance with the guidelines of the Office of the United States Trustee, the

5  following time and billing statement breakdowns are attached hereto as Exhibits 1, 2,

6  and 4:

7  A.    **Exhibit 1** is SK's contemporaneous time records from the commencement

8  of the Debtor's case (September 17, 2009) through February 18, 2011, organized in

9  chronological order by project category.  With respect to Exhibit 1, the initials appearing

10  in each time entry for the attorneys and paraprofessional working on the case are as

11  follows:  David S. Kupetz (DSK), Alan G. Tippie (AGT), Victor A. Sahn (VAS), Mark S.

12  Horoupian (MSH), Daniel A. Lev (DAL), John M. Samberg (JMS), Marcus A. Tompkins

13  (MAT), Steven F. Werth (SFW), Tamar Kouyoumjian (TXK), Asa S. Hami (ASH), Michael

14  A. Seiden (MAS), Elizabeth Z. Jiang (EZJ), Avi E. Muhtar (AEM), Myrna R. Richardson

15  (MRR), and Ann Sokolowski (ALS).

16  B.    **Exhibit 2** is a summary showing the total amount billed on a monthly basis

17  for each project category.

18  C.    **Exhibit 3** is a summary for each project category from the commencement

19  of the Debtor's case (September 17, 2009) through February 18, 2011, listing the name

20  of the attorney or paraprofessional who billed under that category, each person's hourly

21  billing rate, and the total hours spent and amount billed by each person under that

22  category.

23  D.    **Exhibit 4** is SK's contemporaneous time records, organized in

24  chronological order by project category, for the period from January 26, 2011 through

25  February 18, 2011.  This is the period pursuant to the confirmed plan of reorganization for

26  which CCV is responsible for payment, subject to the $125,000 limitation applicable to

27  limit CCV's obligation to fund payment to the Debtor's professionals for fees and

28  expenses incurred during that period.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    A brief narrative summary of the significant events in this case following the

2    commencement of the case on September 17, 2009 through February 18, 2011,

3    including a brief statement with respect to each major United States Trustee project

4    category used, is set forth below.

5

6    **A.        Business Operations (BO)**

7        SK provided the Debtor with essential advice regarding issues relating to the

8    Debtor's ongoing business operations.  For example, with respect to utilities, SK

9    negotiated with the Department of Water and Power to prevent disruption in utility

10   service.  Moreover, as necessary, SK has addressed other issues regarding business

11   operations that arose during the course of the Debtor's case.

12       As reflected in Exhibits 1, 2 and 3 hereto, for the period from the commencement

13   of the Debtor's chapter 11 case through February 18, 2011, SK rendered services

14   amounting to $4,777.50 in fees with respect to the project category designated as

15   business operations.  These services were reasonable, necessary and appropriate.

16

17   **B.        Asset Disposition (AD)**

18       In April 2009, before the Debtor commenced its chapter 11 case, the Debtor

19   retained a broker to sell the residential units in the Loft Building.  The Debtor also

20   retained a real estate marketing consultant/auctioneer, and planned, publicized and

21   executed a significant "sales event" for the loft units.  Through the sales event, which

22   occurred on August 29, 2009, the Debtor entered into contracts for the conditional sale of

23   each of the 77 residential loft units (the "Loft Sale Contracts"), and also obtained back-up

24   offers for each unit.  The purchasers made deposits into escrow in the amount of 3% of

25   the purchase prices, for a total deposit amount of approximately $1,000,000.  The sales

26   did not close prior to the Petition Date due to the Construction Lender's refusal to

27   approve the sale prices and release its liens on the loft units to be sold.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Shortly following the commencement of this case, SK prepared and filed a motion

2  ("Sale Motion") that requested that the Court authorize the Debtor to assume the Loft

3  Sale Contracts and to complete the 77 pending sales and authorize the sale of units in

4  the Loft Building pursuant to Bankruptcy Code Section 363(f) free and clear of liens and

5  other interests, which such liens and other interests to attach to the sale proceeds with

6  the same validity, priority, and perfection as existed with respect to the residential units to

7  be sold.  SK also filed prepared various other pleadings relating to the Sale Motion,

8  including 4 supporting declarations, notices, and related papers.  SK engaged in

9  appropriate and necessary review, analysis and legal research with regard to this matter.

10  SK also participated in conferences with the Debtor's representative, the Debtor's

11  valuation expert, the Debtor's financial advisor, the Debtor's real estate broker, and other

12  professionals, and advised the Debtor with respect to this matter.

13    The FDIC (as receiver for Corus Bank) and two creditors each filed an opposition

14  to the Sale Motion, and the FDIC also filed related evidentiary objections.  SK engaged in

15  discussions with counsel for the FDIC.  SK thereafter prepared replies to the oppositions

16  and evidentiary objections; prepared related declarations in support of the replies and

17  engaged in negotiations with the FDIC's successor, CCV, regarding the Sale Motion prior

18  to the hearing thereon.  SK appeared on behalf of the Debtor at the hearings on this

19  matter.  The efforts of SK resulted in entry of consensual order granting the Sale Motion

20  on October 30, 2009.  As a result, the Debtor ultimately completed the sales of the 77 loft

21  units, thereby generating net proceeds totaling approximately $28,000,000, which

22  enabled the Debtor to move forward with construction of the Project and pay its on-going

23  business expenses as well as significant administrative expenses.

24    In January, 2011, at the Debtor's request and direction, SK engaged in necessary

25  review and analysis in connection with the preparation of a motion to sell the Project in its

26  entirety, with Tower I positioned as an apartment tower.  The Court had previously

27  approved the Debtor's employment of a broker who was working on such a sale.  SK

28  drafted a motion for approval of the sale and certain related papers that ultimately were

1  not necessary to file when significant progress had been made toward the achievement

2  of a global settlement in this case and such a settlement ultimately was reached in

3  February, 2011.

4      Exhibits 1, 2 and 3 hereto reflect that, from the commencement of the Debtor's

5  chapter 11 case (September 17, 2009) through February 18, 2011, SK provided services

6  amounting to $64,758 in fees in connection with this project category involving asset

7  disposition matters.  These services have been reasonable, necessary and appropriate.

8  The services enabled the Debtor to move this case forward on a viable basis.

9

10  **C.**    **Cash Collateral (CC)**

11      Concurrently with the preparation of the Sale Motion, SK also prepared a related

12  motion (the "Cash Collateral Motion") by which the Debtor requested authority to use the

13  net proceeds from the sale of the residential loft units (which proceeds constituted cash

14  collateral of CCV and certain others), in order to complete construction of Phase I of the

15  Project, with CCV and any other lien holders to receive replacement liens on post-petition

16  improvements to the collateral and the proceeds therefrom.  In connection with

17  preparation of the Cash Collateral Motion, SK services included, among other things,

18  review and analysis, legal research, drafting of the motion, declarations and related

19  papers, and communications, conferences, and meetings with the Debtor, the Debtor's

20  financial advisor, the Debtor's valuation expert, counsel for mechanic's lien claimants,

21  counsel for the FDIC, and creditors' committee counsel, and counsel for CCV.

22      The FDIC (as receiver for Corus Bank) and two creditors each filed an opposition

23  to the Cash Collateral Motion, and the FDIC also filed related evidentiary objections.  SK

24  thereafter prepared replies to the oppositions and evidentiary objections, prepared

25  related declarations in support of the replies, and engaged in negotiations with the FDIC's

26  successor, CCV, regarding the Cash Collateral Motion prior to the hearing thereon.  SK

27  appeared for the Debtor at the hearings held in this matter.  Such efforts resulted in entry

28  of consensual order granting the Cash Collateral Motion on October 30, 2009.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Thereafter, and throughout this chapter 11 case, SK was required to address

2    ongoing issues with regard to cash collateral budget and draw request issues and

3    engaged in extensive negotiations, meetings, and other communications with counsel for

4    CCV and the creditors' committee with regard to such issues.  To the extent feasible,

5    SK's services throughout this case helped address and resolve various issues and

6    disputes connected with cash collateral budgets and related draw request matters.

7    Initially, SK worked with the Debtor to provide substantial information and documents to

8    CCV and their consultants with regard to the Project, an updated construction budget,

9    draw requests, and related matters.  After CCV, the Debtor, and the creditors' committee

10   agreed on a modified budget, SK prepared and filed a notice with the Court stating that

11   an agreement had been reached on a modified budget, a copy of which was attached.

12   Further issues and disputes arose during the course of this case between CCV and the

13   Debtor with regard to cash collateral and draw request matters and SK worked to

14   facilitate resolution of such disputes to the greatest extent feasible.

15       In the Spring of 2010, the Debtor determined that it was necessary to modify the

16   adequate protection payments pursuant to the cash collateral order.  SK prepared an

17   appropriate motion for such modification and engaged in necessary review, analysis,

18   legal research and communications in connection with preparation of the motion.  CCV

19   prepared a reply to the motion and deposed the Debtor's valuation expert (David

20   Zoraster).  SK prepared a reply to CCV's opposition and represented the Debtor at the

21   Zoraster deposition and the court hearing on this matter.  Further, SK helped facilitate a

22   resolution that ultimately resulted in a consensual modification of the adequate protection

23   payments to be made to CCV.  Additionally, throughout this case, SK was required to

24   address issues at various different times regarding payments requested by and/or to be

25   made to various subcontractors working on the Project.

26       In December, 2010, at the request and direction of the Debtor, SK prepared a

27   motion for approval of a budget going forward and for elimination of adequate protection

28   payments to CCV, and for authorization to make payments to subcontractors pursuant to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   pending unsolved draw requests.  CCV filed an opposition to the motion and SK prepared

2   the Debtor's reply.  As part of the global settlement achieved in this case, this motion was

3   resolved.

4          Exhibits 1, 2, and 3 hereto reflect that, for the period from the commencement of

5   the Debtor's chapter 11 case (September 17, 2009) through February 18, 2011, SK

6   provided services amounting to $206,311.50 in fees in connection with this project

7   category involving cash collateral matters.  The services rendered included, among other

8   things, the following:  (1) advising the Debtor; (2) negotiations with various interested

9   parties, including CCV, the creditors' committee, and mechanic's lien claimants; (3)

10  review, analysis, and legal research; (4) drafting of pleadings and other documents; (5)

11  appearing on behalf of the Debtor at hearings conducted by the Court, and (6) otherwise

12  representing the Debtor in all matters relating to use of cash collateral.

13

14  **D.      Case Administration (CA)**

15         On an ongoing basis, throughout the Debtor's chapter 11 case, SK was required to

16  advise the Debtor with respect to the impact of the Debtor's chapter 11 filing, the

17  requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the

18  Local Bankruptcy Rules, and the requirements and guidelines of the Office of the United

19  States Trustee.  Throughout this case, SK received telephonic, email, and written

20  requests made by CCV, holders of mechanic's liens, unsecured creditors, the creditors'

21  committee, representatives of utility providers, buyer's of units in the Loft Building, the

22  Office of the United States Trustee, other professionals and experts employed in

23  connection with the Debtor's chapter 11 case, and various other parties.  SK was

24  required to spend significant time responding on behalf of the Debtor to these written,

25  email, and telephonic requests and inquiries of interested parties.

26         SK's services in the category of case administration included, among other things,

27  the following:  (1) communications with the Debtor's management regarding the progress

28  of the chapter 11 case and related issues; (2) communications with the Office of the

1 United States Trustee; (3) review, consultation and preparation of documentation with

2 respect to the Debtor's bankruptcy schedules and statement of affairs; (4) review and

3 consultation regarding compliance with requirements and guidelines of the Office of the

4 United States Trustee, including the initial 7-day package provided to the United States

5 Trustee, the Real Property Questionnaire, operating reports, and insurance and bank

6 account matters, and assisting in the preparation of other materials submitted to the

7 Office of the United States Trustee; (5) representing the Debtor at the initial debtor

8 interview meeting conducted by the United States Trustee; (6) advising and assisting the

9 Debtor with ongoing administrative compliance matters throughout this case, including

10 operating reports required by the United States Trustee and insurance and other

11 administrative requirements; (7) communications with the creditors' committee and its

12 counsel, and participation in a formal telephonic and in-person meetings with the

13 committee; and (8) various other matters relating to the administration of the Debtor's

14 chapter 11 case.  SK's services in this area helped ensure that the Debtor remained in

15 compliance with the administrative requirements that applied to its chapter 11

16 reorganization case and allowed the Debtor to avoid any problems with regard to

17 administrative compliance issues in this case.

18          As reflected in Exhibits 1, 2, and 3 hereto, for the period from the commencement

19 of the Debtor's case through February 18, 2011, SK rendered services amounting to

20 $127,791.50 in fees with regard to services required under the project category

21 designated as case administration.  These services were reasonable, necessary and

22 appropriate and benefitted the estate by moving the administration of the case forward in

23 an effective manner.

24

25 **E.       Claims Administration and Objections (CAO)**

26          On behalf of the Debtor, SK reviewed and analyzed claims filed in this case,

27 resolved certain claims without the need for filing formal objections, and filed numerous

28 objections to claims that were granted by the Court, including objections resolving

*SulmeyerKupetz, A Professional Corporation*
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   duplicate claims, claims in conflict with the Debtor's books and records, claims lacking

2   adequate support, and substantive objections to the merits of various claims.  SK

3   reviewed and analyzed the proofs of claim filed in this case and prepared and updated

4   charts and schedules that were used in connection with the disclosure statements

5   presented and approved in this case.

6       SK engaged in appropriate and necessary legal research, communications, and

7   negotiations with respect to certain objections to claims and with regard to lien priority

8   rights asserted at certain times in this case by CCV and by mechanic's lien claimants.

9   SK also engaged in review, analysis and legal research regarding certain claims and

10  rights asserted by CCV in this case with regard to attorneys' fees, postpetition interest,

11  and alleged claims to default interest.  SK prepared for and appeared on behalf of the

12  Debtor at hearings on objections to claims and drafted appropriate notices, objections,

13  orders and related declarations and other pleadings.   Among other things, SK briefed,

14  prepared for, and appeared on behalf of the Debtor at a mediation regarding the claims of

15  Coastal International and Alno Pasadena, which were ultimately resolved by settlement.

16      Exhibits 1, 2, and 3 hereto reflect that, for the period from the commencement of

17  the Debtor's chapter 11 case through February 18, 2001, SK provided services

18  amounting to $148,462.50 in fees in connection with the project category designated as

19  claims administration and objections.  These services have been reasonable, necessary

20  and appropriate and have advanced the administration of the Debtor's case.

21

22  **F.**    **Plan and Disclosure Statement (PDS)**

23      SK's services with regard to plan and disclosure statement matters in this case

24  were extensive, including (among other things), (1) negotiations with CCV, the creditors'

25  committee, mechanic's lien claimants, and various other parties, (2) preparation for and

26  participation in multiple mediation sessions, (3) drafting of plans and disclosure

27  statements and related documents and pleadings, (4) legal research and analysis

28  regarding plan issues, and (5) meetings and other communications with SK's client, the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   Debtor's experts and other professionals, and counsel for various other parties including,

2   among others, CCV, the creditors' committee, mechanic's lien claimants, unsecured

3   creditors, and Astani Construction, Inc.

4        SK was intimately involved in tremendous efforts throughout this case to achieve a

5   consensual resolution.  As stated above, these efforts ultimately succeeded with the

6   global settlement and consensual plan reached in February, 2011.  Settlement

7   negotiations took place inside and outside of formal mediation sessions.

8        During May and June, 2010, SK prepared for and represented the Debtor in four

9   full days of mediation conducted by Retired Judge Mitchell Goldberg, plus numerous

10  other telephone conferences, meetings, and other communications (with and without the

11  mediator) connected with the mediation.  Thereafter, ongoing settlement discussions

12  continued on and off throughout the summer and fall of 2010.

13       In July, 2010, CCV filed a motion for relief from the automatic stay asserting that

14  the Project had a value of $122,000,000.  Subsequently, as ordered by the Court in the

15  relief from stay matter, SK prepared for and represented the Debtor in a further day of

16  mediation conducted by Retired Judge Lisa Fenning in early December, 2010.

17  Negotiations with CCV continued thereafter, requiring SK's extensive involvement, and

18  agreement was reached on the terms of a consensual plan of reorganization, subject to

19  further documentation, on or about February 9, 2011.

20       SK prepared all disclosure statements and plans of reorganization for the Debtor.

21  In connection with preparing the Debtor's disclosure statements and plans, SK engaged

22  in necessary review, analysis, legal research, negotiations, and other communications.

23  Among others, SK had extensive communications with the Debtor's representatives, the

24  Debtor's valuation expert, the Debtor's financial advisor, counsel for the creditors'

25  committee, counsel for various mechanic's lien claimants, and counsel for CCV.  With

26  respect to the Debtor's initial disclosure statement approved by the Court, the substance

27  of and information contained in that disclosure statement largely served as the basis for

28  all further disclosure statements (including those submitted by CCV) presented in the

1   Debtor's chapter 11 case.  The Debtor's initial plan of reorganization that came before the

2   confirmation in the summer of 2010, was accepted by all creditors in the Debtor's chapter

3   11 case, except for CCV and entities created by CCV to purchase claims against the

4   Debtor, and was supported by the creditors' committee. However, the Court declined to

5   confirm the Debtor's initial plan that came before the Court for confirmation.

6       SK was required to represent the Debtor and participate in extensive discovery,

7   including written discovery and depositions, with regard to plan of reorganization matters

8   in this case.  The numerous depositions included depositions of Marlene Shammas,

9   Sonny Astani (two separate depositions), Jay Maddox, David Zoraster, Mark Moniz,

10   James Pike, Michelle Kaufman, Tamara Kim, and Wade Hundley.

11       SK prepared and the court granted the Debtor's initial two motions for the

12   extension of exclusivity for the filing of a plan of reorganization in this case.  Following the

13   expiration of exclusivity, and after CCV had filed its motion for relief from the automatic

14   stay in this case, CCV filed a competing plan of reorganization.  SK engaged in

15   appropriate and necessary review, analysis, and drafting of pleadings connected with

16   disclosure statements and plans of reorganization submitted by CCV in this case.  SK

17   participated in significant and extensive communications with counsel for CCV and, in the

18   fall of 2010, on behalf of the Debtor, reached an agreement with counsel for CCV (on

19   behalf of CCV) on the terms of a unitary disclosure statement (much of the material for

20   the unitary disclosure statement came from the Debtor's previously approved disclosure

21   statement) that was approved by the Court.

22       As discussed above, following approval of the unitary disclosure statement, the

23   Debtor and CCV continued to engage in settlement negotiations that ultimately resulted

24   in the global settlement that serves as the basis for the consensual plan of reorganization

25   confirmed in this case in February, 2011.  SK was intimately involved in the negotiations

26   that led to the global settlement, including participation and conferences with the Debtor's

27   representatives, the Debtor's special counsel, CCV's counsel and representatives,

28   counsel for the former creditors' committee (the committee was no longer functioning

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 since CCV had purchased the claims of all members of the committee), the Debtor's real

2 estate counsel, and other advisors of the Debtor and interested parties. SK reviewed,

3 analyzed and revised the proposed settlement documents, including, among other

4 documents, the settlement stipulation, assignment agreement, indemnity agreement,

5 grant deed, and proposed powers of attorney. Thereafter, SK reviewed and analyzed the

6 draft modified consensual plan of reorganization and prepared comments and revisions

7 to the draft consensual plan. SK prepared other necessary documents and pleadings

8 required in connection with the consensual plan, engaged in ongoing communications

9 and negotiations regarding resolving all open issues, and appeared on behalf of the

10 Debtor at the hearing on confirmation of the modified, consensual plan on February 17,

11 2011. As stated above, pursuant to the confirmed, consensual plan of reorganization in

12 this case, all holders of allowed secured and unsecured claims have been or will be paid

13 in full with interest. SK's services with respect to plan and disclosure statement matters

14 in this case have been tremendously extensive and have been at the heart of this case.

15 Such services helped facilitate a resolution resulting in full payment of all creditors (with

16 interest) and helped avoid, at numerous different junctures, a potential permanent

17 impasse that could have led to a significantly less satisfactory resolution of this case.

18    Exhibits 1, 2, and 3 hereto reflect that, for the period from the commencement of

19 the Debtor's chapter 11 case through February 18, 2001, SK provided services

20 amounting to $1,059.615.50 in fees in connection with the project category designated as

21 plan and disclosure statement. These services have been reasonable, necessary and

22 appropriate and facilitated the global settlement and consensual plan of reorganization

23 that have resulted in full payment of all allowed claims (with interest) in this case.

24

25 **G.**    **Fee/Employment Applications (FEA)**

26    Under this category of services, SK primarily provided services in connection with

27 the employment and compensation of the professionals employed by the Debtor in this

28 case. For example, SK first prepared the Application by which the Debtor sought

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  authority to employ SK as the Debtor's attorney (general bankruptcy counsel), and a

2  related notice and order.  The Court approved such employment by order entered on

3  October 20, 2009.

4       SK also prepared an Application and related documents necessary for the

5  Debtor's employment of the law firm of Parker, Milliken, Clark, O'Hara & Samuelian, a

6  professional corporation, as special litigation counsel during this case.  Such employment

7  was approved by an order entered on December 21, 2009.

8       SK also provided services necessary for the Debtor's employment of Ronald S.

9  Litvak & Company ("Litvak") as the Debtor's tax accountant during this case.  For

10  example, SK made revisions to the engagement agreement between the Debtor and

11  Litvak, and prepared an Application to employ Litvak, which included disclosure of

12  Litvak's connections with numerous affiliates of the Debtor.  The employment of Litvak

13  was authorized by an order entered on May 11, 2010.

14       SK also provided services necessary for the Debtor's employment of real estate

15  brokers in this case.  First, SK did work in connection with the engagement agreement by

16  which the Debtor employed NAI Capital, Inc. ("NAI") as the Debtor's commercial real

17  estate broker for the purpose of procuring tenants for the retail spaces on the Debtor's

18  property, and prepared an Application to employ NAI, along with a related notice and

19  order.  The Court approved such Application by order entered on August 6, 2010.

20  Second, after the Debtor chose to pursue a sale of the entire Project, SK participated in

21  reviewing and preparing the listing agreement by which the Debtor employed Moran &

22  Company ("Moran") for such purpose, and then prepared an Application to employ

23  Moran, and a related notice and order.  Such employment was approved by an order

24  entered on November 8, 2010.

25       Under this category of services, SK also spent some minimal time reviewing

26  Applications by with the creditors' committee sought to employ professionals (including

27  original committee counsel (Pachulski, et al.), substitute counsel (Venable), and a

28  financial advisor (Grant Thornton), and Professional Fee Statements filed by those

1 | professionals.

2 | Additionally, SK also provided services in connection with Fee Applications,

3 | including preparation of a notice advising other professionals to file fee applications and

4 | review, analysis, and preparation of the instant Final Fee Application.

5 | As reflected in Exhibits 1, 2 and 3 hereto, for the period from the commencement

6 | of the Debtor's chapter 11 case through February 18, 2011, SK rendered reasonable,

7 | appropriate and necessary services amounting to $54,633 in fees with respect to the

8 | project category designated as employment/compensation of professionals.

9 |

10 | **H.**    **Relief from Stay (RFS)**

11 | In July, 2010, CCV filed a motion for relief from the automatic stay in order to

12 | move forward to commence a foreclosure of the Debtor's project. In support of that

13 | motion, CCV asserted that the project had a value of $122,000,000. With respect to

14 | CCV's relief from stay motion, SK engaged in appropriate and necessary review,

15 | analysis, and legal research. SK participated in conferences with the Debtor's

16 | representatives, the Debtor's valuation expert, the Debtor's financial advisor, the Debtor's

17 | special litigation counsel, the Debtor's real estate brokers, creditors' committee counsel,

18 | and counsel for CCV with respect to CCV's motion for relief from the automatic stay. SK

19 | prepared the Debtor's opposition to CCV's motion and reviewed and analyzed CCV's

20 | reply to the Debtor's opposition.

21 | SK participated in joint discussions and communications, along with counsel for

22 | CCV, with the court-appointed valuation expert in the relief from stay matter. SK also

23 | worked with counsel for CCV in the preparation of a joint status report with regard to this

24 | relief from stay matter and appeared on behalf of the Debtor at the status conference

25 | conducted by the Court on September 23, 2010. Thereafter, SK reviewed and analyzed

26 | the court-appointed valuation expert's valuation report issued in this matter.

27 | Subsequently, SK represented the Debtor in connection for preparing for the court-

28 | ordered mediation in the relief from stay matter, preparing the Debtor's mediation brief

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  and participating in the pre-mediation conferences with counsel for CCV and jointly with

2  counsel for CCV and the mediator.  On December 6, 2010, SK appeared on behalf of the

3  Debtor at the medication conducted in this matter by retired Judge Lisa Fenning.  CCV's

4  relief from stay motion was resolved and voluntarily dismissed in connection with the

5  global settlement reached in this case in February, 2011.

6         In October and November, 2009, SK addressed on behalf of the Debtor, and

7  resolved, a motion for relief from the automatic stay brought by a landlord of premises

8  leased by the Debtor.

9         As reflected in Exhibits 1, 2 and 3 hereto, for the period from the filing of CCV's

10  motion for relief from the automatic stay in July, 2010, through February 18, 2011, SK

11  rendered reasonable, appropriate and necessary services amounting to $98,266.50 in

12  fees with respect to the project category designated as relief from stay matters.

13

14  I.     **Motion for the Appointment of Trustee (MT)**

15         In December, 2010, CCV filed a motion in the Debtor's case for the appointment of

16  a trustee.  In connection with such motion, SK rendered services including reasonable,

17  necessary and appropriate review, analysis, and legal research.  SK prepared the

18  Debtor's response to CCV's motion for the appointment of a chapter 11 trustee, reviewed

19  and analysis CCV's reply to the Debtor's opposition, and advised the Debtor in

20  connection with this matter.  SK prepared for the hearing in this matter, which was set for

21  January, 2011.  Ultimately, CCV's motion for the appointment of a trustee was resolved

22  pursuant to the global settlement achieved in February, 2011, and CCV's motion was

23  voluntarily dismissed.

24

25         As reflected in Exhibits 1, 2 and 3 hereto, for the period from the filing of CCV's

26  motion for the appointment of a trustee through February 18, 2011, SK rendered services

27  amounting to $25,182.50 in fees with respect to the project category for matters relating

28  to CCV's motion for the appointment of a trustee.  These services were reasonable,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  necessary and appropriate under the circumstances.

2

3                                    **V.**

4  **FEES AND EXPENSES FOR THE PERIOD FROM JANUARY 26, 2011 THROUGH**

5                            **FEBRUARY 18, 2011**

6              Pursuant to the global settlement and consensual plan of reorganization

7  achieved in this case, CCV is responsible for payment of the allowed fees and expenses

8  of the Debtor's professionals for the period from January 26, 2011, through February 18,

9  2011, subject to the limitation that CCV's obligation for payment of such fees and

10 expenses shall not exceed $125,000 in total.  Exhibit 4 hereto sets forth SK's fees

11 ($116,730.50) and expenses ($298.97) incurred during the period from January 26, 2011

12 through February 18, 2011, with respect to SK's representation of the Debtor in this case.

13 This was one of the most intense periods of this case and it included the time during

14 which the global settlement was achieved and the consensual, modified plan of

15 reorganization based on such settlement was confirmed.  SK's services during this period

16 included extensive participation in the global settlement negotiations addressing and

17 resolving numerous issues and multiple conferences throughout essentially every day

18 during this period with representatives of the Debtor and the Debtor's special counsel and

19 with counsel for CCV.  SK also participated in communications with former committee

20 counsel, the Debtor's real estate counsel, and certain other parties.  SK closely and

21 actively participated in documentation of the global settlement and provided comments

22 and revisions to the settlement stipulation and various ancillary documents, including,

23 among other things, the assignment agreement, the indemnity agreement, the grant

24 deed, and various exhibits and other documents.

25              During the period of January 26, 2011 through February 18, 2011, SK also

26 (1) substantially prepared this final fee application, (2) reviewed notices by CCV of the

27 deposition of John Ellis (the court-appointed valuation expert), and participated in related

28 communications, (3) reviewed, analyzed, and prepared an opposition to CCV's motion for

1  approval of its non-consensual plan of reorganization and CCV's conditional motion for

2  approval of a potential modified plan, (4) addressed and resolved issues regarding the

3  global settlement documents, (5) reviewed and analyzed the modified consensual plan

4  and related papers, and (6) appeared at the plan confirmation hearing conducted by the

5  Court on February 17, 2011.

6

7  **VI.**

8  **SUMMARY OF FEES AND EXPENSES**

9  **A.    Fee for Services Rendered.**

10      As indicated above, SK has represented the Debtor as bankruptcy counsel in all

11  aspects of this chapter 11 case and has been required to spend significant time

12  responding to, and negotiating, or otherwise communicating with, among others, CCV

13  and its counsel, the Debtor's unsecured creditors, counsel for the creditors' committee,

14  mechanic's lien claimants and their counsel, the United States Trustee, representatives

15  of the Debtor's management, the Debtor's financial advisor, other professionals

16  employed in this case, and various other interested parties.  In summary, the services

17  rendered by SK have consisted primarily of:  rendition of advice to the Debtor;

18  preparation of pleadings and legal memoranda filed with the Court; appearances in

19  matters before the Court; negotiations and communications involving a wide variety of

20  legal matters; interactions with counsel for creditors and other interested parties; the

21  management, direction, coordination and execution of legal projects relating to the

22  chapter 11 case; preparation of legal and factual memoranda; conduct of varied and

23  complex correspondence and telephonic communication with all of the above-mentioned

24  interested parties; and review, analysis, legal research and consultation regarding this

25  reorganization case.  In general, SK has performed as counsel for the Debtor at the

26  highest level.

27      SK's extensive written and oral correspondence as well as all other actions taken

28  by SK with respect to representation of the Debtor in this case are reflected in the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    detailed contemporaneous time records, organized chronologically by activity code

2    category in accordance with the guidelines of the United States Trustee, attached hereto

3    as Exhibit 1.  The services rendered by SK and all of the expenses incurred were actual

4    and necessary, and were rendered on behalf of the Debtor.

5        SK is a firm of approximately 15 attorneys and is located in Los Angeles,

6    California.  The firm has a general emphasis in bankruptcy, insolvency, reorganization

7    and commercial law.  The professional services rendered by SK are detailed in this

8    application and the time records attached hereto as Exhibits and have been rendered

9    effectively and efficiently.  A current firm resume of SK is attached hereto as **Exhibit 5**

10   and is incorporated herein by this reference.  Some additional information regarding

11   David Kupetz, the attorney primarily responsible for SK's representation of the Debtor, is

12   attached hereto as **Exhibit 6**.  David Kupetz was the attorney of SK with intimate

13   familiarity with the facts, circumstances and issues involved in the Debtor's chapter 11

14   case.  While some of the services rendered by David Kupetz could potentially have been

15   rendered by an attorney of SK at a lower billing rate, SK believes that as a result of his

16   experience, expertise, and familiarity with the Debtor's case, David Kupetz was able to

17   render such services in an efficient and economical manner that benefitted the estate and

18   resulted in lower total attorneys' fees for SK than if such services had been rendered with

19   attorneys with lower billing rates.

20       SK has rendered services totaling 3,533.30 hours in connection with this case

21   during the period from the commencement of the case (September 17, 2009) through

22   February 18, 2011, and is seeking final approval of compensation by this application for

23   such services at normal hourly billing rates in effect at the time the services were

24   rendered in the total amount of $1,800,310.50.  Pursuant to postpetition retainers and

25   court authorized use of cash collateral, as of the effective date of the confirmed plan,

26   $1,425,669.25 of that sum has been paid.  The hourly billing rates and total time spent by

27   each attorney and paraprofessional of the firm rendering services in connection with this

28   case are set forth in Exhibit 3 and at the end of Exhibit 1 hereto.  In the ordinary course,